IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| In re: | In Bankruptcy No: |
|---|---|
| EVERGREEN AVIATION GROUND LOGISTICS ENTERPRISE, INC., | 13-13361-MFW (Chapter 7) |
| Debtor. | Hearing Date: February 5, 2014, at 2:00 p.m.<br>Objection Deadline: January 29, 2014, at 4:00 p.m. |

| In re: | In Bankruptcy No: |
|---|---|
| EVERGREEN INTERNATIONAL AIRLINES, INC., | 13-13363-MFW (Chapter 7) |
| Debtor. | Hearing Date: February 5, 2014, at 2:00 p.m.<br>Objection Deadline: January 29, 2014, at 4:00 p.m. |

| In re: | In Bankruptcy No: |
|---|---|
| EVERGREEN INTERNATIONAL AVIATION, INC., | 13-13364-MFW (Chapter 7) |
| Debtor. | Hearing Date: February 5, 2014, at 2:00 p.m.<br>Objection Deadline: January 29, 2014, at 4:00 p.m. |

**MOTION OF GENERAL ELECTRIC CAPITAL CORPORATION, GC AIR, LLC, AND COLONIAL PACIFIC LEASING CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY**

Pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001(a) General Electric Capital Corporation ("GECC"), GC Air, LLC ("GC Air"), and Colonial Pacific Leasing Corporation ("Colonial" and together with GECC and GC Air, the "Lessors") submit this motion (the "Motion") for relief from the automatic stay to allow them to exercise their non-bankruptcy rights with respect to the equipment described herein and in the documents attached hereto. In addition, Lessors request that this Court enter an order clarifying that the automatic stay does not apply to actions against certain non-debtors. In support of this Motion, Lessors state as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. Evergreen Aviation Ground Logistics Enterprise, Inc. ("Eagle"), Evergreen International Airlines, Inc. ("Airlines"), and Evergreen International Aviation, Inc. ("Aviation" and together with Eagle and Airlines, the "Debtors") each filed a voluntary petition under Title 11 of the United States Code (the "Bankruptcy Code") commencing these Chapter 7 cases on December 31, 2013 (the "Petition Date").

3. On September 16, 2013, Lessors filed an action in the Circuit Court, Yamhill County, Oregon (the "State Court"), captioned *General Electric Capital Corporation, et al. v. Evergreen International Aviation, Inc., et al.*, Case No. 13-cv-05678 (the "State Court Action"), seeking *inter alia* damages for breach of contract, injunctive relief, and claim and delivery. In addition to the Debtors, certain affiliates of the Debtors, specifically Evergreen Agricultural Enterprises, Inc. ("Agricultural"), Evergreen Holdings, Inc. ("Holdings"), and Delford M. Smith ("Smith"), are defendants in the State Court Action. The relief requested in the State Court Action, as well as herein, is based upon Lessors' rights and remedies under the agreements described below.

### A. The Aviation Lease and the Gulf Stream Aircraft

4. On or about July 23, 2003, GC Air, as lessor, and Aviation, as lessee, executed an Aircraft Lease Agreement (the "Aviation Lease"), pursuant to which GC Air leased to Aviation the Gulf Stream Aircraft (as defined below) and Aviation agreed to make certain rent and other

payments to GC Air as provided therein. A true and correct copy of the Aviation Lease is attached hereto as <u>Exhibit A</u>.

5. The Gulf Stream Aircraft is defined in the Aviation Lease and herein as: Gulf Stream Aerospace, Model G-IV Aircraft which consists of the following components: (1) Airframe bearing FAA Registration Mark N917W and Manufacturer's Serial No. 1158, and (2) two Rolls Royce MK-611-8 engines bearing Manufacturer's Serial Nos. 16423 & 16242 respectively, together with all other property essential and appropriate to the operation of the Gulf Stream Aircraft, including but not limited to all instruments, avionics, auxiliary power units, equipment, and accessories attached to, connected with, or related to the Gulf Stream Aircraft, and all logs, manuals, and other documents issued for, or reflecting use or maintenance of, the Gulf Stream Aircraft, and all manufacturer's and supplier's warranties with respect to the forgoing and all rights and remedies under any maintenance or servicing contracts with respect to the Gulf Stream Aircraft (including rights under prepaid accounts or monies held in trust pursuant thereto) (collectively, the "<u>Gulf Stream Aircraft</u>").

