## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| EVERGREEN INTERNATIONAL AVIATION, INC., *et al.*[1] | Case No. 13-13364 (MFW) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF TRUSTEE FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

Alfred T. Giuliano, chapter 7 trustee (the "Trustee") to the estates of the above-captioned

debtors (the "Debtors"), hereby submits this motion (this "Motion") for entry of an interim

order substantially in the form attached hereto as **Exhibit 1** (the "Interim Order"), and following

a final hearing, a form of final order to be submitted, pursuant to sections 361, 362, 363 and

507 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal

Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 4001-2 of the Local

Rules of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), authorizing the Trustee to (a) use cash collateral, and (b) provide adequate

protection to the Pre-Petition Agents (as defined below).  The Interim Order covers the

period through February 28, 2014 and includes authority to use up to $325,000 of the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Evergreen International Aviation, Inc. (9079); Evergreen Aviation Ground Logistics Enterprise, Inc. (6736); Evergreen Defense & Security Services, Inc. (0118); Evergreen International Airlines, Inc. (7870); Evergreen Systems Logistics, Inc. (0610); Evergreen Trade, Inc. (0952); and Supertanker Services, Inc. (3389).  The Debtors' address is 3850 Three Mile Lane, McMinnville, Oregon 97128.

Debtors' cash.  <u>The Trustee is informed that the Pre-Petition Lenders consent to entry of the</u> <u>Interim Order</u>.  In support of this Motion, the Trustee represents as follows:

<b><u>JURISDICTION</u></b>

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

<b><u>BACKGROUND</u></b>

4.      On December 31, 2013 (the "<u>Petition Date</u>"), the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 7 of the Bankruptcy Code. Alfred T. Giuliano was appointed as the Trustee.

5.      Based in McMinnville, Oregon, the Debtors were a privately-held global aviation services company that was a leading provider of diversified air cargo transportation and aviation support services under the Evergreen name.

6.      On December 18, 2013, certain petitioning creditors of Debtor Evergreen International Airlines, Inc. ("<u>EIA</u>") filed an involuntary chapter 7 petition against EIA in the United States Bankruptcy Court for the Eastern District of New York, Case No. 13-47494 (NHK) (the "<u>EDNY Involuntary Case</u>").  EIA is the only debtor in the EDNY Involuntary Case. The remaining six Debtors in the instant cases are <u>not</u> subject to the EDNY Involuntary Case.

The Trustee has negotiated a consensual stipulation of dismissal of the EDNY Involuntary Case, which is currently set for hearing on February 11, 2014.

7.      By this Motion, the Trustee seeks authority to access cash collateral in the Debtors' estates pursuant to the Approved Budget (as defined below) consented to by the Pre-Petition Lenders.  Specifically, during the interim period through February 28, 2014, the Trustee only proposes to access cash collateral held in the Debtors' estates, other than EIA's cash, pending dismissal of the EDNY Involuntary Case.

8.      The Trustee requires immediate access to such cash collateral to administer these chapter 7 cases.  Subject to and in accordance with the Approved Budget, the Trustee proposes to use the cash collateral to, among other things:  (a) maintain, insure, and then liquidate the Debtors' personal and real property interests in 21 locations throughout the United States, (b) pursue litigation claims (as appropriate), (c) satisfy the administrative costs of these estates (including fees and expenses of the Trustee and his professionals), and (d) pay priority prepetition hourly wage claims (subject to separate Court approval).  The Trustee intends to temporarily rehire approximately thirty of the Debtors' former employees in order to assist him with the liquidation effort.

9.      Pending a final hearing and in order to avoid immediate and irreparable injury to the Debtors' estates, the Trustee seeks interim approval to use up to $325,000 of cash collateral in accordance with the Approved Budget for the following purposes:  (a) payroll, payroll taxes, and workers' compensation insurance, (b) rent at airport terminals where the Debtors' aircraft and equipment are located, (c) utilities for the estates' various rented facilities and security

deposits, if required, (d) auto insurance, and (e) the cost of moving records and other

miscellaneous administrative expenses of the estates. The foregoing does not include any

amounts for payment of the statutory trustee commission or the fees and expenses of the

Trustee's professionals. In addition, the Trustee intends to fund the ongoing Anchorage

Litigation (as defined below), to the extent approved by the Pre-Petition Lenders, which he

believes constitutes a significant asset of these estates.

