# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EVERGREEN INTERNATIONAL AVIATION, INC., *et al.* [1]<br><br>Debtors. | Chapter 7<br><br>Case No. 13-13364 (MFW)<br><br>(Joint Administration Requested) |

## MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, FOR ORDER PURSUANT TO 11 U.S.C. § § 105, 327(a), 328(a), 363, AND 721 AUTHORIZING THE TRUSTEE (A) TO OPERATE THE DEBTORS' BUSINESS ON A LIMITED BASIS EFFECTIVE AS OF THE PETITION DATE; (B) TO EMPLOY CERTAIN OF THE DEBTORS FORMER EMPLOYEES AND TO PAY FOR SERVICES; AND (C) FOR RELATED RELIEF

Alfred T. Giuliano, chapter 7 trustee (the "Trustee"), to the estates of the above-captioned debtors (the "Debtors"), hereby moves (the "Motion") the Court for the entry of an order authorizing the Trustee (a) to operate the Debtors' business on a limited basis effective as of the Petition Date (defined below); (b) to employ certain of the Debtors' former employees and to pay for services of such employees; and (c) for related relief. In support of the Motion, the Trustee respectfully states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested in this Motion are 11 U.S.C.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Evergreen International Aviation, Inc. (9079); Evergreen Aviation Ground Logistics Enterprise, Inc. (6736); Evergreen Defense & Security Services, Inc. (0118); Evergreen International Airlines, Inc. (7870); Evergreen Systems Logistics, Inc. (0610); Evergreen Trade, Inc. (0952); and Supertanker Services, Inc. (3389). The Debtors' address is 3850 Three Mile Lane, McMinnville, Oregon 97128.

§§ 105(a), 327(a), 328(a), 363, and 721.

## Background

3. On December 31, 2013 (the "Petition Date"), the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 7 of the Bankruptcy Code. Alfred T. Giuliano was appointed as the Trustee.

## Background on the Debtors

4. Based in McMinnville, Oregon, the Debtors were a privately-held global aviation services company that was a leading provider of diversified air cargo transportation and aviation support services under the Evergreen name. A corporate organization chart is attached hereto as Exhibit A. A description of each of the Debtors is set forth below:

    a. Evergreen International Aviation, Inc. ("EA"). EA is the direct and indirect parent of each of the other Debtors. EA was a holding company that had no operations other than providing corporate level shared services (e.g., legal, accounting, tax, cash management, etc.) to its operating subsidiaries.

    b. Evergreen International Airlines, Inc. ("EIA"). EIA provided military and commercial air cargo services around the globe through a network of global offices and affiliations. In addition to its commercial service, EIA has flown for Air Mobility Command, providing rapid, global mobility for America's armed forces. On November 29, 2013, EIA flew its last military operation and is no longer active.

    c. Supertanker Services, Inc., ("Supertanker"). Supertanker employed a Boeing 747 Supertanker to bring innovative technology and capability to fight fires. The Debtors' interest in the supertanker aircraft (which was owned by an affiliate) was purportedly sold, though the Debtors are unsure if this transaction has been completed. Supertanker is no longer active but continues to hold certain intellectual property rights.

    d. Evergreen Aviation Ground Logistics Enterprise, Inc. ("Eagle"). Eagle provided ground handling services at more than 20 domestic airports, servicing customers and operating in cities such as New York, Los Angeles, Chicago, Dallas, Miami, and Anchorage. Eagle's client base included the United States Postal Service and commercial air carriers. Eagle ceased operations as of December 29, 2013.

e.  Evergreen Defense & Security Services, Inc. ("EDSS"). EDSS, a subsidiary of Eagle, was established in order to provide security in many different industries, including the provision of security services in both private and commercial settings. This entity is no longer active.

f.  Evergreen Trade, Inc. ("Trade"). Trade offered aircraft and parts support to airlines and operators with aircraft and spare parts requirements. Trade's services including buying, selling, leasing, and brokering aircraft, helicopters, parts, and materials to global clients and providing end of life aircraft retirement and recycling services. Trade ceased operations as of December 31, 2013.

g.  Evergreen Systems Logistics, Inc. ("ESL"). ESL was developed to broker freight and move cargo shipments via land, ocean, and air transportation. ESL assisted with the organization and coordination of cargo shipments within the company, and worked in close conjunction with EIA and other affiliates in connection with these activities. ESL also holds a TSA certificate in connection with Eagle's cargo screening business.

