# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| EVERGREEN INTERNATIONAL AVIATION, INC., *et al.*[1] | Case No. 13-13364 (MFW) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 47** |

## INTERIM ORDER AUTHORIZING THE USE OF CASH
## COLLATERAL AND PROVIDING ADEQUATE PROTECTION

Upon the motion (the "Motion") of Alfred T. Giuliano, chapter 7 trustee (the "Trustee")

of the above-captioned debtors (the "Debtors"), under sections 105, 361, 362, 363 and 507 of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of

Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of

the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

authorizing the Debtors to (a) use cash collateral, and (b) provide adequate protection to the

Pre-Petition Agents. Capitalized terms not defined herein shall have the meanings set forth in

the Motion.

The Trustee has served notice of the Motion as is appropriate under the circumstances, as

required under sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(b) and

Local Rule 4001-2.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Evergreen International Aviation, Inc. (9079); Evergreen Aviation Ground Logistics Enterprise, Inc. (6736); Evergreen Defense & Security Services, Inc. (0118); Evergreen International Airlines, Inc. (7870); Evergreen Systems Logistics, Inc. (0610); Evergreen Trade, Inc. (0952); and Supertanker Services, Inc. (3389). The Debtors' address is 3850 Three Mile Lane, McMinnville, Oregon 97128.

A preliminary hearing on the Motion having been held by the Court on February 20, 2014. Upon the record made by the Trustee at the hearing, after considering the Motion, the objection of Marana Aerospace Solutions, Inc. ("Marana") (Docket No. 74), which was sustained as stated during the hearing, and the Trustee's reply (Docket No. 82) to Marana's objection, and the arguments and evidence presented, and after due deliberation and consideration and sufficient cause appearing therefore,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Disposition.* The Motion is granted on the terms set forth herein on an interim basis. Any objections to the interim relief sought in the Motion, and any reservations of rights with respect to such relief, that have not been previously resolved or withdrawn are overruled on the merits.

2. *Jurisdiction and Venue.* The Court has jurisdiction over these cases and the Motion as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

3. *Pre-Petition Lenders' Claims.* The First Lien Agents and the First Lien Lenders, and the Second Lien Agent and the Second Lien Lenders, as applicable, assert the following:

a.    First Lien Credit Facility. Pursuant to that certain *First Lien Credit and Guaranty Agreement*, dated as of June 30, 2011 (as amended and restated as of May 2, 2013), by and among Evergreen International Aviation, Inc., as borrower, Evergreen Holdings, Inc., certain subsidiaries of Evergreen International Aviation, Inc., as guarantors, the lenders from time to time a party thereto (each a "First Lien Lender" and collectively, the "First Lien

- 2 -

Lenders"), Goldman Sachs Lender Partners LLC, as Sole Lead Arranger, Sole Lead Bookrunner

and Syndication Agent, Goldman Sachs Lending Partners LLC, as Documentation Agent, Wells

Fargo Bank, National Association, as Administrative Agent (the "First Lien Administrative

Agent"), and Wells Fargo Bank Northwest, National Association, as collateral agent for the First

Lien Lenders (in such capacity, the "First Lien Collateral Agent" and together with the other

First Lien Credit and Guarantee Agreement agents, each a "First Lien Agent" and together, the

"First Lien Agents") (as supplemented or otherwise modified from time to time, the "First Lien

Credit and Guaranty Agreement" and, together with all other loan and security documents

executed in connection therewith, the "First Lien Credit Documents"), the First Lien Lenders

extended loans to the Debtors.  All obligations of the Debtors arising under the First Lien Credit

and Guaranty Agreement including the "*Obligations*" as defined in the First Lien Credit and

Guaranty Agreement shall collectively be referred to herein as the "First Lien Credit

Obligations."

        b.     Second Lien Credit Facility.  Pursuant to a second lien credit

facility (the "Second Lien Credit Facility") under that certain *Second Amended and Restated*

