IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EVERGREEN INTERNATIONAL<br>AVIATION, INC., *et al.*[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 13-13364 (MFW)<br><br>(Joint Administration Requested)<br><br>**Objection Deadline: TBD**<br>**Hearing Date: TBD** |

**MOTION OF ALFRED T. GIULIANO,
CHAPTER 7 TRUSTEE, FOR APPROVAL OF THE (A) SALE OF
SUBSTANTIALLY ALL OF THE ASSETS OF EVERGREEN INTERNATIONAL
AVIATION, INC., EVERGREEN INTERNATIONAL AIRLINES, INC.,
AND EVERGREEN GROUND AVIATION GROUND LOGISTICS, INC.
FREE AND CLEAR OF ALL LIENS AND CLAIMS, (B) ASSUMPTION AND
ASSIGNMENT OF DESIGNATED CONTRACTS AND LEASES TO JET MIDWEST
GROUP, LLC, AND (C) GRANTING RELATED RELIEF AS IS NECESSARY**

Alfred T. Giuliano, chapter 7 trustee (the "***Trustee***"), to the estates of the above-captioned debtors (the "***Debtors***"), hereby files this *Motion for Approval of the (A) Sale of Substantially All of the Assets of Evergreen Aviation Ground Logistics Enterprise, Evergreen International Aviation, Inc., Evergreen International Airlines, Inc., Evergreen Trade, Inc., and Supertanker Services, Inc. Free and Clear of All Liens and Claims, (B) Assumption and Assignment of Designated Contracts and Leases to Jet Midwest Group, LLC, and (C) Grant Related Relief as is Necessary* (the "***Motion***"). In support of the Motion, the Trustee respectfully states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Evergreen International Aviation, Inc. (9079); Evergreen Aviation Ground Logistics Enterprise, Inc. (6736); Evergreen Defense & Security Services, Inc. (0118); Evergreen International Airlines, Inc. (7870); Evergreen Systems Logistics, Inc. (0610); Evergreen Trade, Inc. (0952); and Supertanker Services, Inc. (3389). The Debtors' address is 3850 Three Mile Lane, McMinnville, Oregon 97128.

DOCS_SF:84902.4 31265-001

**Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested in this Motion are section 363 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002(a)(2), 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

**Background**

3. On December 31, 2013 (the "***Petition Date***"), the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 7 of the Bankruptcy Code. Alfred T. Giuliano was appointed as the Trustee.

4. Debtor Evergreen International Aviation, Inc. ("*Aviation*") and its debtor affiliates are global aviation services companies based in McMinnville, Oregon, United States. Founded in 1960, Aviation, along with its Debtor affiliates, operated contract freight services, offering charters and scheduled flights, as well as wet lease services (*i.e.*, lease of aircraft and crew). The Debtors also provided services to the U.S. military and the United States Postal Service, as well as charter flights to other third parties. The Debtors' crew was based at John F. Kennedy International Airport, New York.

## Relief Requested

5. The Trustee seeks authority, pursuant to sections 363(b) and (f) and 365 of the Bankruptcy Code and Bankruptcy Rule 6004, to (a) sell the majority of Aviation's, Evergreen International Airlines, Inc.'s ("*Airlines*"), Evergreen Aviation Ground Logistics Enterprises, Inc. ("*EAGLE*"), and Supertanker Services, Inc. ("*Supertanker*" and together with Aviation, Airlines, and EAGLE the "*Subject Debtors*") assets free and clear of all liens, claims, encumbrances, and interests (collectively, the "*Liens, Claims, Encumbrances and Interests*") and have Liens attached to the sale proceeds with same validity and priority that existed as of the Petition Date to Jet Midwest, LLC ("*Jet Midwest*"), (b) assume and assign certain designated contracts and leases to Jet Midwest, and (c) and grant related relief as is just and necessary. The proposed asset purchase agreement is annexed hereto as **Exhibit A** (the "*Agreement*"). A proposed form of order (the "*Approval Order*") is annexed hereto as **Exhibit B**.

