**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| | ) | Case No. 13-13364 (MFW) |
| EVERGREEN INTERNATIONAL | ) | |
| AVIATION, INC., *et al.*[1] | ) | (Joint Administered) |
| | ) | |
| Debtors. | ) | Hearing Date: May 6, 2014 at 1:00 p.m. (ET) |
| | ) | Obj. Deadline: May 2, 2014 at 12:00 p.m. (ET) |
| | ) | Related Doc. No. 229 |

**UNITED STATES' OBJECTIONS TO MOTION OF ALFRED T. GIULIANO, CHAPER 7 TRUSTEE, FOR APPROVAL OF THE (A) SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF EVERGREEN INTERNATIONAL AVIATION, INC., EVERGREEN INTERNATIONAL AIRLINES, INC., AND EVERGREEN AVIATION GROUND LOGISTICS ENTERPRISE, INC. FREE AND CLEAR OF ALL LIENS AND CLAIMS, (B) ASSUMPTION AND ASSIGNMENT OF DESIGNATED CONTRACTS AND LEASES TO JET MIDWEST GROUP, LLC, AND (C) GRANTING RELATED RELIEF AS IS NECESSARY**

The United States of America ("United States" or "Government"), on behalf of its agencies, hereby objects to the Motion of Alfred T. Giuliano, Chapter 7 Trustee, for Approval of the (A) Sale of Substantially All of the Assets of Evergreen International Aviation, Inc., Evergreen International Airlines, Inc., and Evergreen Aviation Ground Logistics Enterprise Free and Clear of All Liens and Claims, (B) Assumption and Assignment of Designated Contracts and Leases to Jet Midwest Group, LLC, and (C) Granting Related Relief as is Necessary (the "Sale Motion"). In support of its objections, the United States states as follows:

1.  On December 31, 2013, the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code. Alfred T. Giuliano was appointed as the Trustee.

---

[1] The Debtors are as follows: Evergreen International Aviation, Inc.; Evergreen Aviation Ground Logistics Enterprise, Inc.; Evergreen Defense & Security Services, Inc.; Evergreen International Airlines, Inc.; Evergreen Systems Logistics, Inc.; Evergreen Trade, Inc.; and Supertanker Services, Inc.

2. On April 21, 2014, the Trustee filed the Sale Motion. A proposed Asset Purchase Agreement ("Agreement") between the Trustee and Jet Midwest Group, LLC ("Jet Midwest") is attached at Exhibit A and the proposed form of order ("Approval Order") is attached at Exhibit B to the Sale Motion. The Trustee states in the Sale Motion that if he is presented with any higher and better offers for some or all of the Property (as defined in the Sale Motion), he will consider such offers.

3. Counsel for the Trustee and for the United States are attempting to resolve the issues raised in the United States' objections. To this end, counsel for the Trustee has circulated a revised sale order to address the United States' concerns subject to the approval of Jet Midwest. However, due to the objection deadline, the United States files this objection out of an abundance of caution and to preserve its rights.

## OBJECTIONS

4. What specific assets the Trustee seeks to sell to Jet Midwest or any other entity is unclear. To the extent that the Trustee seeks to sell and transfer the operating certificates issued by the Federal Aviation Administration ("FAA") and certificates issued by the Department of Transportation ("DOT"), the United States objects.

5. The air carrier operating certificate issued by the FAA cannot be sold or otherwise transferred to another person. To secure an air carrier operating certificate, an applicant must submit substantial information specific to it. The FAA, the agency responsible for regulating safety in air transportation, evaluates the applicant's qualifications including whether it has the experience, skill, capability, and resources to operate an air carrier in common carriage with the highest degree of safety. See 49 U.S.C. §§ 44705, 44702(b)(1); 14 C.F.R. § 119.39. The FAA issues an air carrier operating certificate only to those with the requisite qualifications. Each certificate on its face notifies its holder and any entity that seeks

to acquire the assets of the certificate holder that the certificate may not be transferred. Thus, the Trustee cannot sell the FAA certificate to any person.

6. In addition to the FAA operating certificate, Evergreen International Airlines, Inc. ("Debtor") also has a Certificate of Public Convenience and Necessity issued by the DOT. On December 6, 2013, the Debtor's certificate authority was automatically suspended pursuant to 14 C.F.R. § 204.7 because it had ceased operations. The Trustee may not transfer the Certificate of Public Convenience and Necessity without the prior approval of DOT which requires a finding by DOT that the transfer is consistent with the public interest. 49 U.S.C.§ 41105.

