**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| _____ ) | | |
| In re: ) | Chapter 7 | |
| ) | | |
| EVERGREEN INTERNATIONAL ) | Case No. 13-13364 (MFW) | |
| AVIATION, INC, *et al.*,[1] ) | | |
| ) | **Re: D.I. Nos. 229 & 262** | |
| Debtors. ) | | |
| ) | Hearing Date: May 30, 2014 at 9:30 a.m. (ET) | |
| _____ ) | Objection Deadline: May 27, 2014 at 4:00 p.m. (ET) | |

**SUPPLEMENT TO LIMITED OBJECTION OF MARANA AEROSPACE SOLUTIONS, INC. TO CHAPTER 7 TRUSTEE'S MOTION FOR THE APPROVAL OF: (A) SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF EVERGREEN INTERNATIONAL AVIATION, INC., EVERGREEN INTERNATIONAL AIRLINES, INC., AND EVERGREEN GROUND AVIATION GROUND LOGISTICS, INC. FREE AND CLEAR OF ALL LIENS AND CLAIMS, (B) ASSUMPTION AND ASSIGNMENT OF DESIGNATED CONTRACTS AND LEASES TO JET MIDWEST GROUP, LLC, AND (C) GRANTING RELATED RELIEF AS IS NECESSARY**

Marana Aerospace Solutions, Inc. ("Marana Aerospace")[2], by and through its undersigned counsel, hereby submits this supplement to its Limited Objection filed on May 2, 2014 [D.I. No. 262] to Chapter 7 Trustee's Motion For the Approval of: (A) Sale of Substantially All of the Assets of Evergreen International Aviation, Inc., Evergreen International Airlines, Inc., and Evergreen Ground Aviation Ground Logistics, Inc. Free and Clear of all Liens and Claims, (B) Assumption and Assignment of Designated Contracts and Leases to Jet Midwest Group, LLC, and (C) Granting Related Relief as is Necessary (hereinafter, the "Sale Motion")

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Evergreen International Aviation, Inc. (9079); Evergreen Aviation Ground Logistics Enterprise, Inc. (6736); Evergreen Defense & Security Services, Inc. (0118); Evergreen International Airlines, Inc. (7870); Evergreen Systems Logistics, Inc. (0610); Evergreen Trade, Inc. (0952); and Supertanker Services, Inc. (3389). The Debtors' address is 3850 Three Mile Lane, McMinnville, Oregon 97128.

[2] Capitalized terms undefined herein shall have the meanings ascribed to them in the Limited Objection.

with the following new information which was not available to Marana Aerospace at the time of the filing of its Limited Objection on May 2, 2014. In support of its Supplement to its Limited Objection, Marana Aerospace respectfully states as follows:

### A. AS OF MAY 26, 2014, THE TRUSTEE HAS NOT FILED A REVISED ASSET PURCHASE AGREEMENT OR FORM OF SALE ORDER

1. The Trustee originally noticed the proposed sale to be approved by May 6, 2014.

2. The Trustee unilaterally cancelled that hearing.

3. The original sale agreement provided that the Debtors' property would be removed from Marana Aerospace's facility no later than May 30, 2014.

4. After objection by Marana Aerospace, the Trustee moved to reschedule the hearing to May 15, 2014.

5. Again, the Trustee sought a continuance until May 30, 2014, which was granted by the Court.

6. At the May 15, 2014 hearing, the Court ordered payments to be made to Marana Aerospace as a condition of vacating an Order deeming certain property of the Debtors' estates abandoned. As of May 26, 2014, those payments have not been made.

7. As of May 26, 2014, the Trustee still had not filed an amended proposed sale agreement or any amended sale order.

8. As of May 26, 2014, Marana Aerospace - as well as other creditors and the Court - still do not know the terms of the proposed sale, or how rights will be impacted by the amended sale agreement and proposed amended order, which the Trustee previously told the Court it would be filing.

9. What Marana Aerospace does know is that the Trustee and the Goldman Sachs Syndicated Lenders have used Marana Aerospace's property to store property that they are now

proposing to sell to a company called Jet Midwest. Despite an obligation to make payment to Marana Aerospace for the use of Marana Aerospace's property since December 31, 2013 under, *inter alia*, 11 U.S.C. § 365(d), the Trustee and the Goldman Sachs Syndicated Lenders did not pay as required. The conditional payments ordered by this Court on May 15, 2014, have not yet been made, yet, the Trustee and the Goldman Sachs Syndicated Lenders are still apparently proposing a proposed sale under 11 U.S.C. § 363 with all proceeds going to the Goldman Sachs Syndicated Lenders. Even if the Trustee files an amended purchase agreement and an amended sale order, Marana Aerospace respectfully requests that all proceeds be held in escrow until after such time as Marana Aerospace's rights may be adjudicated, including all amounts requested in Marana Aerospace's Motion for an Administrative Claim filed on May 21, 2014. [D.I. No. 312]. In addition, an escrow is justified as the buyer, post-closing, needs to remove items from Marana Aerospace's property.