6. Aviation defaulted under the Aviation Lease prior the Petition Date.

7. Prior to the Petition Date, Aviation surrendered possession of the Gulf Stream Aircraft to GC Air.

**B.    The Eagle Lease and the Eagle Equipment**

8. On or about December 5, 2001, GECC, as lessor, and Eagle, as lessee, entered into a Master Lease Agreement (the "<u>Eagle MLA</u>") setting forth the terms and conditions upon which GECC would from time to time lease to Eagle certain equipment described in any schedule thereto.

9.     On or about November 21, 2006, GECC and Eagle entered into an Amended and Restated Equipment Schedule No. 2006-01 under the Eagle MLA (the "Eagle Schedule"), pursuant to which GECC leased to Eagle the equipment described in more detail therein (the "Eagle Equipment"). A true and correct copy of the Eagle MLA and the Eagle Schedule (together, the "Eagle Lease") is attached hereto as Exhibit B.

10.    Eagle defaulted under the Eagle Lease prior the Petition Date.

11.    As of the Petition Date, Eagle remains in possession of the Eagle Equipment.

### C. The Airlines Lease and the Airlines Equipment

12.    On or about December 28, 2007, GECC, as lessor, and Airlines, as lessee, entered into a Master Lease Agreement and a Lease Schedule 001 thereto (together, the "Airlines Lease") setting forth the terms and conditions upon which GECC leased to Airlines certain equipment described in more detail therein (the "Airlines Equipment"). A true and correct copy of the Airlines Lease is attached hereto as Exhibit C.

13.    Airlines defaulted under the Airlines Lease prior the Petition Date.

14.    As of the Petition Date, Airlines remains in possession of the Airlines Equipment.

### D. The Agricultural Lease and the Agricultural Vehicles

15.    On or about June 15, 2009, GE Capital Commercial Inc. *dba* Ford Credit Commercial Leasing ("GECCI") and Colonial, as lessors, and Agricultural, as lessee, entered into a Master Lease Agreement and a Schedule and Addendum No. 1 thereto (together the "Agricultural Lease") setting forth the terms and conditions upon which GECCI and Colonial leased to Agricultural certain vehicles described in more detail therein (the "Agricultural Vehicles"). A true and correct copy of the Agricultural Lease is attached hereto as Exhibit D.

16.   Subsequent to the parties' execution of the Agricultural Lease, GECCI assigned all of its rights, titles, and interest, in and to the Agricultural Lease and the Agricultural Vehicles to Colonial.

17.   Agricultural defaulted under the Agricultural Lease prior the Petition Date.

18.   Prior to the Petition Date, Agricultural surrendered possession of the Agricultural Vehicles to Colonial.

### E.   The Aircraft Security Agreements and the Vintage Aircraft

19.   On or about May 2, 2013, Lessors entered into a letter agreement (the "Letter Agreement") with Aviation, Eagle, Airlines, Agricultural, and Holdings (collectively, "Evergreen,") whereby Aviation, Eagle, Airlines, and Agricultural (collectively, "Lessees") requested that Lessors consent to the sale of the outstanding capital stock of Evergreen Helicopters, Inc. to a third party pursuant to the Aviation Lease, the Eagle Lease, the Airlines Lease, and the Agricultural Lease (collectively, the "Leases") and other agreements between Lessors and Lessees or their affiliates. A true and correct copy of the Letter Agreement is attached hereto as Exhibit E.

20.   As part of the consideration for Lessors' consent to enter into the Letter Agreement, Holdings entered into two aircraft security agreements ("Aircraft Security Agreements") pursuant to which Holdings granted first priority liens and security interests in favor of GC Air with respect to (i) one Ford 5-AT-B Tri-Motor, with Serial Number 8 and Registration Number N9645 (1928 Model), and (ii) one Eastern Aircraft TBM-3E Avenger, with Serial Number 91726 and Registration Number N5260V (1945 Model) (collectively, the "Vintage Aircraft"). True and correct copies of the Aircraft Security Agreements are attached to the Letter Agreement as Schedule 7.