## PREPETITION CAPITAL STRUCTURE

10.    The First Lien Agents and the First Lien Lenders, and the Second Lien Agent and

the Second Lien Lenders, as applicable (all as defined below), assert the following:

(c)    First Lien Credit Facility. Pursuant to that certain *First Lien*

*Credit and Guaranty Agreement*, dated as of June 30, 2011 (as amended and restated as of

May 2, 2013), by and among Evergreen International Aviation, Inc., as borrower, Evergreen

Holdings, Inc., certain subsidiaries of Evergreen International Aviation, Inc., as guarantors,

the lenders from time to time a party thereto (each a "First Lien Lender" and collectively,

the "First Lien Lenders"), Goldman Sachs Lender Partners LLC, as Sole Lead Arranger,

Sole Lead Bookrunner and Syndication Agent, Goldman Sachs Lending Partners LLC, as

Documentation Agent, Wells Fargo Bank, National Association, as Administrative Agent

(the "First Lien Administrative Agent"), and Wells Fargo Bank Northwest, National

Association, as collateral agent for the First Lien Lenders (in such capacity, the "First Lien

Collateral Agent" and together with the other First Lien Credit and Guarantee Agreement

agents, each a "First Lien Agent" and together, the "First Lien Agents") (as supplemented or

otherwise modified from time to time, the "First Lien Credit and Guaranty Agreement" and, together with all other loan and security documents executed in connection therewith, the "First Lien Credit Documents"), the First Lien Lenders extended loans to the Debtors. All obligations of the Debtors arising under the First Lien Credit and Guaranty Agreement including the "*Obligations*" as defined in the First Lien Credit and Guaranty Agreement shall collectively be referred to herein as the "First Lien Credit Obligations."

(d)    Second Lien Credit Facility. Pursuant to a second lien credit facility (the "Second Lien Credit Facility") under that certain *Second Amended and Restated Second Lien Credit Agreement*, dated May 2, 2013 (the "Second Lien Credit Agreement" and, together with all other loan and security documents executed in connection therewith, the "Second Lien Credit Documents" and together with the  Credit Documents, the "Pre-Petition Credit Documents"), by and among Evergreen Holdings, Inc. and Evergreen International Aviation, Inc., certain subsidiaries of Evergreen International Aviation, Inc., the lenders listed therein (the "Second Lien Lenders" and together with the First Lien Lenders the "Pre-Petition Lenders"), and Wilmington Trust, National Association, as administrative agent and collateral agent (the administrative and collateral agent under the Second Lien Credit Agreement shall be defined as the "Second Lien Agent" and the Second Lien Agent together with the First Lien Agents shall be defined as the "Pre-Petition Agents," which Pre-Petition Agents and the Pre-Petition Lenders are collectively the "Pre-Petition Secured Parties"), the Second Lien Lenders extended loans to the Debtors in connection with the Second Lien Credit Facility. All obligations of the Debtors arising

under the Second Lien Credit Facility including the "*Loan Obligations*" as defined in the

Second Lien Credit Agreement, shall be referred to herein as the "Second Lien Credit

Obligations," and together with the First Lien Credit Obligations shall collectively be

referred to herein as the "Pre-Petition Obligations."