## The Debtors' Prepetition Secured Debt Facilities

5.  The Debtors are obligors on two primary secured debt obligations. First, the Debtors are each obligors under a first lien credit and guaranty agreement, dated as of June 30, 2011, and amended and restated as of May 2, 2013 (the "First Lien Credit Agreement"), by and among the Debtors, Evergreen Holdings, Inc., Evergreen Agricultural Enterprises, Inc., and various lenders (the "First Lien Lenders"), Goldman Sachs Lending Partners LLC as sole lead arranger, sole lead bookrunner and syndication agent, Wells Fargo Bank, National Association as administrative agent, Wells Fargo Bank Northwest, National Association as collateral agent, and Goldman Sachs Lending Partners LLC as syndication agent and documentation agent. The First Lien Credit Agreement has two tranches of secured debt, a senior secured tranche ("Tranche A"), and a junior secured tranche ("Tranche B"). The Tranche A debt originally exceeded $200 million but has since been paid off. As of the Petition Date, the Tranche B claims aggregate approximately $12 million. The Tranche B claims are purportedly secured by a first priority lien on substantially all of the assets of the Debtors.

DOCS_DE:191131.5 31265/001

6. Second, the Debtors are each obligors under a second amended and restated second lien credit agreement, dated as of October 1, 2006, as amended and restated, first, as of June 30, 2011, and again, as of May 2, 3013 (the "Second Lien Credit Agreement"), by and among Evergreen Holdings, Inc., Evergreen Agricultural Enterprises, Inc., and various lenders (the "Second Lien Lenders" and together with the "First Lien Lenders," the "Lenders"), and Wilmington Trust, National Association, as administrative Agent and collateral agent. As of the Petition Date, the outstanding unpaid claims under the Second Lien Credit Agreement aggregate approximately $87 million. The Second Lien Lenders' claims are purportedly secured by a second priority lien on substantially all of the assets of the Debtors, junior to first priority liens of the Tranche B claims.

7. The Lenders have consented to the relief requested in this Motion.

**Relief Requested**

A. **Authorization to Operate the Debtors' Business on a Limited Basis Under 11 U.S.C. § 721**

8. The Trustee, in the exercise of his business judgment, believes the best way to maximize the value of the Debtors' assets is to operate the Debtors' business on a limited basis to preserve existing assets, including but not limited to, collect accounts receivable, and assist in monetizing the Debtors' assets that are scattered around the United States in at least 19 separate locations, while developing a framework to sell the Debtors' assets as quickly as possible. Therefore, the Trustee is requesting authority to operate the Debtors' businesses on a limited basis through April 15, 2014, without prejudice to the Trustee's right to request additional time to the extent that it may become necessary to do so, and as the Trustee and the Lenders may agree to in writing.

9.  The Trustee respectfully submits that the relief requested is designated to maximize the value of the Debtors' assets and that it is fair and equitable under the circumstances of these cases.

10.  Section 721 of the Bankruptcy Code provides that the Court "may authorize the trustee to operate the business" for a limited period of time.  11 U.S.C. § 721.  Section 721 of the Bankruptcy Code contemplates circumstances where preserving assets pending a future sale may result in an increased benefit to the estate as opposed to an immediate cessation of operations and piecemeal liquidation.  *See In re A&T Trailer Park, Inc.*, 144, 147 (Bankr. D. Wyo. 1985); *see also* Collier on Bankruptcy ¶ 721.02 (16th rev. ed.) ("Courts may authorize the chapter 7 trustee to operate the debtor's business on an interim basis where doing so will maximize the value of the estate and thus increase creditor recoveries.  For example, the interim operation of the debtor's business by a chapter 7 trustee may be authorized where the sale of the debtor's business as a going concern would realize a greater value than would be realized in a liquidation.  Similarly, a court may authorize a trustee to operate a chapter 7 debtor's business to allow completion of a work in process, if liquidation of the final product would realize a greater net return than liquidation of the component parts.").