*Second Lien Credit Agreement*, dated May 2, 2013 (the "Second Lien Credit Agreement" and,

together with all other loan and security documents executed in connection therewith, the

"Second Lien Credit Documents" and together with the First Lien Credit Documents, the "Pre-

Petition Credit Documents"), by and among Evergreen Holdings, Inc. and Evergreen

International Aviation, Inc., certain subsidiaries of Evergreen International Aviation, Inc., the

- 3 -

lenders listed therein (the "Second Lien Lenders" and together with the First Lien Lenders the "Pre-Petition Lenders"), and Wilmington Trust, National Association, as administrative agent and collateral agent (the administrative and collateral agent under the Second Lien Credit Agreement shall be defined as the "Second Lien Agent" and the Second Lien Agent together with the First Lien Agents shall be defined as the "Pre-Petition Agents," which Pre-Petition Agents and the Pre-Petition Lenders are collectively the "Pre-Petition Secured Parties"), the Second Lien Lenders extended loans to the Debtors in connection with the Second Lien Credit Facility. All obligations of the Debtors arising under the Second Lien Credit Facility including the "*Loan Obligations*" as defined in the Second Lien Credit Agreement, shall be referred to herein as the "Second Lien Credit Obligations," and together with the First Lien Credit Obligations shall collectively be referred to herein as the "Pre-Petition Obligations."

        c.    Pre-Petition Credit Obligations. As of the Petition Date, the Debtors were truly and justly indebted (i) to the First Lien Agents and the First Lien Lenders pursuant to the First Lien Credit Documents, without defense, counterclaim or offset of any kind, in respect of loans made by the First Lien Lenders in the aggregate principal amount of not less than $11,105,061.50, plus any accrued and unpaid interest and additional fees and expenses (including any fees and expenses of attorneys, accountants, appraisers and financial advisors that are chargeable or reimbursable under the First Lien Credit Documents) (the "Pre-Petition First Lien Claims"), and (ii) to the Second Lien Agents and the Second Lien Lenders pursuant to the Second Lien Credit Documents, without defense, counterclaim or offset of any kind, in respect

of loans made by the Second Lien Lenders in the aggregate principal amount of not less than $89,057,243.79, plus any accrued and unpaid interest and additional fees and expenses (including any fees and expenses of attorneys, accountants, appraisers and financial advisors that are chargeable or reimbursable under the Second Lien Credit Documents) (the "Pre-Petition Second Lien Claims").

       d.     Pre-Petition First Liens and Collateral.  Pursuant to the First Lien Credit Documents, the Debtors granted to the First Lien Collateral Agent, for the benefit of the First Lien Lenders and to secure the First Lien Credit Obligations, a first-priority security interest in and continuing lien (the "Pre-Petition First Priority Liens") on all or substantially all of the Debtors' assets and property (which for the avoidance of doubt includes Cash Collateral and "*Collateral*" as defined in the First Lien Credit Documents), including, without limitation, all aircraft in which the First Lien Collateral Agent, for the benefit of the First Lien Lenders, has been granted a security interest (the "Pre-Petition First Lien Collateral"), but excluding any vehicles with respect to which liens in favor of the First Lien Collateral Agent or other Pre-Petition Secured Parties are not notated on the title.

       e.     Pre-Petition Second Liens and Collateral.  Pursuant to the Second Lien Credit Documents, the Debtors granted to the Second Lien Agent, for the benefit of the Second Lien Lenders, to secure the Second Lien Credit Obligations, a second-priority security interest in and continuing lien (the "Pre-Petition Second Priority Liens" and together with the Pre-Petition First Priority Liens, the "Pre-Petition Liens") on all or substantially all of the

- 5 -

Debtors' assets and property, including, without limitation, all aircraft in which the Second Lien

Collateral Agent, for the benefit of the Second Lien Lenders, has been granted a security interest

(the "Pre-Petition Second Lien Collateral" and together with the Pre-Petition First Lien

Collateral, the "Pre-Petition Collateral"), but excluding any vehicles with respect to which liens

in favor of the First Lien Collateral Agent or other Pre-Petition Secured Parties are not notated

on the title.