6. The Debtors' prepetition lenders have reviewed the terms of the Agreement and have consented to the sale as set forth therein. The sale proceeds will be paid to the Debtors' prepetition secured lenders subject to the carve-out as set forth in *Order Authorizing the Use of Cash Collateral and Providing Adequate Protection* [Docket No. 202].

## The Sale of the Assets of the Subject Debtors

7. The Subject Debtors own a variety of assets that they used in the ordinary course operation of their business. As the Subject Debtors are no longer operating, except on a limited basis by the Trustee for the purposes of preserving assets, the Trustee believes it is in the best interest of the Subject Debtors' estates and all parties in interest to sell as many of their assets as possible for the purpose of reducing claims and cutting off the potential accumulation of administrative expenses that results from the estates' retention and maintenance of the assets.

8.     The terms of Jet Midwest's offer to purchase the property (the "Property") as set forth in the Agreement are summarized below.[2]

| Provision | Summary Description |
|---|---|
| Purchase Price | $4,275,000, plus an assumed liabilities or cure costs associated with the assumption and assignment of contracts or leases (the "*Purchase Price*"). Jet Midwest's payment of cure claims shall not reduce or offset the Purchase Price. |
| Purchase Price Adjustment | Pursuant to Sections 2.1.3 and 2.1.4, the Eagle Assets are subject to a maximum purchase price adjustment of $250,000 for any Eagle Assets that are not turned over. Pursuant to Section 2.1.4.1(c), in the event a third party disputes the Trustee's right to sell Property other than the Eagle Assets, the Parties will meet and confer for purpose of valuing such disputed Property and place the amount in Escrow pending resolution of the dispute. |
| Property | At the closing, and upon the terms and conditions set forth in the Agreement and subject to the approval of the Court pursuant to a sale approval order (the "*Approval Order*") to be entered at the hearing approving the proposed sale of the Property, the Trustee shall sell, convey, assign, transfer and deliver to Jet Midwest, and Jet Midwest shall purchase, acquire and accept, all of the right, title and interest in the Property, free and clear of all Liens, Claims, Encumbrances and Interests except for certain assumed liabilities. The sale shall not include certain excluded assets (the "*Excluded Assets*"). A description of the Excluded Assets is set forth in Section 1.2 of the Agreement. |
| Assumption and Assignment of Leases/Contracts | Subject to the Jet Midwest's right to not take assignment, certain leases and contracts (the "*Leases and Contracts*"), as set forth in the Schedules 1.3.1(i) and 2.2.1(i) of the |

---

[2] The descriptions below only summarize certain provisions of the Agreement, and the terms of the Agreement control in the event of any inconsistency.

| Provision | Summary Description |
|---|---|
|  | Agreement will be assumed by the Subject Debtors and assigned to Jet Midwest and the cure claim, if any, associated with any such Leases and Contracts to be paid by the Jet Midwest on the Closing (as defined below). |
| Deposit | $250,000. As set forth in Section 2.1.2 of the Agreement, Jet Midwest shall forfeit the entire deposit upon its failure to consummate the sale as provided by the Agreement. On the Closing Date, Jet Midwest will also provide a deposit of $100,000 for the Supertanker and $100,000 for the Fly-Away Kits and such deposit will be credited against the purchase of such assets in connection with Section 2.1.5 of the Agreement. |
| Closing | Pursuant to Section 3 of the Agreement, the closing of the transactions shall take place in accordance with the conditions set forth in Section 3 Agreement, which shall not be later than June 15, 2014. The Approval Order will seek relief from the automatic fourteen (14) day stay period imposed under Bankruptcy Rule 6004(h). |
| Representations and Warranties | The Agreement contains standard representations and warranties of the parties including as set forth in Sections 4, 5, and 6 of the Agreement; *provided, however* the Property is being sold in a "as is" condition as set forth in Sections 2.1.3, 2.1.4, and 7 of the Agreement. |
| Successor Liability | The Approval Order shall provide that Jet Midwest will not be liable for any claims against the Subject Debtors or any of its predecessors or affiliates, and Jet Midwest will not have successor or vicarious liabilities of any kind or character, including under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the closing date. |