7. DOT must determine whether the transferee is fit to conduct the proposed operations under the three-part test of the transferee's managerial capabilities, financial posture, and compliance disposition– the same test that the Debtor had to undergo. See 49 U.S.C. § 41102; 14 C.F.R. Part 240. DOT must also determine that the transferee meets the U.S. citizenship requirements. 49 U.S.C. § 40102(a)(15); 14 C.F.R. § 204.2(c) . If DOT determines that Jet Midwest or any other purchaser is not fit or does not meet the U.S. citizenship requirements, the Certificate of Public Convenience and Necessity cannot be transferred.

8. The Agreement provides that "ownership of the Property shall transfer to Buyer on the Closing Date." Agreement § 9.20(a). The Approval Order states that "[n]o consents or approvals, other than those expressly provided for in the Agreement are required for the Trustee to consummate the Agreement and the transactions contemplated thereby." Approval Order at ¶ 22. The Approval Order also provides that the transfer of the Property to Jet Midwest "shall constitute a legal, valid, binding, and effective transfer of such Property . . . and shall vest Jet Midwest with title to the Property." Approval Order at ¶ 36. See also Approval Order at ¶¶ 23, 40.

9. As drafted, under the proposed Approval Order, at closing, Jet Midwest would

obtain the FAA operating certificate which is non-transferable, as well as the DOT Certificate of Public Convenience and Necessity without first obtaining the requisite DOT approval. Nothing in section 363, or for that matter any other provision of the Bankruptcy Code, overrides the regulatory requirements regarding the FAA and DOT certificates.   To the extent that the Sale Motion and Approval Order expand the Debtors' rights beyond those which the Debtors would otherwise be entitled to outside bankruptcy, the United States objects.   The Bankruptcy Code does not create substantive rights that are otherwise unavailable under applicable law. See United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986).

10.    The Approval Order provides for the Property to be sold free and clear of "claims, liens, liabilities, interests. . . regulatory violations by any governmental entity. . .whether known or unknown. . . whether arising prior to or subsequent to the commencement of the chapter 7 cases." Approval Order at ¶ 37.  The Approval Order further provides that Jet Midwest shall not have "successor or vicarious liabilities of any kind. . .whether known or unknown as of the Closing Date, now existing or herafter arising. . . . "  Approval Order at ¶ 51.

11.  Whether the Approval Order, as drafted, affords Jet Midwest a release with respect to future claims or regulatory liabilities is unclear.   To the extent that it does, the United States objects.  Although the terms "interests in property" and "claims" may be interpreted broadly, the obligation to comply with regulatory requirements is not an interest or claim that may be released in a 363 sale.  See  Pension Benefit Guaranty Corp. v. Oneida Ltd, 562 F.3d 154, 157 (2d Cir. 2009) ("No matter how broadly the term 'claim' is construed, it cannot extend to a right to payment that does not yet exist under federal law."); In re Grumman Olson Indus. Inc., 445 B.R. 243,254 (Bankr. S.D.N.Y.  2011)( holding that a person injured after the sale. . . by a defective product manufactured and sold prior to the bankruptcy does not hold a 'claim' in the

bankruptcy case and is not affected by either the § 363(f) sale order or the discharge"); <u>Zerand-Bernal Group, Inc. v. Cox</u>, 23 F.3d 159, 163 (7th Cir. 1994) ("no one believes. . . that a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price. . .[or to] immunize such buyers from all state and federal laws that might reduce the value of the assets bought from the bankrupt."); <u>cf.</u> <u>Holywell Corp. v. Smith</u>, 503 U.S. 47, 58-59 (1992) ("Even if section 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to post-confirmation claims.").

12.     Paragraph 52 of the Approval Order contains a broad third party release and injunction providing that all persons including governmental authorities holding "Liens, Claims, Encumbrances and Interests of any kind. . .against all or any portion of the Property. . .arising under or out of, in connection with, or in any way relating to the Subject Debtors, the Property, the Subject Debtors' business prior to the Closing Date . . . are forever barred from asserting against Jet Midwest . . . such persons' or entities' Liens, Claims, Encumbrances and Interests in or against the Property, including the following actions: (a)commencing or continuing in any manner any action or other proceeding against Jet Midwest . . . or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Property or conduct any of the businesses operated with the Property. "Approval Order at ¶ 52.

13.     This release, which is made binding on all creditors (<u>see</u> Approval Order at ¶ 35) is not voluntary or consensual and is impermissible. <u>See</u> <u>In re Washington Mutual, Inc.</u>, 442 B.R. 314, 355 (Bankr. D. Del. 2011). Furthermore, the Third Circuit Court of Appeals has held that non-debtor releases require specific finding that they are necessary to the reorganization. <u>In</u>

re Continental Airlines, 203 F.3d 203, 214-17 (3rd Cir. 2000); see also In re Prussia Assocs., 322 B.R. 572, 598 (Bankr. E.D. Pa. 2005) (holding that a third party injunction and release is invalid unless it is necessary to the debtor's reorganization). No such showing can be made here because the Debtors are liquidating.