10. Furthermore, as this Court is aware, the Debtors have left significant environmental damage on Marana Aerospace's property. Little or no work has been done by the Trustee to remediate Marana Aerospace's property. Any sale approval should be conditioned on the Trustee properly remediating the property to the reasonable satisfaction of the Arizona Department of Environmental Protection, which has sent numerous notices to the Trustee. Further, any proposed sale should be conditioned on any insurance or indemnity rights and the right to pursue any insurance or indemnity rights be transferred to Marana Aerospace.

    **B.**    **THE SUPERTANKER IS NOT AN ASSET OF THE ESTATE AND THEREFORE CANNOT BE SOLD PURSANT TO 11 U.S.C. § 363**

11. On May 13, 2014, the Goldman Sachs Syndicated Lenders filed a Reply in Support of Sale Motion, asserting numerous allegations as to Marana Aerospace [D.I. No. 286] in which it stated that Marana Aerospace is not the "proper owner" of the Boeing 747 aircraft,

tail number N479EV, and two attached engines (collectively, the "Supertanker") and that the Supertanker should be sold to Jet Midwest as part of the Asset Purchase Agreement.

12. Contrary to the position taken by the Goldman Sachs Syndicated Lenders, the Supertanker was properly sold by Marana Aerospace as part of a properly noticed public sale such the Supertanker was not part of the Debtors' estate on the Petition Date.

13. On December 4, 2013, Marana Aerospace sent a demand to Evergreen Airlines and Evergreen Trade for amounts owed to Marana Aerospace for the aircraft being stored at Marana Aerospace's facility owned by Evergreen Airlines and Evergreen Trade stating that if payment was not received, Evergreen Airlines and Evergreen Trade's aircraft would be sold at public auction on December 16, 2013.

14. As Marana Aerospace had not been paid for its services, a Notice of Public Auction Sale of Aircraft and Parts was published in accordance with Arizona law setting the sale for December 16, 2013 at 10:00 a.m. (*See* Notice of Public Auction Sale and Affidavit of Publication filed as Exhibit D to the Declaration of Gayla Bella [D.I. No. 262-5] and attached hereto as Exhibit A.) The terms of the Notice of Sale were clear that any bidder would be required to pay cash at the time of sale and it did not provide for any escrow of any funds.

15. Notice of the Public Auction Sale was provided to Evergreen Airlines and Evergreen Trade's and their purported lienholders.

16. On December 16, 2013, the public sale was held as noticed. One of the aircraft that Debtors propose to sell to Jet Midwest, the Supertanker, was the subject of the public sale.

17. The Notice of Public Auction Sale made clear that the aircraft were being sold based upon the following terms and conditions, including that the bids were to be all cash, as follows:

4

> <u>Terms and Conditions of Sale:</u> The Aircrafts and Parts will be sold to the bidder with the highest net bid or otherwise best bid, **for cash** except as otherwise provided herein, "AS IS/WHERE IS" with all faults and without any express or implied representations or warranties whatsoever, including without limitation, liens, encumbrances, warranties of merchantability, quiet enjoyment or fitness for a particular purpose or as to the title, value or quality of the Aircrafts and Parts. Marana Aerospace reserves the right, on or prior to the Date of Sale, to modify, waive or amend any terms or conditions of the sale or impose any other terms or conditions on the sale and, if Marana Aerospace deems appropriate, to reject any bids or to adjourn, delay or terminate the sale. The public auction will be subject to no minimum cash bid. Bids will continue to be entertained until Marana Aerospace has determined that it has received the highest net bid or otherwise best bid. Notwithstanding the requirement that the sale of the Aircrafts and Parts be for cash, possessory lien holder of the Aircrafts and Parts will be permitted to credit bid in proportion to their lien.

(*See* Exhibit A at page 2.)

18. Attorneys Curtis L. Tuggle and Jonathan Ross from Thompson Hine, LLP appeared at the public sale on behalf of the Goldman Sachs Syndicated Lenders. (*See* Public Auction Sign in Sheet attached hereto as Exhibit B.)

19. When Curtis Tuggle and Jonathan Ross signed in at the public sale, they acknowledged the following:

> **BIDDER HEREBY ACKNOWLEDGES THAT THE AIRCRAFT AND PARTS ARE BEING SOLD AS PER THE NOTICE OF PUBLIC AUCTION SALE OF AIRCRAFT AND PARTS INCLUDING THAT THE AIRCRAFT BEING SOLD ARE SUBJECT TO ALL LIENS AND ENCUMBRANCES.**

(*See* Exhibit B.)