21. In addition, as part of the consideration for Lessors' consent to enter into the Letter Agreement, Holdings guaranteed the Lessees' obligations under the Leases and executed the Limited Recourse, Secured Corporate Guaranty in favor of Lessors (the "Limited Recourse Guaranty"). A true and correct copy of the Limited Recourse Guaranty is attached to the Letter Agreement as Schedule 9.

22. Evergreen defaulted under the Letter Agreement prior the Petition Date, and specifically, Holdings defaulted under the Limited Recourse Guaranty and the Aircraft Security Agreements.

23. As of the Petition Date, Holdings remains in possession of the Vintage Aircraft.

**F.    The Put Agreement**

24. As part of the consideration for Lessors' consent to enter into the Letter Agreement, Holdings and Smith entered into a Put Agreement dated May 2, 2013 (the "Put Agreement"), pursuant to which Smith agreed to purchase or direct his estate to purchase, as applicable, the Vintage Aircraft from Holdings at fair market value following the occurrence of certain events described therein. A true and correct copy of the Put Agreement is attached to the Letter Agreement as Schedule 10.

25. Prior to the Petition Date, Smith breached the Put Agreement by failing to perform his obligations under that agreement.

**G.    Further Related Agreements**

26. As part of the consideration for Lessors' consent to enter into the Letter Agreement, Evergreen entered into a Cross-Collateral and Cross-Default Agreement with Lessors, pursuant to which Lessees and Evergreen agreed, among other things, that a default under one of the Transaction Documents (as defined therein) constituted a default under all the

Transaction Documents, and that any security interest held by Lessors in any assets held by Evergreen shall not terminate in whole or in part unless and until all obligations of every kind due or to become due are fully paid and the terms of every Transaction Document have been fully performed by Evergreen. A true and correct copy of the Cross-Collateral and Cross-Default Agreement is attached to the Letter Agreement as Schedule 13.

27. From time to time herein, the Leases, the Letter Agreement, the Aircraft Security Agreements, the Limited Recourse Guaranty, and the Cross-Collateral and Cross-Default Agreement, are referred to collectively as the "Agreements."

28. From time to time herein, the Eagle Equipment and the Airlines Equipment are referred to collectively as the "Equipment."

### H. Evergreen's Pre-Petition Default

29. Prior to the Petition Date, Evergreen defaulted under the Agreements for its failure to pay amounts due thereunder in the time and manner required by such agreements.

30. Specifically, Lessees failed to cure the Existing Defaults (as that term is defined in the Letter Agreement) and failed to make the scheduled payments due to Lessors beginning with the payment due on June 1, 2013 and continuing for all subsequent payments due thereafter, and upon such failures Holdings failed to make payments as required under the Limited Recourse Guaranty.

31. As of Petition Date, the amount due and owing by Evergreen to Lessors under the Agreements was not less than $15,000,000.

32. Based upon the best knowledge, information, and belief of Lessors, and in the absence of an inspection and assuming that the Equipment is in immediately salable condition,

the fair market value of the Airlines Equipment is approximately $500,000, and the fair market value of the Eagle Equipment is approximately $800,000.

33. Lessors have substantially performed any and all obligations to be performed by them under the terms of the Agreements and the Put Agreement.

### I. The State Court Action

34. Lessors filed the State Court Action on September 16, 2013, requesting relief against Evergreen and Smith under the Agreements and the Put Agreement.

35. On October 22, 2013 the State Court entered the Stipulated Order for Claim and Delivery and Injunctive Relief (the "Injunction"). A true and correct copy of the Injunction is attached hereto as Exhibit F.

36. Pursuant to the Injunction, among other things, Evergreen is required to turn over possession of the Equipment upon written demand.

37. On November 18, 2013, Lessors made written demand that Evergreen turn over possession of the Equipment on or before December 16, 2013. A true and correct copy of Lessors' demand letter to Evergreen dated November 18, 2013 is attached hereto as Exhibit G.

38. As of the Petition Date, Evergreen surrendered possession of the Gulf Stream Aircraft and the Agricultural Vehicles. In addition, Aviation executed the Voluntary Surrender Agreement between Evergreen International Aviation, Inc. and GC Air, LLC and the Termination of Lease, true and correct copies of which are attached hereto as Exhibit H.