       (e)     Pre-Petition Credit Obligations. As of the Petition Date, the

Debtors were truly and justly indebted (i) to the First Lien Agents and the First Lien Lenders

pursuant to the First Lien Credit Documents, without defense, counterclaim or offset of any

kind, in respect of loans made by the First Lien Lenders in the aggregate principal amount of

not less than $11,105,061.50, plus any accrued and unpaid interest and additional fees and

expenses (including any fees and expenses of attorneys, accountants, appraisers and

financial advisors that are chargeable or reimbursable under the First Lien Credit

Documents) (the "Pre-Petition First Lien Claims"), and (ii) to the Second Lien Agents and

the Second Lien Lenders pursuant to the Second Lien Credit Documents, without defense,

counterclaim or offset of any kind, in respect of loans made by the Second Lien Lenders in

the aggregate principal amount of not less than $89,057,243.79, plus any accrued and unpaid

interest and additional fees and expenses (including any fees and expenses of attorneys,

accountants, appraisers and financial advisors that are chargeable or reimbursable under the

Second Lien Credit Documents) (the "Pre-Petition Second Lien Claims").

       (f)     Pre-Petition First Liens and Collateral.  Pursuant to the First

Lien Credit Documents, the Debtors granted to the First Lien Collateral Agent, for the

benefit of the First Lien Lenders and to secure the First Lien Credit Obligations, a first-

priority security interest in and continuing lien (the "Pre-Petition First Priority Liens") on all or substantially all of the Debtors' assets and property (which for the avoidance of doubt includes Cash Collateral and "*Collateral*" as defined in the First Lien Credit Documents), including, without limitation, all aircraft in which the First Lien Collateral Agent, for the benefit of the First Lien Lenders, has been granted a security interest (the "Pre-Petition First Lien Collateral").

      (g)    Pre-Petition Second Liens and Collateral. Pursuant to the Second Lien Credit Documents, the Debtors granted to the Second Lien Agent, for the benefit of the Second Lien Lenders, to secure the Second Lien Credit Obligations, a second-priority security interest in and continuing lien (the "Pre-Petition Second Priority Liens" and together with the Pre-Petition First Priority Liens, the "Pre-Petition Liens") on all or substantially all of the Debtors' assets and property, including, without limitation, all aircraft in which the Second Lien Collateral Agent, for the benefit of the Second Lien Lenders, has been granted a security interest (the "Pre-Petition Second Lien Collateral" and together with the Pre-Petition First Lien Collateral, the "Pre-Petition Collateral").

      (h)    Cash Collateral. All of the Debtors' cash, including cash in deposit accounts, wherever located, whether Pre-Petition Collateral or proceeds thereof, constitutes the Cash Collateral of the Pre-Petition Secured Parties

     11.    Subject to the challenge provisions in paragraph 11 of the Interim Order, the Trustee makes no representation, warranty, acknowledgement or admission regarding whether he has (or does not have) any defenses, setoffs, counterclaims or recoupments that could be asserted

against the Pre-Petition Agents and the Trustee reserves all rights, claims and defenses with

respect thereto. In addition, subject to paragraph 11 of the Interim Order, the Trustee makes no

representation, warranty, acknowledgement or admission with respect to the enforceability,

perfection, priority, avoidability or validity of the Pre-Petition Secured Parties' security interests

in the Debtors' assets.

## RELIEF REQUESTED

12.     By this Motion, the Trustee seeks the entry of the Interim Order (and following a

final hearing, a final order consistent with the Interim Order and consented to by the Pre-Petition

Lenders (the "Final Order")) that, subject in all cases to the Carve-Out (as defined below):

a.     authorizes the Trustee to use cash collateral (the "Cash Collateral"), other than EIA's cash during the interim period, in which the Pre-Petition Agents have or assert an interest;

b.     to the extent of any diminution in the value of the interests of the Pre-Petition Secured Parties in the Debtors' assets (including, without limitation, Cash Collateral), grants valid, binding, enforceable and perfected replacement liens in favor of the First Lien Collateral Agent and Second Lien Agent on all assets and property of the Debtors of the same type and nature that existed as of the Petition Date with the same validity (or invalidity) and priority as existed as of the Petition Date, excluding any causes of action arising under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions") or the proceeds thereof;

c.     to the extent of any diminution in the value of the interests of the Pre-Petition Secured Parties in the Debtors' assets (including, without limitation, Cash Collateral), authorizes the Trustee to provide superpriority administrative expense claims to the First Lien Administrative Agent and Second Lien Agent that shall be payable out of all available assets in the Debtors' estates, including proceeds of an action styled as *Evergreen International Airlines, Inc., et al. v. Anchorage Advisors, LLC, et al.*, Case No. 3:11-cv-01416-PK (D. Ore) (the "Anchorage Litigation"), the Debtors' real estate interests in a facility utilized to store helicopters (the "Helicopter Building"), and the proceeds thereof, but excluding the Avoidance Actions and the proceeds thereof. Notwithstanding the foregoing, to the extent the