11.  The Trustee submits that the continued operation of the Debtors' business on a limited basis and for a limited period of time is in the best interests of the Debtors' estates and is consistent with the orderly liquidation of those estates.  The Trustee, in the exercise of his business judgment, believes that such operations will maximize the value of the Debtors' assets for all interested parties.  If the Trustee is unable to operate the business and hire some of the employees, there would be a loss of significant value to the detriment of the Debtors' estates,

since those employees have valuable knowledge of the tens of thousands pieces of equipment that need to be located and monetized.

12. The Trustee has been negotiating in good faith with the Lenders and has reached an agreement concerning the use of the Lenders' cash collateral pursuant to a proposed budget (the "Approved Budget") which sets forth the estimated costs associated with a limited operation of the Debtors' business under 11 U.S.C. § 721 through April 15, 2014. The Trustee's authorization to use the Lenders' cash collateral shall be governed in all respects by the order entered by the Court with respect to the Cash Collateral Motion (the "Cash Collateral Order").

13. The Trustee also reserves the right to request additional time to operate the Debtors' business pursuant to section 721 should the need arise based upon the circumstances. The Trustee submits that further extensions of the authority to operate the Debtors' business are permissible under section 721. *See, e.g., Goldberg v. S. E. Partners Corp. (In re Sturman)*, 222 B.R. 694, 697 n.4 (Bankr. S.D.N.Y. 1998); Collier on Bankruptcy ¶ 721.02 ("The authority of a trustee to operate the debtor's business can be renewed periodically by the bankruptcy court if the continued operation of the debtor's business by the trustee remains consistent with the requirements of section 721 of the Code.").

**B.    Authorization to Employ Certain Former Employees of the Debtors**

14. The Trustee has identified approximately 31 former employees of the Debtors who he would like to retain to assist in the limited operation of the Debtors' business. Although the Trustee and his proposed professionals (Giuliano, Miller & Company LLC and Pachulski Stang Ziehl & Jones LLP) will be actively engaged in the liquidation and administration of the estates, and the limited operation of the Debtors' business, the former

DOCS_DE:191131.5 31265/001

employees identified by the Trustee are thoroughly knowledgeable about the Debtors' operations and would be of valuable assistance to the Trustee throughout this process.

15. The Trustee proposes to compensate the Debtors' such employees, consistent with the Cash Collateral Order and the Approved Budget agreed to with the Lenders. The maximum amount of aggregate compensation to the former employees pursuant to this Motion, for services through April 15, 2014 is approximately $369,000.00.

16. Section 105(a) of the Bankruptcy Code provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title . . . shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules.

11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc). Although not limitless, this section has also been construed to give bankruptcy courts authority to provide equitable relief appropriate to assure the orderly conduct of bankruptcy proceedings. *See, e.g., In re Combustion Engineering, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

17. Under section 704(a), among other duties, the Trustee is required to:

- Collect and reduce to money the property of the estate [section 704(a)(1)];
- Be accountable for all property received [section 704(a)(2)];
- Investigate the financial affairs of the debtor [section 704(a)(3)]; and
- Furnish information concerning the estate and the estate's administration requested by parties in interest [section 704(a)(7)].

7

18. To satisfy his statutory duties under the Bankruptcy Code under section 704(a) (while also operating the Debtors' business on a limited basis under section 721), the Trustee believes that section 105(a) provides this Court with the power to authorize him to employ certain of the Debtors' former employees, at his discretion, for the necessary services mentioned above to assist the Trustee in the limited operation of the Debtors' business.

19. In addition, section 363(c) provides, "If the business of the debtor is authorized to be operated under section 721 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice of a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c). The Trustee submits that conducting the limited operations, including retaining and compensating former employees would fall within the "ordinary course of business" of the Debtors for purposes of section 363(c) and the Trustee submits that he may use estate assets (in accordance with the Cash Collateral Order and the Approved Budget) to fund the limited operations in accordance with section 363(c).