> f.      Cash Collateral.  All of the Debtors' cash, including cash in

deposit accounts, wherever located, whether Pre-Petition Collateral or proceeds thereof,

constitutes the Cash Collateral of the Pre-Petition Secured Parties.

> 4.      *No Waivers*.  Subject to paragraph 11 below, the Trustee makes no

representation, warranty, acknowledgement or admission regarding whether he has (or does not

have) any defenses, setoffs, counterclaims or recoupments that could be asserted against the Pre-

Petition Agents and the Trustee reserves all rights, claims and defenses with respect thereto.  In

addition, subject to paragraph 11 below, the Trustee makes no representation, warranty,

acknowledgement or admission with respect to the enforceability, perfection, priority,

avoidability or validity of the Pre-Petition Secured Parties' security interests in the Debtors'

assets.

> 5.      *Findings Regarding the Use of Cash Collateral*.

> a.      Cause Shown.  Good cause has been shown for the entry of this

Interim Order.

- 6 -

b.    <u>Business Justification</u>.  The Trustee has a critical need to use the Cash Collateral, in order to permit, among other things, the orderly administration of the Debtors' estates and the continuance of the Trustee's efforts to maximize value for all constituents.  The Trustee has established that absent relief pending a final hearing the estates will be exposed to immediate and irreparable harm.

c.    <u>Fair and Reasonable Terms</u>.  Based on the record presented to the Court at hearing, the terms of use of the Cash Collateral are fair and reasonable and reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties.

d.    Authorization of the use of the Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates.

6.    *Authorization to Use Cash Collateral*.  Subject to the terms of this Interim Order, the Trustee is hereby authorized to use Cash Collateral from the Petition Date through March 28, 2014 (the "<u>Budget Period</u>"), or such other date as the Trustee and the Required Lenders may agree to in writing when, as and to the extent permitted under the budget attached hereto as **<u>Exhibit A</u>**, or when, as and to the extent permitted by such other budget as the Trustee and the Pre-Petition Agents may agree to in writing from time to time (the "<u>Approved Budget</u>").  For purposes of this Interim Order, the term "<u>Required Lenders</u>" shall mean, at any time, Lenders having at least 66 2/3% of the aggregate outstanding Pre-Petition Obligations.  The Pre-Petition Secured Parties do not consent to the use of Cash Collateral by the Trustee except in strict compliance with the terms and conditions contained herein.  Notwithstanding the

- 7 -

foregoing, disbursements by the Trustee for particular budget line-items on an aggregate basis during the Budget Period may deviate up to 15% from the amounts specified in the Approved Budget. The Pre-Petition Agents are directed to promptly turn over, and otherwise make available, to the Trustee all Cash Collateral received or held by the Pre-Petition Agents, subject to the adequate protection as set forth in this Interim Order. The Approved Budget shall and does include a line item of $600,000 (the "Hourly Wage Amount") to pay the unpaid hourly payroll due and owing to the hourly employees (the "Hourly Employees") as of the Petition Date, which amounts represent the unsecured priority wages due and owing to each such Hourly Employee.