9. The sale of the Property under the Agreement is intended to be a private sale. However, in the event the Trustee is presented with offers for some or all of the Property, he will consider such offers notwithstanding entry into the Agreement. If in the judgment of the Trustee any of the competing offers are "high and better" than the terms of the Agreement, the Trustee will seek the Court's authorization to enter into a purchase agreement with the competitor.

10. Because the Trustee has the ability to accept competing offers, Jet Midwest required that as a condition to entering the Agreement that it receive a break-up fee (the "***Break-Up Fee***") in the greater amount of $100,000 or 3% of the Purchase Price (inclusive of any adjustments as set forth in the Agreement) plus an expense reimbursement up to $100,000 for the actual costs incurred by safeguarding the Property in the event the Trustee closes a sale transaction with an alternative buyer. The Break-Up Fee would only be payable from the proceeds of an alternative transaction and only if Jet Midwest is not ultimately the successful buyer of the Property under the Agreement or any amendments thereto. Accordingly, at the sale hearing, the Trustee will use his reasonable efforts to obtain approval of the Break-Up Fee in the event the Trustee closes a sale of the Property with an alternative buyer.

11. The Debtor's prepetition lenders have consented to the sale of the Property to Jet Midwest pursuant to the terms of the Agreement.

### Basis for Relief

**A.   Approval of Sale**

12. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that

"[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

13. The sale of a debtor's property should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value.

124 B.R. at 176.

14. The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id.*

15. The Trustee has proposed the sales of the Property to Jet Midwest after thorough consideration of all viable alternatives (including the review of offers of some or all of the Property from other potential purchasers), and has concluded that the sale, as set forth under the Agreement, is supported by a number of sound business reasons. The Purchase Price represents the fair market value of the Property being sold and the disposition of the Property will enable the Trustee to reject the various real property leases as sale of the Property will not require the Trustee to continue to make lease payments.

16. For the reasons noted above, the immediate sale of the Property is supported by sound business reasons and is in the best interests of the Subject Debtors and their estates. Accordingly, the Trustee requests approval under section 363(b) of the Bankruptcy Code of the sales to Jet Midwest.

B. **The Sale of the Property is Free and Clear of All Liens, Claims, Encumbrances and Interests**

17. The FAA Aircraft Registry and other credit agreements reflect that certain parties are asserting liens against the Subject Debtors' Property that is being sold to Jet Midwest. However, Jet Midwest is only willing to purchase the Property if it is free and clear of all Liens, Claims, Encumbrances and Interests. Accordingly, the Trustee is seeking authorization to sell the Property free and clear of all Liens, Claims, Encumbrances and Interests to maximize the value.

18. Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

19. Section 363(f) of the Bankruptcy Code provides for the sale of property "free and clear of any interests." The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id. at 258, citing 3 Collier on Bankruptcy 363.06*[1]. As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

20. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Equipment free and clear of the Liens, Claims, Encumbrances and Interests. *See Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

21.     Pursuant to the terms of the *Interim Order Authorizing the Use of Cash Collateral and Providing Adequate Protection* [Docket No. 157], the Trustee has determined and agreed with the Subject Debtors' prepetition lenders that the Liens, Claims, Encumbrances and Interests asserted against the Property are valid and enforceable. However, the Subject Debtors' prepetition lenders are consenting to the sale of the Property subject to having the Liens, Claims, Encumbrances and Interests attach to the net proceeds of the sale. The Trustee accordingly requests authority to convey the Property, pursuant to section 363(f)(2), free and clear of all Liens, Claims, Encumbrances and Interests, with such Liens, Claims, Encumbrances and Interests attaching to the proceeds of the sales with the same validity (or invalidity), priority and perfection as existed as of the Petition Date.