14. This injunction and release provision is broader than what is found in most reorganization plans. As drafted, paragraph 52 impermissibly bars the United States from commencing any action against Jet Midwest or from revoking or failing or refusing to transfer or renew any license, permit or authorization to operate the business. The United States objects to the extent that the non-debtor injunction and release strips the United States of its right to exercise its police and regulatory powers. Nothing in 11 U.S.C. § 363(f), or for that matter any other provision of the Bankruptcy Code, supports such a release.[2]

15. The Trustee asserts that the consideration given by Jet Midwest shall constitute valid consideration for the releases.[3] Approval Order at ¶ 53. The Trustee's reliance on the consideration provided by Jet Midwest to support this release is misplaced here. The United States clearly cannot be compelled to accept a monetary satisfaction in lieu of exercising its police and regulatory functions. See In re Torwico Elecs, 8 F.3d 146, 151 (3rd Cir. 1993) ("there is no option to accept payment in lieu of continued pollution."); In re Mark IV Indus., Inc., 459 B.R. 173, 188 (S.D.N.Y. 2011) ("[a]n environmental obligation to remedy ongoing pollution

---

[2] Section 525, 11 U.S.C.§ 525, provides no support for this provision since it is inapplicable to non-debtors.

[3] Under the Agreement, Jet Midwest will be paying $4,275,000 for the Property. According to ¶ 6 of the Sale Motion, the sale proceeds will be paid to the Debtors' prepetition secured lenders subject to the carve-out as set forth in the Final Order Authorizing the Use of Cash Collateral and Providing Adequate Protection ("Cash Collateral Order") [Docket No. 202]. The Cash Collateral Order provides for a carveout of $250,000 for distribution to the Debtors' estates. Cash Collateral Order at ¶ 7. Thus, creditors (other than the prepetition secured lenders) are receiving little distribution in exchange for this overly broad release.

cannot be converted to a monetary sum"); see also Gouveia v. Tazbir, 37 F.3d 295, 299 (7th Cir. 1994) (holding that since the "landowners cannot be forced to accept money damages in lieu of equitable relief, we conclude that § 363(f)(5) is inapplicable to the case at bar."). Accordingly, to the extent the Sale Motion seeks approval of such a broad release, it should be denied.

16. The United States also objects to the extent that the Trustee seeks to obtain injunctive relief in the context of a Sale Motion without the filing of an adversary proceeding as required by Fed. R. Bankr. P. 7001. See In re Lyons, 995 F.2d 923 (9th Cir. 1993)( when a Rule 7001 category is in issue, the movant "may obtain the authority he seeks only through an adversary proceeding.")

**RESERVATION OF RIGHTS**

17. The United States reserves all of its rights to assert any additional objections once the Trustee files all the schedules to the Agreement or in the event the Trustee seeks an alternative transaction with another purchaser.

WHEREFORE, the United States respectfully requests that the Court deny approval of the Sale Motion.

May 2, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

CHARLES OBERLY III
United States Attorney

        ELLEN W. SLIGHTS
Assistant United States Attorney
Delaware State Bar No. 2782
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046


/s/Andrea Horowitz Handel
J. CHRISTOPHER KOHN
TRACY J. WHITAKER
ANDREA HOROWITZ HANDEL
Civil Division
Department of Justice
Post Office Box 875
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 307-0358
Facsimile: (202) 514-9163
Email: andrea.handel@usdoj.gov

Attorneys for the United States

<u>Certificate of Service</u>

I hereby certify that on this 2nd day of May 2014, I caused copies of the foregoing document to be served by electronic mail on the following parties:

| | |
|---|---|
| Bradford J. Sandler<br>John W. Lucas<br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE  19899-8705 | Ropes & Gray<br>Attn:  Matthew Burrows<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA  02199-3600 |
| James L. Patton<br>Joel A. Waite<br>Young Conaway Stargatt & Taylor LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801 | Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>844 N. King Street<br>Suite 2207<br>Lock Box 35<br>Wilmington, DE  19801 |
| Thompson Hine LLP<br>Attn:  Curtis L. Tuggle<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114 | |

and by electronic mail on all parties on the Court's ECF system.

/s/ Andrea Horowitz Handel<br>
Andrea Horowitz Handel