20. The Goldman Sachs Syndicated Lenders, through Curtis Tuggle and Jonathan Ross, placed a bid for the Supertanker in the amount of $100,000 on behalf of their client, 10th Lane Finance Co., LLC (hereinafter "<u>10th Lane</u>").

21. After the bid was submitted, Curtis Tuggle and Jonathan Ross asked if Marana Aerospace would be willing to have the funds held in escrow. As set forth in the letter from Joel

Herz to Curtis Tuggle dated December 18, 2013 attached hereto as Exhibit C, Marana Aerospace replied that if Goldman Sachs Syndicated Lenders or 10th Lane had any misunderstanding that the sale was $100,000 all cash, Marana Aerospace would be prepared to fully release Goldman Sachs Syndicated Lenders or 10th Lane from its obligation and if Goldman Sachs Syndicated Lenders or 10th Lane still wished to pay the $100,000 that it bid, a certified check could be delivered to Marana Aerospace, as follows:

> After the sale was completed, you asked as an accommodation if my client would be willing to have the funds held in escrow. We are willing to accommodate your client but not necessarily in accordance with the timeframe as set forth in your December 18, 2013 letter. If your client, 10th Lane Finance Co., LLC, had any kind of misunderstanding that the terms of the auction were any different than what are set forth in the notice, and for which you signed when you appeared at the auction, please let me know immediately as we are prepared to fully release your client from its obligation to pay $100,000 in cash to my client. So there is no misunderstanding, I am not in any way in agreement with any of the terms or conditions of your December 18, 2013 letter. Moreover, so there is no misunderstanding, a copy of the Bill of Sale that I expect my client to sign and yours to sign is attached hereto as Exhibit B. If your client wishes to pay the $100,000 that it bid, a certified check can be delivered today to Marana Aerospace Solutions, Inc., 24641 Pinal Air Park Road, Marana, Arizona 85653.

(*See* Exhibit C, at page 2.)

22. Goldman Sachs Syndicated Lenders and 10th Lane failed to deliver according to the cash terms of the public auction sale.

23. Contrary to the Goldman Sachs Syndicated Lenders' assertions that Marana Aerospace failed to provide information and documents, including wiring instructions and a satisfactory escrow agreement to enable the parties to close on the sale of the Supertanker, Marana Aerospace provided all necessary information.

24. In particular, on December 19, 2013, counsel for Marana Aerospace provided to counsel for 10th Lane who is also counsel to the Goldman Sachs Syndicated Lenders the

6

requested wiring instructions. (*See* emails from Joel Herz to Curtis Tuggle dated December 19, 2013 attached hereto as Exhibit D, attaching wiring instructions.)

25. Contrary to the Goldman Sachs Syndicated Lenders' assertions, the Goldman Sachs Syndicated Lenders simply did not pay in accordance with the Notice of Public Sale, which they signed they understood when they appeared at the auction. As Goldman Sachs Syndicated Lenders did not pay in compliance with the auction terms, the Supertanker was sold to the next highest bidder, Marana Aerospace, and was not part of the Debtors' estates on the Petition Date.

### C. ANY PROPOSED SALE OR PROPOSED SALE ORDER SHOULD MAKE JET MIDWEST RESPONSIBLE FOR DAMAGES CAUSED OR CONTRIBUTED BY JET MIDWEST AT THE PINAL AIRPARK

26. Despite requests by Marana Aerospace to undertake the removal of any assets from its facilities, the Trustee and Jet Midwest have insisted on using their own labor. The removal of the assets may cause damages or injuries. Therefore, Jet Midwest and Jet Midwest should retain responsibility for any damages or injuries caused by either Jet Midwest or the Trustee as a result of their activities at the Pinal Airpark and should be require to keep full insurance in place until after all assets and property are removed.

WHEREFORE, for the foregoing reasons, Marana Aerospace requests that the Court deny the Sale Motion, and grant Marana Aerospace such other and further relief as the Court deems just and proper.

Dated: May 27, 2014                 **CROSS & SIMON, LLC**
        Wilmington, Delaware

By: */s/ Christopher P. Simon*
     Christopher P. Simon (No. 3697)
     913 North Market Street, 11th Floor
     Wilmington, Delaware 19801
     Telephone: (302) 777-4200
     Facsimile: (302) 777-4224
     csimon@crosslaw.com

     -and-

     Joel L. Herz, Esq.
     Law Offices of Joel L. Herz
     3573 East Sunrise Drive, Suite 215
     Tucson, AZ  85718
     Telephone: (520)529-8080
     Facsimile: (520)529-8077
     joel@joelherz.com

     *Counsel for Marana Aerospace Solutions, Inc.*