39. However, despite demand, Evergreen has failed to surrender possession of the Equipment to Lessors.

40. Although Agricultural, Holdings, and Smith have not filed petitions for relief under the Bankruptcy Code and are not debtors in bankruptcy, on December 30, 2013, the State

Court entered a Notice of Stay, staying the State Court Action in its entirety. A true and correct copy of the Notice of Stay is attached hereto as <u>Exhibit I</u>.

## **RELIEF REQUESTED**

41. Lessors request that this Court enter an order granting Lessors relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to enforce their non-bankruptcy rights with respect to the Gulf Stream Aircraft and the Equipment. Specifically, Lessors seek relief from the stay to sell, lease, or otherwise dispose of the Gulf Stream Aircraft, and to exercise their rights under the Agreements and the Injunction to take possession of the Equipment, then sell, lease, or otherwise dispose of the same. In addition, out of an abundance of caution, Lessors seek the entry of an order declaring that the automatic stay is not in effect with respect to Lessors' remedies against non-debtors Agricultural, Holdings, and Smith, or in the alternative granting Lessors relief from the automatic stay to prosecute the State Court Action against the non-debtor defendants. Lessors intend to seek relief from the State Court to continue the State Court Action against Agricultural, Holdings, and Smith, and, therefore, request clarification as to the scope of the automatic stay in the instant proceedings.

## **BASIS FOR RELIEF REQUESTED**

42. The relevant portions of Section 362(d) provide:

> (d) On request of a party interest and after notice and a hearing, the court shall grant relief from the stay provided under section (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

43. It is well established that "Section 362(d)(1) and 362(d)(2) are disjunctive; the Court must lift the stay if the movant prevails under either of the two grounds." *In re Kaplan Breslaw Ash*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001).

44. Cause exists to lift or modify the stay under Section 362(d)(1). Additionally, Lessors are entitled to relief from the stay under Section 362(d)(2) because the Debtors have no equity in the Gulf Stream Aircraft and the Equipment, and the Gulf Stream Aircraft and the Equipment are not necessary for an effective reorganization of the Debtors.

### A. Cause Exists for Relief from the Automatic Stay Under Section 362(d)(1).

45. Section 362(d)(1) of the Bankruptcy Code provides for lifting of the automatic stay "for cause," and movant bears the initial burden to demonstrate that "cause exists." 11 U.S.C. § 362(d)(a). Upon motion to lift or modify the automatic stay, the burden of proof is a shifting one, with the movant having the burden of making the initial showing of "cause," and debtor having the ultimate burden of proof on all issues other than debtor's equity in the property. *See In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999); *see also* 11 U.S.C. § 362(g).

46. Prior to the Petition Date, the Debtors surrendered possession of the Gulf Stream Aircraft to GC Air and the parties terminated the Aviation Lease. As a result, the Gulf Stream Aircraft is not property of the estate and the Debtors have no possessory rights to the Gulf Stream Aircraft. To the extent that the automatic stay even applies, cause exists to grant Lessors relief from the stay so that they may mitigate their damages by selling, leasing, or otherwise disposing of the Gulf Stream Aircraft.

47. With respect to the Equipment, the State Court has already entered the Injunction, granting Lessors the right to possess the Equipment. The Debtors have no funds to make lease payments or adequately protect Lessors' interest in the Equipment. Cause exists to grant Lessors relief from the stay so they may take possession of the Equipment and mitigate their damages by selling, leasing, or otherwise disposing of the Equipment.

48. Accordingly cause exists to lift the automatic stay so that Lessors may exercise their non-bankruptcy rights with respect to the Gulf Stream Aircraft and the Equipment.

**B.  Cause Exists for Relief from the Automatic Stay Under Section 362(d)(2).**

49. Stay relief is also proper under Section 362(d)(2). Relief from stay must be granted if Debtors do not have an equity interest in the property and the property is not necessary for an effective reorganization. *See In re Diplomat Elecs. Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988). Both conditions are true in this case.

50. Under Section 362(d)(2)(A) of the Bankruptcy Code, "'equity' means the difference between the value of the property and the total amount of claims that it secures." *In re Elmira Litho, Inc.*, 174 B.R. 862, 901 (Bankr. S.D.N.Y. 1994) (citing *In re Diplomat Elecs.*, 82 B.R. at 692).