Trustee pays the unpaid prepetition hourly payroll that was due and owing to the Debtors' hourly employees, the First Lien Administrative Agent's and Second Lien Agent's adequate protection claim for such payment shall attach to all assets of the Debtors' estates, <u>including</u>, but not limited to, Avoidance Actions and the proceeds thereof;

d.    modifies the automatic stay imposed pursuant to section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;

e.    authorizes the sharing of proceeds from the Anchorage Litigation as provided in the Interim Order; and

f.    waives any applicable stays under the Bankruptcy Rules and provides for the immediate effectiveness of the Interim Order.

The Trustee also requests that the Court set a final hearing on the Motion to occur on or before February 28, 2014.

## <u>SUMMARY OF THE INTERIM ORDER</u>

13.    In accordance with Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-2, below is a summary[2] of the terms of the proposed use of Cash Collateral:

a.    <u>Amount of Cash Collateral to Be Used</u>. (Interim Order ¶ 6). The Trustee seeks to use Cash Collateral up to $325,000 through February 28, 2014 consistent with the expenditures described in the budget, the initial form of which is attached to the proposed Interim Order as Exhibit A (the "<u>Approved Budget</u>").

b.    <u>Parties with an Interest in Cash Collateral</u>. The Pre-Petition Secured Parties assert an interest in the Cash Collateral.

c.    <u>Adequate Protection</u>. (Interim Order ¶ 7). The Trustee proposes to grant, to the extent of any diminution in the value of the interests of the Pre-Petition Secured Parties in the Debtors' assets (including, without limitation, Cash Collateral), valid, binding, enforceable and perfected replacement liens in favor of the First Lien Collateral Agent and Second Lien Agent on all assets and property of the Debtors of the same type and nature that existed as of the Petition Date with the same

---

[2] The summary of the Interim Order and the terms and conditions for the use of Cash Collateral set forth in this Motion is intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof. The summary is qualified in its entirety by the Interim Order. In the event there is any conflict between this Motion and the Interim Order, the Interim Order will control in all respects.

validity (or invalidity) and priority as existed as of the Petition Date (the "Replacement Liens"), excluding the Avoidance Actions or the proceeds thereof. Further, to the extent of any diminution in the value of the interests of the Pre-Petition Secured Parties in the Debtors' assets (including, without limitation, Cash Collateral), the Trustee seeks authority to provide superpriority administrative expense claims to the First Lien Administrative Agent and Second Lien Agent (the "Adequate Protection Claims") that shall be payable out of all available assets in the Debtors' estates, including, without limitation, proceeds of the Anchorage Litigation, the Helicopter Building, and the proceeds thereof, but excluding the Avoidance Actions and the proceeds thereof. Notwithstanding the foregoing, to the extent the Trustee pays the unpaid prepetition hourly payroll that was due and owing to the Debtors' hourly employees, the First Lien Administrative Agent's and Second Lien Agent's adequate protection claim for such payment shall attach to all assets of the Debtors' estates, including, but not limited to, Avoidance Actions and the proceeds thereof.