20. Finally, the Trustee also requests that any payments for postpetition services to such former employees of the Debtors employed by the Trustee should receive administrative expense status pursuant to section 503(b)(1)(A), also in accordance with the Cash Collateral Order and the Approved Budget.

21. Section 503(b)(1)(A) of the Bankruptcy Code defines administrative expenses as including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). The principal purpose of section 503(b)(1)(A) is to induce

DOCS_DE:191131.5 31265/001

entities to do business with a debtor after it files for bankruptcy by insuring that those entities receive payment for services rendered. *In re Valley Media*, 279 B.R. 105, 141 (Bankr. D. Del. 2002).

22. For an expense to qualify as administrative under this standard, it must be (1) an expense (2) that is actual and necessary (3) to preserving the estate. *Pennsylvania Dept. of Envtl. Res. v. Tri-State Clinical Labs., Inc.*, 178 F.3d 685, 689 (3d Cir. 1999). The cost or expense must arise from a postpetition transaction with a debtor-in-possession, and the consideration supporting the right to payment must have directly and substantially benefited the debtor-in-possession in operating its business. *Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999). Priority is granted to compensate the providers of necessary goods, services or labor. *Valley Media*, 279 B.R. at 141.

23. In particular, wages for post-petition services qualify as administrative claims entitled to priority under section 503(b)(1)(A). *See In re Continental Airlines, Inc.*, 148 B.R. 207, 212 (D. Del. 1992) (only wages for services rendered post-petition receive priority under section 503(b)(1)(A)); Collier on Bankruptcy ¶ 503.06[7][a] ("Those expenses for wages, salaries or commissions incurred postpetition in an effort to preserve the estate or operate the debtor's business qualify as administrative expenses.").

24. As part of their duties in administering the estate, chapter 7 trustees often need the services of employees to operate, manage, or assist in winding down the Debtors' businesses. Collier on Bankruptcy ¶ 503.06[7][b] ("If necessary to preserve the estate, the trustee or debtor in possession may hire employees to operate and manage the debtor's business. Employees may include the debtor's former personnel or the individual debtor. . . . In addition, retaining or hiring employees is often necessary in liquidating chapter 11 plans and in certain

DOCS_DE:191131.5 31265/001

chapter 7 liquidations."). To induce those employees to serve post-petition and to help operate the Debtors' business on a limited basis, payment for such services should qualify as an administrative expense entitled to priority under section 503(b)(1)(A).

25. The Trustee believes that the proposed payments to the former employees for their proposed postpetition services should be entitled to administrative expense priority under section 503(b)(1)(A) because such services are (1) expenses (2) that are actual and necessary (3) to preserving the Debtors' estates. As mentioned above, the services from the former employees for postpetition work in operating the Debtors' business will reduce the practical burdens of learning the Debtors' businesses by having those most familiar assist the Trustee with accessing and providing needed information and operating the business on a limited basis. In turn, this arrangement preserves the Debtors' estates and maximizes value for all creditors by reducing the time and costs associated with hiring outside personnel to perform the same services.

## Notice

26. Notice of this Motion shall be provided to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; and (b) counsel to the Debtors; (c) counsel to the Lenders; and (d) those persons who have requested notice pursuant to Bankruptcy Rule 2002. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

27. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Conclusion

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion and enter the order, substantially in the form attached hereto, authorizing him (a) to operate the Debtors' business on a limited basis effective as of the Petition Date; (b) to employ certain of the Debtors' former employees and to pay for services of such employees; and (c) for related relief, and grant such other and further relief as is just and proper.

Dated: February 3, 2014

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Bradford J. Sandler (DE Bar No. 4142)
John W. Lucas (CA Bar No. 271038)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:     bsandler@pszjlaw.com
           jlucas@pszjlaw.com
           pkeane@pszjlaw.com

[Proposed] Counsel to Alfred T. Giuliano, Chapter 7 Trustee

11