> 7. *Adequate Protection.* The Pre-Petition Secured Parties are entitled, pursuant to sections 361, 362(d) and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Debtors' property, for and equal in amount to the aggregate diminution in the value of their interests in the Debtors' property (including Cash Collateral) (the "Diminution in Value") resulting from the use, sale or lease by the Trustee (or other decline in value due to the automatic stay) of the Cash Collateral and any other asset of the Debtors that is the subject of the Pre-Petition Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, subject in all instances to the Carve-Out (as defined below):

> > a. The First Lien Collateral Agent and Second Lien Agent are hereby granted, solely to the extent of any Diminution in Value, valid, binding, enforceable and

- 8 -

perfected continuing security interests in and liens on all assets and property of the Debtors of

the same type and nature that existed as of the Petition Date with the same validity (or invalidity)

and priority as existed as of the Petition Date, including the proceeds thereof (the "Replacement

Liens"), and for the avoidance of doubt, the Replacement Liens do not include any causes of

action arising under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions") or the

proceeds thereof; and

        b.      The First Lien Administrative Agent and the Second Lien Agent

are each hereby granted, solely to the extent of any Diminution in Value, as provided by sections

503(b) and 507(b) of the Bankruptcy Code, allowed superpriority administrative claims in the

Chapter 7 Cases (the "Adequate Protection Claims") that shall be payable out of all available

assets in the Debtors' estates, including, but not limited to, the Anchorage Litigation (as defined

in paragraph 9 below), the Helicopter Building, and the proceeds thereof, but excluding the

Avoidance Actions and the proceeds thereof, in accordance with the relative priority established

under the Pre-Petition Credit Documents.  Notwithstanding the foregoing, to the extent the

Trustee pays the unpaid hourly payroll that was due and owing to the Debtors' hourly employees

as of the Petition Date, the Adequate Protection Claim for such payment shall attach to all assets

of the Debtors' estates, including, but not limited to, upon entry of the Final Order, Avoidance

Actions and the proceeds thereof.

        c.      Upon reasonable notice, the Trustee shall provide the Pre-Petition

Secured Parties, and their consultants, accountants, agents, representatives, employees, or

attorneys access to:  (a) all of the Debtors' books and records for the purpose of examining, inspecting, copying, and making extracts therefrom; (b) all of the Pre-Petition Collateral for the purpose of inspecting same; and (c) any information reasonably necessary for the Pre-Petition Secured Parties to determine whether the Trustee is in compliance with the terms and conditions of this Interim Order.

> d.     The security interests and liens granted by this paragraph 7 above shall not extend to any property of third parties in which the Debtors have no interests and which is not property of the Debtors' estates, and all interests and  liens granted by this Order shall be subject in each case to any liens or claims that have priority under applicable non-bankruptcy law over the pre-petition liens of the Pre-Petition Secured Parties (the "Permitted Liens").

> 8.     *Carve-Out.* Subject to paragraph 11 of this Interim Order and provided that no Challenge has been asserted on or before the Challenge Deadline (as defined below), the Replacement Liens and the Adequate Protection Claims, as well as all other legal and equitable interests of the Pre-Petition Secured Parties in the Debtors' assets or their estates, shall be subordinate in all respects to a limited carve out (the "Carve Out"), which shall be comprised of the following:  (i) all fees required to be paid to the Clerk of the Bankruptcy Court; (ii) all allowed fees of, and expenses incurred by, the Trustee (excluding professional fees and expenses), including, but not limited to, any statutory commission earned by disbursements, as permitted under the Bankruptcy Code (excluding any fees and expenses incurred by the Trustee in respect of assets in which the Pre-Petition Secured Parties have no properly perfected first