### C.     Good Faith Under Section 363(m) of the Bankruptcy Code

22.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).

23. The Agreement was a negotiated, arm's-length transaction, in which the Jet Midwest acted in good faith and in compliance with the *Abbotts Dairies* standards. Prior to the hearing on this Motion, the Trustee and Jet Midwest will either submit a declaration or provide testimony at the hearing on this Motion in support of the sale contemplated by the Agreement, or any other buyer that might result from the auctions contemplated by this Motion. The Trustee thus requests that the Court find that Jet Midwest purchased the Property in good faith within the meaning of section 363(m) of the Bankruptcy Code.

D. **Authorization of Assumption and Assignment of Assumed Executory Contracts**

24. As required by the Agreement, the Trustee requests approval of the assumption and assignment of the Leases and Contracts set forth in Section 1.3 of the Agreement and Schedules 1.3.1(i) and 2.2.1(i) thereto upon the closing of the transactions contemplated under the Agreement.

25. The Trustee will serve a proposed cure notice, substantially the form of **Exhibit C** annexed hereto (the "*Cure Notice*") on each counterparty to the Leases and Contracts to be assumed and assigned. The Cure Notice will identify the amounts, if any, that the Trustee believes is owed to each counterparty to an assumed executory contract or unexpired lease necessary to cure any defaults that exist under such contract (the "*Cure Costs*"). If any of the Leases and Contracts are assumed and assigned pursuant to the Court's order approving same, then unless the affected counterparty properly files and serves an objection to the Cure Costs contained in the Cure Notice, the counterparty will receive at the time of the Closing (or as soon as reasonably practicable thereafter), the Cure Costs as set forth in the Cure Notice, with payment made pursuant to the terms of the Agreement. If an objection is filed by a counterparty to an assumed executory contract or unexpired lease, the Trustee proposes that such objection must set forth a specific default in any executory contract or unexpired lease and claim a specific

monetary amount that differs from the amount (if any) specified by the Trustee in the Cure Notice or, alternatively, state why the counterparty believes any Cure Cost is owing.

26. Pursuant to the terms of the Agreement, Jet Midwest shall be exclusively responsible for payment of Cure Costs with respect to any of the Leases and Contracts that are assumed and assigned. Jet Midwest will be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assumption and assignment of any of the respective Leases and Contracts. The Trustee proposes that the Court make its determinations concerning adequate assurance of future performance pursuant to 11 U.S.C. § 365(b) at the hearing on the Motion for those Leases and Contracts to be assumed/assigned at closing.

27. If any counterparty objects for any reason to the assumption and assignment, the Trustee proposes that the counterparty must file any such objection by no later than (i) seven (7) days prior to the hearing on the Motion or (ii) the date otherwise specified in the Cure Notice.

28. The Trustee further requests that the Approval Order provide that the assumed Leases and Contracts will be assigned to, and remain in full force and effect for the benefit of Jet Midwest to the extent permissible under the Bankruptcy Code and applicable non-bankruptcy law, notwithstanding any provisions in the assumed executory contracts or unexpired leases, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

29. Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A)   the trustee assumes such contract or lease in accordance with the provisions of this section; and

  (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

  30. Under section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

  31. Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *Matter of Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977). A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986). The assumption and

assignment of the assumed executory contracts or unexpired leases, or any of them, set forth in the Agreement, will be a necessary part of the deal that the Trustee has struck with Jet Midwest and, as stated above, will benefit the Subject Debtors' estates.

32. As set forth above, with respect to Leases and Contracts to be assumed and assigned under the Agreement, the Trustee will send the Cure Notices to all counterparties (the "*Counterparties*") of the Leases and Contracts. The Cure Notices serve to notify such Counterparties of the potential assumption by applicable Subject Debtors and assignment to Jet Midwest The Cure Notices set forth the "cure" amounts owing on each of the assumed Leases and Contracts according to the applicable Subject Debtors' books and records.