51. Debtors have no equity interest in the Gulf Stream Aircraft or the Equipment because, as lessees, they have no ownership interest in the leased property. Accordingly, Lessors have satisfied the first prong for stay relief under Section 362(d)(2)(A) of the Bankruptcy Code.

52. Once a debtor's lack of equity in the property has been established, the debtor must demonstrate that the property is necessary for an effective reorganization, not by showing that, absent retention of the property, no reorganization is possible, but by proving "the property is essential for an effective reorganization *that is in prospect.*" *United Sav. Ass'n of Tex. v.*

*Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in the original) (addressing the requirement for proof under 11 U.S.C. § 362(d)(2)).

53. Debtors have filed chapter 7 petitions. Given that these are liquidation cases, the Gulf Stream Aircraft and the Equipment are not necessary for an effective reorganization, as there will be no reorganization of the Debtors' businesses. Accordingly, Lessors have satisfied the second prong for stay relief under Section 362(d)(2) of the Bankruptcy Code and are entitled to immediate relief from the automatic stay to exercise their non-bankruptcy rights with respect to the Gulf Stream Aircraft and the Equipment.

### C. The Automatic Stay Does Not Apply to Lessors' Remedies Against Non-Debtor Defendants in the State Court Action.

54. Section 362(a)(1) sets forth the scope of the automatic stay as relevant to the State Court Action and the Motion. Section 362(a)(1) provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the cause under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

55. While the protections of the automatic stay are broad, they apply only to the debtor in bankruptcy, and not to third party co-defendants. *Brown v. Jevic*, 575 F.3d 322, 328 (3rd Cir. 2009) ("[T]he automatic stay provision does not apply generally to non-debtor parties"); *see also* Collier on Bankruptcy 362.03[3][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014) (discussing actions against non-debtors not stayed).

56. Agricultural, Holdings, and Smith are separate legal entities from the Debtors and have not filed petitions for relief under the Bankruptcy Code. The protections afforded to the Debtors under Section 362(a) are, therefore, not applicable to these parties.

57. Alternatively, should this Court decide that the automatic stay enjoins Lessors from proceeding against Agricultural, Holdings, and Smith in the State Court Action, Lessors request modification of the stay to permit them to proceed with the State Court Action. Under Section 362(d)(1), the court may modify the automatic stay for "cause" shown. Cause exists here to modify the stay because: (1) the Debtors and/or their bankruptcy estates will suffer no great prejudice, but without relief from stay, Lessors will be prevented from pursuing their rights against non-debtors with none of the other protections or benefits afforded to creditors in a bankruptcy case; (2) the estate will suffer no harm as Lessors seek recovery against assets that are not property of the estate; and (3) Lessors have a significant probability of prevailing on the merits of the State Court Action. *See In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009).

## NOTICE

58. The Lessors will serve notice of this Motion upon: (i) the Office of the United States Trustee; (ii) counsel to the Chapter 7 Trustee; (iii) counsel for Agricultural, Holdings, and Smith; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Lessors submit that no other or further notice is necessary.

59. No previous motion for the relief sought herein has been made by the Lessors to this Court.

WHEREFORE, for the reasons stated herein, Lessors request that this Court: (a) grant relief from the automatic stay to permit Lessors to exercise their non-bankruptcy rights with respect to the Gulf Stream Aircraft and the Equipment; (b) order that the stay is not in effect with respect to Lessors' remedies against non-debtors in the State Court Action and that Lessors may proceed with the State Court Action against the non-debtors; (c) order that such stay relief is effective immediately and that the fourteen-day delay to the effectiveness of such relief is waived; and (d) grant such other and further relief as this Court deems appropriate.

Dated: January 17, 2014

Respectfully Submitted,

REED SMITH LLP

By: /s/ Brian M. Rostocki
Brian M. Rostocki (No. 4599)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Phone: (302) 778-7500
Facsimile: (302) 778-7575

and

Aaron B. Chapin, Esquire
10 S. Wacker Drive, Suite 4000
Chicago, Illinois 60606
Phone: (312) 207-1000
Facsimile: (312) 207-6400

Counsel for General Electric Capital Corporation, GC Air, LLC, and Colonial Pacific Leasing Corporation