d.      Carve Out. (Interim Order ¶ 8). Subject to paragraph 11 of the Interim Order and provided no Challenge (as defined below) has been asserted on or before the Challenge Deadline (as defined below), the Replacement Liens and the Adequate Protection Claims, as well as all other legal and equitable interests of the Pre-Petition Secured Parties in the Debtors' assets or their estates, shall be subordinate in all respects to a limited carve out (the "Carve Out"), which shall be comprised of the following: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a); (ii) all allowed fees and expenses of the Trustee, including, but not limited to, his statutory commission, as permitted under the Bankruptcy Code (excluding any fees and expenses in respect of assets not subject to the Replacement Liens or the Adequate Protection Claims); (iii) an aggregate amount not to exceed $800,000 for allowed fees and expenses incurred by the professionals retained by the Trustee under sections 327 or 328 of the Bankruptcy Code (excluding any fees and expenses in respect of assets not subject to the Replacement Liens or the Adequate Protection Claims), not to exceed the following amounts for the following professionals: (a) $50,000 for the Trustee's local counsel in jurisdictions outside of Delaware, (b) $250,000 for the Trustee's accountant (Giuliano Miller & Company), and (c) $500,000 for the Trustee's bankruptcy counsel (Pachulski Stang Ziehl & Jones LLP) (the "Professional Fee Carve Out"); and (iv) $250,000 solely for distributions to the Debtors' estates (but not to be used for any fees and expenses of the Trustee or his professionals).

e.      Anchorage Litigation. (Interim Order ¶ 9). In addition to the payments contemplated in the Approved Budget and the Carve-Out,

the Trustee seeks authorization, and the Pre-Petition Secured Lenders consent, to the use of Cash Collateral in order to fund the Anchorage Litigation, in such amounts as the Required Lenders (as defined in the Interim Order) may agree in advance in writing (the "Anchorage Litigation Funding"), but reserve the right to terminate such funding in their discretion on ten (10) business days' written notice to the Trustee. The Trustee shall consult with the Pre-Petition Secured Parties prior to reaching any settlement of the Anchorage Litigation.  Provided that a Challenge is not asserted on or before the Challenge Deadline, the Interim Order incorporates a sharing arrangement with respect to the proceeds of the Anchorage Litigation between the Debtors' estates and the Pre-Petition Secured Parties.  The Adequate Protection Claim for the Anchorage Litigation Funding shall not attach to, or be payable from, the Avoidance Actions or proceeds therefrom.

f.    Challenge. (Interim Order ¶ 11).  The Trustee and any other parties in interest shall have until February 28, 2014 (the "Challenge Deadline") in order to assert an objection, challenge, or other action with respect to the Pre-Petition Claims and/or Pre-Petition Liens (a "Challenge"), provided that the Debtors grant of a lien and security interest in the Anchorage Litigation in favor of the Pre-Petition Secured Parties on or about December 10, 2013 is deemed avoided as a preferential transfer under 11 U.S.C. § 547 and 550 without the need for the assertion of a Challenge, provided further that the avoidance of such preferential transfer shall not include or apply, nor be deemed to include or apply, to any liens or security interests in favor of the Pre-Petition Secured Parties in any claims arising in the Anchorage Litigation that are contractual in nature.  Absent a Challenge on or before the Challenge Deadline (except as set forth in the preceding sentence), (i) the Pre-Petition First Lien Claims shall be deemed allowed and the Pre-Petition First Priority Liens shall be deemed valid, enforceable, non-avoidable, first priority liens, and (ii) the Pre-Petition Second Lien Claims shall be deemed allowed and the Pre-Petition Second Priority Liens shall be deemed valid, enforceable, non-avoidable, second priority liens.  The Challenge Deadline may be extended by written agreement of the Trustee and the Required Lenders, or by the Court upon a showing of good cause.  Notwithstanding the occurrence of a Termination Event, the Carve-Out shall continue to apply, except in the event that such termination is the result of the assertion of a Challenge.

g.    Termination.  (Interim Order ¶ 10).  The Trustee's authorization to use Cash Collateral, and any and all obligations of the Pre-Petition Secured Parties under the Interim Order, shall immediately cease, upon the earliest of any of the following (each a "Termination Event"): (a)  such time as the Trustee defaults under the terms or conditions of the

Interim Order unless such default is waived in writing by the Required Lenders; (b) such time as the Trustee makes payments which are not authorized by the Interim Order unless such unauthorized payment(s) is waived in writing by the Required Lenders; (c) the assertion of any Challenge against the Pre-Prepetition Obligations and/or the Pre-Petition Liens; (d) the entry of any order materially modifying, reversing, revoking, staying, rescinding, vacating or amending the Interim Order without the express prior written consent of the Required Lenders; (e) the Final Order is not entered on or before February 28, 2014, unless extended in writing by the Required Lenders, or (f) 5:00 p.m. EST on April 15, 2014, unless extended in writing by the Required Lenders.