priority lien and security interest) (the "Permitted Trustee Fees and Expenses"); (iii) an aggregate amount not to exceed $800,000 for allowed fees of, and expenses incurred by, the professionals retained by the Trustee under sections 327 or 328 of the Bankruptcy Code (excluding any fees of, and expenses incurred by, the Trustee's professionals in respect of assets in which the Pre-Petition Secured Parties have no properly perfected first priority lien and security interest) (the "Permitted Trustee Professional Fees and Expenses"), not to exceed the following amounts for the following professionals: (a) $50,000 for the Trustee's local counsel in jurisdictions outside of Delaware, (b) $250,000 for the Trustee's accountant (Giuliano Miller & Company), and (c) $500,000 for the Trustee's bankruptcy counsel (Pachulski Stang Ziehl & Jones LLP) (the "Professional Fee Carve Out"); and (iv) $250,000 solely for distributions to the Debtors' estates (but not to be used for any fees and expenses of the Trustee or his professionals); *provided that* (i) all fees required to be paid to the Clerk of the Bankruptcy Court, and (ii) an aggregate amount equal to $200,000 for Permitted Trustee Fees and Expenses and Permitted Trustee Professional Fees and Expenses, which shall be included in the calculation of the Carve Out, shall be payable as herein provided even if a Challenge is asserted on or before the Challenge Deadline. In the addition to the payments contemplated by the Approved Budget, the obligations covered by the Carve-Out may be paid by the Trustee, or otherwise reserved for payment by the Trustee, subject only to the approval of the Court if and when required. For the avoidance of doubt, the Professional Fee Carve Out shall not apply to professionals retained by the Trustee for the purpose of prosecuting the Anchorage Litigation, and shall not establish a cap or limit on the

- 11 -

ability of the Trustee's professionals from being compensated from unencumbered assets of the

estates or any other assets that may be collateral of a properly perfected secured party (other than

the Pre-Petition Agents), subject to such secured party's consent or order of a court of competent

jurisdiction. Notwithstanding the Pre-Petition Secured Parties' consent to the Carve Out, the

Pre-Petition Secured Parties do not waive their rights to object to professional fees upon

application for approval of such fees. Any Permitted Liens shall not be subordinate or otherwise

subject to the Carve Out.

        9.    *Anchorage Litigation.* In addition to the payments contemplated in the

Approved Budget and the Carve-Out, the Court authorizes, and the Pre-Petition Secured Parties

consent to, the Trustee's use of Cash Collateral in order to fund the litigation initiated by

plaintiffs Evergreen International Airlines, Inc. and Evergreen Aviation Ground Logistics

Enterprise, Inc. against defendants Anchorage Advisors, LLC, Anchorage Capital Group, LLC,

and Nexgen Aviation Capital, LLC, currently pending in the United States District Court for the

District of Oregon, case number 3:11-CV-1416-PK (the "Anchorage Litigation"), in such

amounts as the Required Lenders may agree in advance in writing which will be in addition to

the amounts reflected in the Approved Budget (the "Anchorage Litigation Funding"), but reserve

the right to terminate such funding in their discretion on ten (10) business days' written notice to

the Trustee. The Trustee reserves the right to seek alternative funding in the event of such

termination; provided, however, any such alternative funds shall be subordinate in all respects to

the Replacement Liens and Adequate Protection Claims, unless the Required Lenders otherwise

agree in writing. The Trustee shall consult with the Pre-Petition Secured Parties prior to reaching any settlement of the Anchorage Litigation. Provided that a Challenge is not asserted on or before the Challenge Deadline, the following sharing arrangement shall govern the proceeds of the Anchorage Litigation free and clear of the Pre-Petition Liens: (a) 4% of the first $5 million in net proceeds from the Anchorage Litigation shall be distributed to the Debtors' estates and all of the remainder shall be distributed to the Pre-Petition Secured Parties in accordance with the Pre-Petition Credit Documents; (b) 2.5% of the next $5 million in net proceeds from the Anchorage Litigation shall be distributed to the Debtors' estates and all of the remainder shall be distributed to the Pre-Petition Secured Parties in accordance with the Pre-Petition Credit Documents; (c) 1% of the next $5 million in net proceeds from the Anchorage Litigation shall be distributed to the Debtors' estates and all of the remainder shall be distributed to the Pre-Petition Secured Parties in accordance with the Pre-Petition Credit Documents; and (d) 10% of the net proceeds from the Anchorage Litigation in excess of $15 million shall be distributed to the Pre-Petition Secured Parties and all of the remainder shall be distributed to the Debtors' estates. If a Challenge is asserted prior to the Challenge Deadline, proceeds of the Anchorage Litigation shall be distributed as further ordered by the Court. For the avoidance of doubt, the term "net proceeds" as used in this paragraph shall mean proceeds remaining after the satisfaction of reasonable fees and expenses incurred to prosecute the Anchorage Litigation and any amounts necessary to satisfy the Adequate Protection Claims for the Anchorage Litigation Funding. Notwithstanding anything to the contrary herein, the Adequate Protection Claim for

the Anchorage Litigation Funding shall not attach to, or be payable from, the Avoidance Actions or proceeds therefrom.