33. The Counterparties will have sufficient opportunity to file an objection to the proposed cure amounts set forth in the Cure Notices. To the extent no objection is filed with regard to a particular cure amount, such cure amount shall be binding on the applicable contract or lease Counterparty. The payment of the cure amounts specified in the Cure Notices (or a different amount either agreed to by the Trustee, Jet Midwest, and the Counterparties or resolved by the Court as a result of a timely-filed objection filed by a contract or lease Counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the Counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Trustee determines that a particular Lease or Contract is not truly executory, and does not need to be cured to transfer the Property to Jet Midwest.

34. As set forth in Agreement, Jet Midwest is responsible for providing evidence of "adequate assurances of future performance" to the extent required in connection with the assumption and assignment of any assumed executory contracts or unexpired leases.

The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989). *See also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). If necessary, Jet Midwest will provide evidence of its ability to provide adequate assurance to Counterparties.

E.     **Turnover of Property in the Control of Third Parties**

35.    Prior to and after the Petition Date, certain third parties unilaterally took possession of certain of the assets of the Subject Debtors that being sold to Jet Midwest. The Trustee is in the process of contacting such parties, informing of the sale, and directing them to arrange for the turnover of such property to Jet Midwest.

36.    After the Petition Date, the Trustee permitted certain third parties use the property of the Debtors subject to an informal agreement. Like the parties described above, the Trustee will also contact them to arrange for the turnover of the property to Jet Midwest.

37.    In the event any of these parties fail to cooperate to turnover estate property, the Trustee is requesting the Court retain jurisdiction over such property for the purpose of compelling them to turn over the property and comply with the terms of the Approval Order. To this end, the Trustee is requesting that the Approval Order contain a provision directing parties in possession of the Subject Debtors' assets being sold to Jet Midwest to promptly coordinate with the Trustee and arrange for the turnover of the property to Jet Midwest.

### Waiver of Bankruptcy Rules 6004(h) and 6006(d)

38. Jet Midwest is ready, willing, and able to purchase the Equipment. Because the Liens, Claims, Encumbrances and Interests will attach to the sale proceeds, the Trustee submits there is no prejudice to creditors by having an order approving the Motion become effective immediately upon its entry. Accordingly, the Trustee is requesting a waiver of the fourteen-day stay requirement under Bankruptcy Rules 6004(h) and 6006(d).

### Notice

39. Notice of this Motion shall be provided to the following parties or, in lieu thereof, to their counsel, if known: to (a) the Office of the United States Trustee; and (b) counsel to the Debtors; (c) counsel to the Debtors' prepetition first lien agent and second lien lenders (d) counsel to the Debtors' prepetition second lien agent, (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the U.S. Department of Transportation; (h) the Federal Aviation Administration; (i) all creditors of the Debtors, (j) all parties asserting an interest in the Property, and (k) those persons who have requested notice pursuant to Bankruptcy Rule 2002. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

40. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Conclusion

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion and enter the order, substantially in the form annexed hereto, to (a) authorizing the sale of the Property to Jet Midwest free and clear of all Liens, Claims, Encumbrances and Interests, with any Liens, Claims, Encumbrances and Interests attach to the sale proceeds with same validity and priority that existed as of the Petition Date, (b) authorizing the assumption and assignment of the Leases and Contracts to Jet Midwest, and (c) and grant related relief as is necessary.

Dated:  April 21, 2014                               PACHULSKI STANG ZIEHL & JONES LLP

/s/ Bradford J. Sandler
_____
Bradford J. Sandler (DE Bar No. 4142)
John W. Lucas (CA Bar No. 271038)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:       bsandler@pszjlaw.com
             jlucas@pszjlaw.com
             pkeane@pszjlaw.com

Counsel to Alfred T. Giuliano, Chapter 7 Trustee