## DISCLOSURES

14.     Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, a debtor in possession seeking authority to use cash collateral or to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing. The debtor in possession must also justify the inclusion of such provisions. Set forth below are the disclosures required in accordance with such rules:

a.      Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing. **The Interim Order does not cross-collateralize any prepetition debt, except in the form of the Replacement Liens.**

b.      Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or (ii) the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the Committee at least sixty (60) days from the date of its formation to investigate such matters. **The Interim Order contains the Pre-Petition Secured Parties' assertions relating to the validity, perfection, enforceability and amount of their prepetition liens and claims. However, such assertions are only binding on the Debtors' estates to the extent that no challenge is brought by the Trustee or other parties in interest by February 28, 2014, or such later date agreed to by the Trustee and the Required Lenders, or by the Court upon a showing of good cause.**

c. Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code. **Although the Interim Order does not provide for a waiver of the Trustee's rights under section 506(c) of the Bankruptcy Code, the Trustee expects the Final Order to contain such waiver..**

d. Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. **The Interim Order does not contain any provisions that grant liens on the Avoidance Actions.**

e. Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **The Interim Order does not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.**

f. Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. **Given that these are Chapter 7 cases, there are no committees here.**

g. Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder. **The Interim Order does not provide for the priming of any secured lien without the consent of that lienholder.**

h. Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case. **The Interim Order, at ¶ 7, describes the forms of adequate protection to be provided to the Pre-Petition Agents.**

i. Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay. **The Interim Order does not provide for a waiver or modification of the automatic stay, except to the extent necessary for approval of the Replacement Liens and the Adequate Protection Claims.**

j.  Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate.  **The Interim Order, at ¶ 7, provides for the perfection and validity of the Replacement Liens.  No further filing or recording under the laws of any jurisdiction should be required.**

## APPLICABLE AUTHORITY

15.  Section 361 of the Bankruptcy Code provides, in pertinent part, as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property; . . .
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

16.  Section 362 of the Bankruptcy Code provides, in pertinent part, as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .
>
> (1) for cause . . . .

11 U.S.C. § 362.

17.  Section 363 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) In this section "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use of occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 522(b) of this title, whether existing before or after the commencement of a case under this title.

*       *       *

(c)(1) If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –

(A)  each entity that has an interest in such cash collateral consents; or

(B)  the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this section may be a preliminary hearing . . . but shall be scheduled in accordance with the needs of the debtor.  If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section.  The court shall act promptly on a request for authorization under paragraph (2)(B) of this subsection.

*       *       *

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or

condition such use, sale, or lease as is necessary to provide
adequate protection of such interest.

11 U.S.C. § 363.

18.    Section 507 of the Bankruptcy Code provides, in pertinent part, as follows:

(b) If the trustee, under section 362, 363, or 364 of this title,
provides adequate protection of the interest of a holder of a claim
secured by a lien on property of the debtor and if, notwithstanding
such protection, such creditor has a claim allowable under
subsection (a)(2) of this section arising from the stay of action
against such property under section 362 of this title, from the use,
sale, or lease of such property under section 363 of this title, or
from the granting of a lien under section 364(d) of this title, then
such creditor's claim under such subsection shall have priority
over every other claim allowable under such subsection.

11 U.S.C. §507.

19.    Rule 4001 of the Bankruptcy Code provides, in pertinent part, as follows:

(d) *Agreement relating to . . . use of cash collateral . . .*

(1) *Motion; Service.*

(A) A motion for approval of any of the following shall be
accompanied by a copy of the agreement and a proposed form of
order: . . . (iv) an agreement to use cash collateral;

(B) *Contents.*

The motion shall consist of or (if the motion is more than five
pages in length) begin with a concise statement of the relief
requested, not to exceed five pages, that lists or summarizes, and
sets out the location within the relevant documents of, all material
provisions of the agreement. In addition, the concise statement
shall briefly list or summarize, and identify the specific location of,
each provision in the proposed form of order, agreement, or other
document of the type listed in subdivision (c)(1)(B). The motion
shall also describe the nature and extent of each such provision..