10.     *Termination.*  The Trustee's authorization to use Cash Collateral, and any and all obligations of the Pre-Petition Secured Parties under this Interim Order, as set forth above, shall immediately cease, upon the earliest of any of the following (each a "Termination Event"):

a.      three business days' following written notice to the Trustee and the Office of the U.S. Trustee of a default and failure to cure by the Trustee under the terms or conditions of this Interim Order unless such default is waived in writing by the Required Lenders;

b.      such time as the Trustee makes payments which are not authorized by this Interim Order unless such unauthorized payment(s) is waived in writing by the Required Lenders;

c.      the assertion of any Challenge against the Pre-Prepetition Obligations and/or the Pre-Petition Liens;

d.      the entry of any order materially modifying, reversing, revoking, staying, rescinding, vacating or amending this Interim Order without the express prior written consent of the Required Lenders;

e.      the Trustee's failure to file, on or before March 7, 2014, an application seeking to retain a real estate broker acceptable to the Required Lenders (the "Real

Estate Broker") for the sale of the debtors' real property (excluding the Helicopter Building located on parcel no. R442600102 in McMinnville, Oregon) located in McMinnville, Oregon (the "Real Property"), which application and engagement letter shall be in form and substance satisfactory to the Required Lenders;

    f.  an order, in form and substance satisfactory to the Required Lenders, authorizing the retention of the Real Estate Broker, is not entered on or before April 25, 2014;

    g.  the Trustee's failure to file, on or before September 2, 2014, a motion seeking authority to sell the Real Property, in form and substance satisfactory to the Required Lenders;

    h.  an order, in form and substance satisfactory to the Required Lenders, authorizing the sale of the Real Property, is not entered on or before October 3, 2014;

    i.  the Trustee's failure to file, on or before April 7, 2014, a motion seeking authority to sell all of the assets of Evergreen Aviation Ground Logistics Enterprise, Inc. ("EAGLE"), in form and substance satisfactory to the Required Lenders;

    j.  an order, in form and substance satisfactory to the Required Lenders, authorizing the sale of all of the assets of EAGLE, is not entered on or before May 25, 2014;

DOCS_SF:84592.13 31265-001

k.    the Trustee's failure to file, on or before April 7, 2014, a motion seeking authority to sell all of the Debtors' property located at the Marana facility in Arizona, in form and substance satisfactory to the Required Lenders;

l.    an order, in form and substance satisfactory to the Required Lenders, authorizing the sale of all of the Debtors' property located at the Marana facility in Arizona (subject to a determination that one or more of the Debtors have an interest in such property), is not entered on or before May 25, 2014;

m.    the Trustee's failure to file, on or before April 24, 2014, a motion seeking authority to sell all remaining property, if any, of the Debtors (excluding any claims or causes of action) in which the Pre-Petition Lenders, through the Pre-Petition Agents, have valid and enforceable security interests and liens, in form and substance satisfactory to the Required Lenders;

n.    an order, in form and substance satisfactory to the Required Lenders, authorizing the sale of all remaining property, if any, of the Debtors (excluding any claims or causes of action) in which the Pre-Petition Lenders, through the Pre-Petition Agents, have valid and enforceable security interests and liens, is not entered on or before May 24, 2014;

o.    subject to paragraph 11, the Trustee taking any position, or supporting any other party in connection with the assertion of any position, with regard to property subject to valid and enforceable security interests and liens of the Pre-Petition Lenders

- 16 -

(through the Pre-Petition Agents) that is adverse to the Pre-Petition Agents or Pre-Petition Lenders;

        p.     the Final Order (in form and substance satisfactory to the Pre-Petition Secured Parties) is not entered on or before March 17, 2014, unless extended in writing by the Required Lenders; or

        q.     5:00 p.m. EST on April 15, 2014, unless extended in writing by the Required Lenders.