(C) *Service.*

The motion shall be served on: (1) any committee elected under §
705 or appointed under§ 1102 of the Code, or its authorized agent,

or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed under § 1102, on the creditors included on the list filed under Rule 1007(d); and (2) on any other entity the court directs.

(2) *Disposition; Hearing.* If no objection is filed, the court may enter an order approving or disapproving the agreement without conducting a hearing. If an objection is filed or if the court determines a hearing is appropriate, the court shall hold a hearing on no less than seven days' notice to the objector, the movant, the parties on whom service is required by paragraph (1) of this subdivision and such other entities as the court may direct.

FED. R. BANKR. P. 4001.

## BASIS FOR RELIEF

### A.    The Trustee Has an Immediate Need to Use Cash Collateral

20.    Bankruptcy Rule 4001(b) permits a court to approve a trustee's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985); *see also In re Ames Dep't Stores Inc.,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent harm to the debtor's business.

21.    As previously noted, in order to address the immediate need for the estates to have funding to administer these estates, the Trustee requires access to Cash Collateral. The use of Cash Collateral will provide the Trustee with the necessary capital with which to administer

these cases pending a final hearing, including funding the estates' rent, insurance, utilities, and employee obligations.  The Trustee requests authority to utilize up to $325,000 of cash though February 28, 2014, pending the final hearing.  During the interim period, the Trustee does not propose to use any cash of EIA, which remains subject to the EDNY Involuntary Case.  In addition, the Trustee seeks authority to fund the ongoing Anchorage Litigation, to the extent approved by the Pre-Petition Lenders, which he believes constitutes a significant asset of these estates.

22.     The Trustee does not have any available sources of working capital or financing to preserve the Debtors' estates without the use of Cash Collateral.  The Debtors have real estate, aircraft, and other personal property located in at least 21 locations throughout the United States. The Trustee's ability to preserve the value of these assets is dependent on his ability to pay certain basic administrative expenses.   Hence, absent interim access to Cash Collateral, the Debtors' estates will be faced with immediate and irreparable harm.

**B.**     **Section 363 of the Bankruptcy Code Authorizes the Trustee's Use of Cash Collateral**

23.     Section 363(c)(2) of the Bankruptcy Code provides that a trustee may not use cash collateral unless (i) each entity that has an interest in such cash collateral provides consent, or (ii) the court approves the use of cash collateral after notice and a hearing.  *See* 11 U.S.C. § 363(c). Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

24.     Neither section 361 nor any other provision of the Bankruptcy Code defines the

nature and extent of the "interest in property" of which a secured creditor is entitled to adequate

protection under section 361.  However, the statute plainly provides that a qualifying interest

demands protection only to the extent that the use of the creditor's collateral will result in a

decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see

also General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R.

987, 989-90 & n.4 (Bankr. D. Utah 1982).

25.     The phrase "value of such entity's interest," although not defined in the

Bankruptcy Code, was addressed by the Supreme Court in the landmark *Timbers* decision,

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs, Ltd.*, 484 U.S. 365, 108 S.Ct.

626 (1988).  For the meaning of "value of such entity's interest," the Supreme Court was guided

by section 506(a), which defines a creditor's allowed secured claim:

> The phrase 'value of such creditor's interest' in § 506(a) means
> 'the value of the collateral.' H.R. Rep. No. 950-595, pp. 181, 356
> (1977); *see also* S. Rep. No. 95-989, p. 68 (1978), U.S. Code
> Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312.  We
> think the phrase 'value of such entity's interest' in § 361(1) and
> (2), when applied to secured creditors, means the same.

*Id.* at 630 (emphasis added).