Upon termination of the Trustee's authorization to use Cash Collateral pursuant to this paragraph, the Trustee shall immediately cease use of Cash Collateral without the written consent of the Required Lenders and the Pre-Petition Agents may seek authority from the Court to modify the automatic stay to allow the Pre-Petition Agents to exercise all available rights and remedies under the Pre-Petition Credit Documents and applicable law.  Notwithstanding the occurrence of a Termination Event, the Carve-Out shall continue to apply as to fees and expenses incurred through the date of the Termination Event, except in the event that such Termination Event is the result of the assertion of a Challenge or the Trustee's breach of subparagraph "o." hereof, except as expressly provided in paragraph 8 hereof with respect to Permitted Trustee Fees and Expenses, Permitted Trustee Professional Fees and Expenses and fees of the Clerk of the Bankruptcy Court, the Carve Out shall not apply, and shall be nullified in its entirety, as to all fees and expenses incurred at any time either before or after the Termination Event.

DOCS_SF:84592.13 31265-001

11.    *Challenge Deadline.* The Trustee shall have until February 28, 2014, and any other party in interest shall have until March 21, 2014 (the "<u>Challenge Deadline</u>") in order to assert an objection, challenge, or other action with respect to the Pre-Petition Claims and/or Pre-Petition Liens (a "<u>Challenge</u>"), provided that the Debtors grant of a lien and security interest in the Anchorage Litigation in favor of the Pre-Petition Secured Parties on or about December 10, 2013 is deemed avoided as a preferential transfer under 11 U.S.C. § 547 and 550 without the need for the assertion of a Challenge, provided further that the avoidance of such preferential transfer shall not include or apply, nor be deemed to include or apply, to any liens or security interests in favor of the Pre-Petition Secured Parties in any claims that the Debtors have asserted or may in the future assert in the Anchorage Litigation that are contractual in nature. Absent a Challenge on or before the Challenge Deadline (except as set forth in the preceding sentence), (i) the Pre-Petition First Lien Claims shall be deemed allowed and the Pre-Petition First Priority Liens shall be deemed valid, enforceable, non-avoidable, first priority liens, subject only to any Permitted Liens and (ii) the Pre-Petition Second Lien Claims shall be deemed allowed and the Pre-Petition Second Priority Liens shall be deemed valid, enforceable, non-avoidable, second priority liens, subject only to any Permitted Liens. The Challenge Deadline may be extended by written agreement of the Trustee and the Required Lenders, or by the Court upon a showing of good cause. To the extent a successful Challenge is asserted against the Pre-Petition Secured Parties prior to the Challenge Deadline with respect to specific assets of the Debtors' estates (the "<u>Specified Assets</u>") that are subject to the Replacement Liens, any payments or distributions to

- 18 -

the Pre-Petition Secured Parties of the proceeds of the Specified Assets in respect of the Pre-Petition Obligations shall be subject to disgorgement from the Pre-Petition Secured Parties to the Debtors' estates, as applicable.

      12.    *Distribution of Proceeds of Pre-Petition Secured Parties' Collateral.* Subject to paragraph 11 and payment of the Carve-Out (excluding any commission that may be earned by the Trustee in accordance with paragraph 8(ii) hereof) and amounts in the Approved Budget that have not been paid (provided no Termination Event has occurred and is continuing), the Trustee hereby acknowledges and agrees that all proceeds of property that is subject to the liens and claims of the Pre-Petition Secured Parties shall be immediately distributed to the First Lien Administrative Agent and the Second Lien Agent, as applicable, for application to the Pre-Petition Obligations in accordance with the Pre-Petition Credit Documents.