26.     *Timbers* teaches that a secured creditor is entitled to "adequate protection" only

against diminution in the value of the collateral securing the creditor's allowed secured claim.

Under *Timbers*, therefore, where the "value of the collateral" is not diminishing by its use, sale,

or lease, the creditor's interest is adequately protected.  This conclusion flows directly from the

equivalency of "value of such entity's interests" with "value of the collateral."

27.    <u>Here, the Trustee is informed that the Pre-Petition Lenders consent to entry of the Interim Order</u>.

28.    Further, the Trustee has agreed to provide adequate protection in the form of the Replacement Liens and the Adequate Protection Claims.  Section 361 of the Bankruptcy Code authorizes a debtor to provide adequate protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." *See* 11 U.S.C. § 361.

29.    The Trustee submits that the proposed adequate protection components set forth in the Interim Order and summarized herein are fair and reasonable and compensate the Pre-Petition Secured Parties for any possible Diminution in Value of the Debtors' assets.  Given the significant value that the Debtors' estates stand to lose in the event they are denied access to continued use of Cash Collateral, it is the Trustee's sound business judgment that such protections are wholly appropriate and justified.

<b><u>INTERIM ORDER AND FINAL HEARING</u></b>

30.    Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Trustee requests that the Court set a date for the initial hearing that is as soon as practicable, set a final hearing on a date on or before February 28, 2014, and fix the time and date prior to the final hearing for parties to file objections to the Motion.

31.    The urgent need to preserve the estates' assets, and avoid immediate and irreparable harm to the Debtors' estates, makes it imperative that the Trustee is authorized to use the Cash Collateral pending the final hearing.

32.    Accordingly, the Trustee respectfully requests that, pending the hearing on a final order, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and be deemed binding.

<u>**NOTICE WITH RESPECT TO INTERIM HEARING**</u>

33.    Notice of this Motion prior to the interim hearing will be provided to:  (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) counsel for the Pre-Petition Lenders; (iv) all other known parties asserting a lien against the Debtors' assets, and (v) any parties requesting notice in these cases pursuant to Bankruptcy Rule 2002, by telecopy, email, overnight courier and/or hand delivery.  Because of the nature of the relief requested, the Trustee respectfully submits that no other or further notice of the interim relief requested in this Motion as it relates to the Interim Order need be given.

<u>**NOTICE WITH RESPECT TO FINAL HEARING**</u>

34.    Pursuant to Bankruptcy Rule 4001, the Trustee respectfully requests that he be authorized to provide notice of the Final Hearing by serving a copy of this Motion, together with the Interim Order, by regular U.S. mail (or for those set up to receive electronic transmissions, by electronic transmission), upon the parties set forth in the foregoing paragraph, <u>plus</u> all creditors and parties in interest in the Debtors' cases.  The Trustee respectfully requests that such notice is

sufficient and that this Court find that no further notice of this Motion, the Final Hearing, and the

Final Order is required.

## NO PRIOR REQUEST

35.     No prior motion for the relief requested herein has been made to this or any other

court.

WHEREFORE, based upon the foregoing, the Trustee requests entry of the Interim

Order and, following a final hearing, a final order under sections 361, 362, 363, and 507 of the

Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, authorizing the Trustee to (a)

use Cash Collateral and (b) provide adequate protection to the Pre-Petition Secured Parties, and

granting such other and further relief as may be appropriate.


Dated:  February 3, 2014              PACHULSKI STANG ZIEHL & JONES LLP

                                      */s/ Bradford J. Sandler*
                                      Bradford J. Sandler (DE Bar No. 4142)
                                      John W. Lucas (CA Bar No. 271038)
                                      Peter J. Keane (DE Bar No. 5503)
                                      919 N. Market Street, 17th Floor
                                      Wilmington, DE  19801
                                      Telephone:  (302) 652-4100
                                      Facsimile:  (302) 652-4400
                                      Email:     bsandler@pszjlaw.com
                                                 jlucas@pszjlaw.com
                                                 pkeane@pszjlaw.com

                                      [Proposed] Counsel to Alfred T. Giuliano, Chapter 7
                                      Trustee