      13.    *Binding Effect; Successors and Assigns.* The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 7 Cases, including, without limitation, the Pre-Petition Agents, the Pre-Petition Lenders, the Trustee, and the Debtors, and their respective successors and assigns and shall inure to the benefit thereof. During the term of this Interim Order and provided that there has been no breach thereof, neither the Pre-Petition Agents nor the Pre-Petition Lenders shall seek relief from the automatic stay or take any other action inconsistent with the terms of this Interim Order.

      14.    *Waiver of 506(c) Charges.* Nothing in this Interim Order or any other budget shall constitute the consent by the Pre-Petition Secured Parties to the imposition of any

- 19 -

costs or expense of administration or other charge, lien, assessment or claim (including, without

limitation, any amounts set forth in any budget) against the Pre-Petition Secured Parties, their

claims or their collateral under section 506(c) of the Bankruptcy Code or otherwise.  Subject to

and upon entry of the Final Order, the Trustee shall be deemed to have fully and finally waived

any rights under section 506(c) of the Bankruptcy Code or otherwise to impose any costs or

expense of administration or other charge, lien, assessment or claim against the Pre-Petition

Secured Parties, their claims or their collateral.

        15.    *Reservation of Rights of Trustee*.  The Trustee reserves all rights to seek

other or additional use of Cash Collateral on such further or different terms and conditions as

may be approved by the Court.

        16.    *Reservation of Rights of United States*.  Nothing herein shall impair any

rights of setoff or recoupment of the United States, subject to any defenses of any other party,

including, but not limited to, the Trustee, may have in respect thereof.

        17.    *Reservation as to Employee Payments*.  Notwithstanding anything to the

contrary in the Motion or the Approved Budget, nothing herein shall be deemed to:  (1) authorize

the payment of any amounts in satisfaction of bonus or severance obligations, or which are

subject to section 503(c) of the Bankruptcy Code; (2) authorize the Trustee to cash out unpaid

vacation/leave time upon termination of an employee, unless applicable state law requires such

payment, or (3) authorize the payment of any amounts to any individual employee exceeding the

amounts set forth in 11 U.S.C. §§ 507(a)(4) and 507(a)(5).

DOCS_SF:84592.13 31265-001

18.    *Effect of Modification of Interim Order.*  If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity and enforceability of any lien, claim, priority, right, privilege or benefit authorized hereby.  Notwithstanding any such stay, modification or vacatur, the Pre-Petition Secured Parties shall be entitled to all the rights, privileges and benefits granted herein.

19.    *Effectiveness.*  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Interim Order as provided in such Rules.

20.    *Disputes.*  Any disputes arising from the provisions of this Interim Order shall be determined by the Court.

21.    Nothing herein shall be construed as a finding that the Debtors own or have an interest in property located at Marana's property, or that the Debtors have any rights or interests arising under leases with Marana, or to impair Marana's right to claim the administrative expense claim referred to in its objection and to any insurance proceeds payable under any insurance policies with respect any claim, and to claim that the Debtors have abandoned any property of the estate located at Marana's premises, or to object to the

- 21 -

abandonment of hazardous waste, or the Trustee's right to contest those claims including the right to any insurance proceeds, and all rights and defenses are hereby preserved.

22.    *Final Hearing.*  The final hearing on the Motion is scheduled for March 26, 2014 at 2:00 p.m., prevailing Eastern Time, before this Court.  The Trustee shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the final hearing) to the parties who were provided notice of the preliminary hearing and all creditors and parties in interest in the Debtors' cases.  Any party in interest objecting to the relief sought at the final hearing shall file and serve written objections by no later than March 21, 2014 at 4:00 p.m., (prevailing Eastern Time).

Dated: March  6 , 2014
Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge