IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| EVERGREEN INTERNATIONAL AVIATION, INC., *et al.* | Case No. 13-13364 (MFW) |
|  | Jointly Administered |
| Debtors. | **Re: Docket Nos. 229, 260, 261, 262, 263, 269, 270 & 327** |

**ORDER GRANTING MOTION OF ALFRED T. GIULIANO,
CHAPTER 7 TRUSTEE, FOR APPROVAL OF THE (A) SALE OF
SUBSTANTIALLY ALL OF THE ASSETS OF EVERGREEN INTERNATIONAL
AVIATION, INC., EVERGREEN INTERNATIONAL AIRLINES, INC.,
AND EVERGREEN GROUND AVIATION GROUND LOGISTICS, INC.
FREE AND CLEAR OF ALL LIENS AND CLAIMS, (B) ASSUMPTION AND
ASSIGNMENT OF DESIGNATED CONTRACTS AND LEASES TO JET MIDWEST
GROUP, LLC, AND (C) GRANTING RELATED RELIEF AS IS NECESSARY**

Upon the *Motion for Approval of the (A) Sale of Substantially All of the Assets of
Evergreen Aviation Ground Logistics Enterprise, Evergreen International Aviation, Inc.,
Evergreen International Airlines, Inc., Evergreen Trade, Inc., and Supertanker Services, Inc.
Free and Clear of All Liens and Claims, (B)Assumption and Assignment of Designated Contracts
and Leases to Jet Midwest Group, LLC, and (C) Grant Related Relief as is Necessary* (the "***Sale
Motion***") of Alfred T. Giuliano, chapter 7 trustee (the "***Trustee***"), to the estate of the above-
captioned debtors (the "***Debtors***"), seeking approval to (a) sell the majority of Evergreen
International Aviation, Inc.'s ("***Aviation***"), Evergreen International Airlines, Inc.'s ("***Airlines***"),
Evergreen Aviation Ground Logistics Enterprises, Inc. ("***EAGLE***"), and Supertanker Services,
Inc. ("***Supertanker Services***" and together with Aviation, Airlines, and EAGLE the "***Subject
Debtors***") assets (the "***Property***") free and clear of all Liens, Claims, Encumbrances and Interests
(as defined herein) and have Liens attached to the sale proceeds with same validity and priority

that existed as of the Petition Date to Mojave Jet Asset Services, LLC ("*Buyer*"), (b) resolve all

objections of Marana Aerospace Solutions, Inc. ("*Marana*") to the Motion, the Agreement and

related matters including, without limitation, those described in the objection to the Motion

(Docket Nos. 262 and 327) filed by Marana (the "*Marana Objection*"), and (c) and grant related

relief as is just and necessary, as set forth in the asset purchase agreement between the Trustee

and Jet Midwest Group, LLC (collectively with Buyer and Jet Midwest Group, LLC's affiliates,

successors and assigns, "*Jet Midwest*") (as amended by that certain Amendment to Asset

Purchase Agreement ~~dated as of~~ May 21, 2014, the "Agreement") ~~annexed hereto as Exhibit A~~; it

appearing that the relief requested is in the best interests of the Debtors' estates, their creditors

and other parties in interest; the Court having jurisdiction to consider Sale Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having

been adequate and appropriate under the circumstances; a hearing on the Motion having been

held by this Court; and after due deliberation and sufficient cause appearing therefor:

## THE COURT HEREBY FINDS AND DETERMINES THAT:

**A.    Jurisdiction, Final Order, Immediate Implementation and Statutory Bases**

1.    This Court has jurisdiction to hear and determine the Motion pursuant to

28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28

U.S.C. §§ 1408 and 1409.

2.    This Order (the "*Approval Order*") constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Approval Order, and expressly directs entry of judgment as set forth herein.

3.    The statutory bases for the relief requested in the Motion and entry of this Approval Order are sections 105(a) and 363(b), (f) and (m) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*"), Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rules 6004-1 and 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

4.    On December 31, 2013, each of the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. After the Petition Date, Alfred T. Giuliano was appointed as trustee of the Debtors.

**B.    Notice of the Sale**

5.    On April 21, 2014, the Court entered the *Order Granting Motion to Shorten Notice of, and Schedule a Hearing on, Motion of Alfred T. Giuliano, Chapter 7 Trustee, for Approval of the (A) Sale of Substantially All of the Assets of Evergreen Aviation Ground Logistics Enterprise, Evergreen International Aviation, Inc., Evergreen International Airlines, Inc., Evergreen Trade, Inc., and Supertanker Services, Inc. Free and Clear of All Liens and*

*Claims, (B) Assumption and Assignment of Designated Contracts and Leases to Jet Midwest*

*Group, LLC, and (C) Granting Related Relief as is Necessary* [Docket No. 232] (the

"***Scheduling Order***"). By entry of the Scheduling Order, the Court scheduled a hearing on the

Motion on May 6, 2014 at 1:00 p.m. (Eastern Time), which was adjourned to May 30, 2014 at

9:30 a.m. (Eastern Time), and set the deadline to file objections to the Motion on May 2, 2014 at

12:00 p.m. (Eastern Time), which was extended through May 27, 2014 at 4:00 p.m. (Eastern

Time).

      6.     After entry of the Scheduling Order, actual written notice of the sale and

transfer of the Property and the relief requested in the Motion (the "Sale Notice") has been

afforded to all known interested entities, including the following parties:

    (i)     the Office of the United States Trustee for the District of Delaware;

    (ii)    counsel to the Lenders[1];

    (iii)   the Internal Revenue Service;

    (iv)   the Securities and Exchange Commission;

    (v)    the U.S. Department of Transportation;

    (vi)   the Federal Aviation Administration;

    (vii)  all parties asserting an interest in the Property;

    (viii) all creditors of the Debtors; and

---

[1] The "Lenders" as such term is used herein shall refer to the Lenders pursuant to: that certain Amended and Restated First Lien Credit and Guaranty Agreement dated as of June 30, 2011 (as amended and restated as of May 2, 2013), together with all other loan and security documents executed in connection therewith (the "***First Lien Credit Documents***"); that certain Second Amended and Restated Second Lien Credit Agreement, dated May 2, 2013, together with all other loan and security documents executed in connection therewith (the "***Second Lien Credit Documents***" and together with the First Lien Credit Documents, the "***Pre-Petition Credit Documents***"); and the Court's Final Order Authorizing the Use of Cash Collateral and Providing Adequate Protection [docket # 202] (the "***Final Cash Collateral Order***"). All capitalized terms used and not defined herein shall have the means ascribed to them in the First Lien Credit Documents and the Second Lien Credit Documents, as applicable.

(ix)    all parties that have requested notice in these cases (collectively, the "Notice Parties").

7.    Evidence of service of the Sale Notice [Docket No. 239] is set forth in the *Affidavits of Service* filed on April 22, 2014 [Docket No. 239] and April 23, 2014 [Docket Nos. 245 and 246].

8.    As evidenced by the certificates of service filed with the Court, proper, timely, adequate and sufficient notice of the Motion, the Agreement, and the transactions contemplated thereby has been provided in accordance with Bankruptcy Code sections 105(a) and 363, and Bankruptcy Rules 2002, 6004, 9007 and 9008. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the hearing on the Motion, or the Agreement is or shall be required.

C.    **Highest and Best Offer**

9.    Based upon the testimony and other evidence proffered or adduced at the hearing on the Motion or submitted by affidavit or declaration at or prior to such hearing:

a.    After his appointment, the Trustee marketed the Property subject to the sale through and after the execution of the Agreement.

b.    The Trustee did not receive any other offers for the Property that were higher and better than the offer provided by Buyer under the Agreement.

c.    The Agreement represents a fair and reasonable offer to purchase the Property and under the circumstances of these cases is the highest and best offer to purchase the Property.

5

          d.      Approval of the Motion and the Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Subject Debtors, their estates, their creditors and other parties in interest.

          e.      The Trustee has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the sale and to resolve the Marana Objection. Such business reasons include, but are not limited to, the facts that: (i) the Agreement constitutes the highest and best offer for Property and Assumed Liabilities; (ii) there is substantial risk of deterioration of the value of the respective Property if the Agreement is not consummated quickly; (iii) the Agreement presents the best opportunity to realize the value of the Property; (iv) unless the sale is concluded expeditiously, potential creditor recoveries may be substantially diminished, and (v) resolving the Marana Objection will facilitate the maximization of value of the Subject Debtors' assets.

## D.    Good Faith of the Buyer

          10.      Buyer is not an "insider" of any of the Subject Debtors, as that term is defined in Bankruptcy Code section 101(31).

          11.      The Agreement was negotiated, proposed and entered into by the Trustee and Buyer without collusion, in good faith and from arms'-length bargaining positions.

          12.      Neither the Trustee nor Buyer has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. Among other things, Buyer has not acted in a collusive manner with any person.

13.     Buyer is purchasing the Property and assuming the Assumed Liabilities (as applicable), in accordance with the Agreement, in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Subject Debtors' chapter 7 cases in that, among other things:  (a) Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the respective Property and assuming the Assumed Liabilities; (b) Buyer in no way induced or caused the chapter 7 filings by the Subject Debtors; and (c) all payments to be made by Buyer in connection with the Agreement have been disclosed.

14.     The Trustee and his professionals have complied, in good faith, with the requirements under the Bankruptcy Code, Bankruptcy Rules, and Local Rules in all respects.  As demonstrated by (a) any testimony and other evidence proffered or adduced at the hearing on the Motion or submitted by affidavit or declaration at or prior to such hearing and (b) the representations of counsel made on the record at the hearing, the Trustee (i) afforded interested potential purchasers a full, fair and reasonable opportunity to submit offers for the Property; (ii) provided potential purchasers, upon request, with sufficient information to enable them to make an informed judgment on whether to submit a competing offer for the Property; and (iii) considered all competing offers submitted on or before the hearing on this Motion.

E.     **No Fraudulent Transfer**

15.     The consideration provided by Buyer pursuant to the Agreement, (a) is fair and reasonable, (b) is the highest and best offer for the Property and Assumed Liabilities and (c)

7

constitutes reasonably equivalent value and fair consideration (as those terms are defined in each

of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Bankruptcy

Code section 548) under the laws of the United States, any state, territory, possession or the

District of Columbia.

16.     The Agreement was not entered into for the purpose of hindering,

delaying, preferring, or defrauding creditors under the Bankruptcy Code or under the laws of the

United States, any state, territory, possession, the District of Columbia or of the laws of Canada,

any province, territory or possession.  The Trustee, Subject Debtors nor Buyer entered into the

transactions contemplated by the Agreement fraudulently for the purpose of statutory and

common law fraudulent conveyance and fraudulent transfer claims.

**F.**    **No Continuation of the Subject Debtors**

17.     Jet Midwest and Buyer shall not, as a result of the transfer of the Property

under the Agreement or closing on the sale and taking any actions to close on the sale, be

deemed to (a) be a successor or mere continuation to the Debtors or (b) have, de facto or

otherwise, merged with or into the Debtors.  Without limiting the effect or scope of the

foregoing, to the greatest extent permitted by applicable law, the transfer of the Property to

Buyer does not and will not subject Jet Midwest, Buyer, or any of their respective properties

(including the Property) to any liability for Liens, Claims, Encumbrances, or Interests against the

Debtors or Liens, Claims, Encumbrances or Interests of the Debtors in such Property by reason

of such transfer under the laws of the United States or any state, territory or possession thereof,

or the District of Columbia, including, without limitation any bulk transfer laws or successor liability laws and similar theories.

**G.** **Validity of Transfer**

       18.    The Property constitutes property of the Subject Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

       19.    The Trustee and each Subject Debtor has full corporate or limited liability company, as applicable, power and authority to execute and deliver Agreement and all other documents contemplated thereby.  Except as otherwise set forth herein, no consents or approvals, other than those expressly provided for in the Agreement are required for the Trustee to consummate the Agreement and the transactions contemplated thereby.

       20.    Pursuant to the Agreement and except as otherwise provided herein, including paragraph 33 of this Approval Order providing for the preservation of the Lenders' Liens until payment of the Final Installment, the transfer of the Property to Buyer will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest Buyer with all right, title and interest of the Subject Debtors to the Property free and clear of all Liens, Claims, Encumbrances and Interests with all such Liens, Claims, Encumbrances and Interests attaching to the cash proceeds of the sale ultimately attributable to the Property in which such creditor alleges a Lien, Claim, Encumbrance or Interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Trustee and the Debtors' estates may possess with respect thereto, other than the Assumed Liabilities.

**H.** **Section 363(f) is Satisfied**

21.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Trustee may sell the Property free and clear of any Liens, Claims, Encumbrances and Interests in the Property, except for the Lenders' Liens (as defined herein) which shall continue in certain of the Property until payment of the Final Installment (as defined herein) as expressly set forth in paragraph 33 of this Approval Order with respect to the Lenders' Liens, with all such Liens, Claims, Encumbrances and Interests attaching to the cash proceeds of the sale ultimately attributable to the Property in which such creditor alleges a Lien, Claim, Encumbrance or Interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Trustee and the Debtors' estates may possess with respect thereto.

22.    Subject to the terms and conditions of this Approval Order, including, specifically, the provisions set forth in paragraph 33 of this Approval Order providing for the preservation of the Lenders' Liens until payment of the Final Installment, the Trustee may sell the Property in accordance with the Agreement free and clear of all Liens, Claims, Encumbrances and Interests in or against the Subject Debtors, except as expressly set forth in paragraph 33 of this Approval Order with respect to the Lenders' Liens, their estates or any of the Property with all such Liens, Claims, Encumbrances and Interests attaching to the cash proceeds of the sale ultimately attributable to the Property in which such creditor alleges a Lien, Claim, Encumbrance or Interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Trustee and the

Debtors' estates may possess with respect thereto because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Claims, Encumbrances and Interests in or against the Subject Debtors, their estates or any of the Property who did not object, or who withdrew their objections, to the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Subject to the terms and conditions of this Approval Order, including, specifically, the provisions set forth in paragraph 33 of this Approval Order providing for the preservation of the Lenders' Liens until payment of the Final Installment, those holders of such Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, in each instance in or against the Subject Debtors, their estates or any of the Property, attach to the cash proceeds, if any, of the sale ultimately attributable to the Property in which such creditor alleges an interest, in the same priority, with the same validity, force and effect that such creditor had as of the Petition Date, subject to any claims and defenses the Trustee and the Subject Debtors' estates may possess with respect thereto.

**I.    Compelling Circumstances for an Immediate Sale**

23.    Good and sufficient reasons for approval of the Agreement have been articulated. The relief requested in the Motion is in the best interests of the Subject Debtors, their estates, their creditors and all other parties in interest. The Trustee has demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling

11

circumstances for the sale other than in the ordinary course of business, pursuant to section

363(b) of the Bankruptcy Code before, and outside of a plan of reorganization, in that, among

other things, the immediate implementation of this Approval Order and consummation of the

Agreement is necessary both to preserve and maximize the value of the Subject Debtors' assets

for the benefit of the Subject Debtors, their estates, their creditors and all other parties in interest,

and the sales will provide the means for the Trustee to maximize creditor recoveries.

24.     To maximize the value of the Property, it is essential that the sale occurs

within the time constraints set forth in the Agreement.  Time is of the essence in consummating

the sales and preserving the value of the Property.

25.     Given all of the circumstances of the Subject Debtors' chapter 7 cases and

the adequacy and fair value of the purchaser price, the sales constitute a reasonable and sound

exercise of the Trustee's business judgment and should be approved.

26.     The consummation of the sale is legal, valid and properly authorized under

all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), and

363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have

been complied with in respect of the sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**J.      General Provisions**

27.     The relief requested in the Motion is granted and approved, and the sale

contemplated by the Agreement is hereby approved as set forth therein.

28.         All objections and responses to the Motion, including all reservations of rights included therein that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied including the Marana Objection which is deemed withdrawn and fully and finally resolved as provided in this Approval Order. In addition, the responses received from Multnomah County of Oregon and Kings County of Washington are resolved by having their asserted liens attach to the cash proceeds of the sale ultimately attributable to the Property in the same order of priority, with the same validity, force and effect that such creditors had prior to the sale, subject to any claims and defenses the Trustee and the Debtors' estates may possess.

**K.    Approval of the Agreement**

29.         The sale of the Property, the terms of the Agreement and all other ancillary documents, and all of the terms and conditions thereof, and the transactions contemplated thereby, are hereby authorized and approved as set forth herein.

30.         Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Trustee and Subject Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Agreement pursuant to and in accordance with the terms and conditions thereof and this Approval Order and (b) execute and deliver, perform under, consummate, implement and fully consummate the transactions contemplated by the Agreement, including, without limitation, documents that may be reasonably necessary or appropriate to implement the Agreement and such other additional instruments and documents.

31.        This Approval Order shall be binding in all respects upon the Trustee, the

Subject Debtors, their estates, all creditors of, and holders of equity interests in, any Subject

Debtor, any holders of liens, claims, liabilities, encumbrances, rights and interests in or against or

on all or any portion of the Property (whether known or unknown), Jet Midwest, Buyer, Marana,

other parties-in-interest and successor trustees, if any, subsequently appointed in any of the

Subject Debtors' chapter 7 cases or dismissal of any of the Subject Debtors' chapter 7 cases. This

Approval Order and the Agreement shall inure to the benefit of the Subject Debtors, their estates

and creditors, Buyer and the respective successors and assigns of each of the foregoing.

**L.        Transfer of the Property**

32.        Pursuant to Bankruptcy Code sections 105(a), 363(b) and 363(f), the

Subject Debtors are authorized to transfer the Property and the Assumed Liabilities to Buyer on

the Closing Date in accordance with the Agreement, and such transfer shall constitute a legal,

valid, binding, and effective transfer of such Property and Assumed Liabilities and shall vest

Buyer with title to the Property. The Federal Aviation Administration ("FAA") Operating

Certificate states that it is non-transferable, although the FAA may issue an amended operating

certificate to Jet Midwest or Buyer pursuant to applicable federal law, or it may issue a new

operating certificate to Jet Midwest or Buyer pursuant to applicable federal law. The transfer of

the Certificate of Public Convenience and Necessity issued by the Department of Transportation

("DOT") is subject to the prior approval of the Department of Transportation.

33.        Except as otherwise expressly provided in the Agreement and the terms of

this Approval Order, including, specifically, the provisions set forth in paragraph 33 of this

Approval Order providing for the preservation of the Lenders' Liens until payment of the Final

Installment, the Property shall be sold free and clear of all Liens, Claims, Encumbrances and

Interests with all such Liens, Claims, Encumbrances and Interests attaching to the cash proceeds

of the sale ultimately attributable to the Property in which such creditor alleges a Lien, Claim,

Encumbrance or Interest, in the same order of priority, with the same validity, force and effect

that such creditor had prior to the sale, subject to any claims and defenses the Trustee and the

Debtors' estates may possess with respect thereto (other than the Assumed Liabilities) including,

without limitation, the following: liens (statutory or otherwise), hypothecation, encumbrance,

security interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority,

security agreement, easement, covenant, encroachment, option or other interest in the subject

property, including any right of recovery, tax (including foreign, federal, state and local taxes), of

any kind or nature (including (i) any conditional sale or other title retention agreement and any

lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit

arrangement in the nature of a security device, (iii) any leasehold interest, license or other right,

in favor of a person other than Purchaser, to use any portion of the Property), whether secured or

unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, contingent or non-contingent, material or non-material, known or

unknown (all of the foregoing collectively being referred to in this Approval Order as "*Liens,*

*Claims, Encumbrances and Interests*", and, as used in this Approval Order, the term Claims

includes, without limitation, any and all "claims" as that term is defined and used in the

Bankruptcy Code, including section 101(5) thereof), with all such Liens, Claims, Encumbrances

and Interests attaching to the cash proceeds of the sale ultimately attributable to the Property in

which such creditor alleges a Lien, Claim, Encumbrance or Interest, in the same order of priority,

with the same validity, force and effect that such creditor had prior to the sale, subject to any

claims and defenses the Trustee and the Debtors' estates may possess with respect thereto;

*provided, however,* that all Liens, Claims Encumbrances and Interests in favor of the First Lien

Collateral Agent and the Second Lien Collateral Agent, for the benefit of the Lenders

(collectively, the "***Lenders' Liens***"), shall continue to be valid and enforceable first and second

priority Liens and Encumbrances in and against the Property, except for Property consisting of

titled vehicles and titled equipment, if any, and the Buyer shall maintain reasonable insurance on

such Property and include the Lenders as additional insureds on all such policies until such time

as Buyer remits to the  First Lien Administrative Agent the Final Installment (as defined herein)

in accordance paragraph 39 of this Approval Order at which time the Lenders' Liens shall

automatically be deemed released and terminated without further order of the Court or action by

Jet Midwest, Buyer or Lenders; *provided, further*, that Buyer shall not be permitted to sell any of

the Property subject to the Lenders' Liens without the Lenders' prior written consent, except that

the Lenders hereby consent to the sale, in the ordinary course of Buyer's business, Property with

an aggregate fair market value not to exceed $2 million, conditioned upon Buyer promptly

notifying counsel for the Lenders in writing upon dispositions of Property with an aggregate

value hereunder that exceeds $200,000 and additional written notice(s) each time thereafter that

Buyer disposes of Property with an incremental aggregate value hereunder of $200,000.

34.     Nothing in this Approval Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability or obligation to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of the Property after the date of entry of this Approval Order. Nothing in this Approval Order or the Agreement authorizes the transfer of any governmental licenses, permits, registrations, or other governmental authorizations and approvals without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers. Nothing in this Approval Order or Agreement divests any tribunal of any jurisdiction it may have under environmental law or other governmental regulatory non-bankruptcy law.

35.     For the avoidance of doubt the Liens, Claims, Encumbrances, and Interests include the (a) the liens in favor of Wells Fargo Bank Northwest, N.A. pertaining to that certain First Lien Aircraft Security Agreement, dated June 30, 2011, and any amendments thereto, recorded by the Federal Aviation Administration ("*FAA*") on August 17, 2011 as conveyance number WH003807 and (b) the liens in favor of Credit Suisse pertaining to that certain Second Lien Aircraft Security Agreement, dated October 31, 2006, and any amendments thereto, recorded by the FAA on December 12, 2006 as conveyance W007077 including the amendment regarding Wilmington Trust FSB as new collateral agent successor to Credit Suisse as recorded by the FAA on August 17, 2011 as conveyance WH003811; and (c) the lien in favor of Marana Aerospace Solutions Inc. pertaining to the aircraft identified by tail number N479EV recorded by the FAA on May 1, 2013 as conveyance DV013598.

36.    Except as otherwise expressly provided in the Agreement and the terms of this Approval Order, including, specifically, the provisions set forth in paragraph 33 of this Approval Order providing for the preservation of the Lenders' Liens until payment of the Final Installment, if any person or entity that has filed statements or other documents or agreements evidencing Liens, Claims, Encumbrances and Interests in or against all or any portion of the Property (other than statements or documents with respect to the Assumed Liabilities) (each, a "***Lien Registration Document***") shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents (each, a "***Lien Termination Document***") necessary for the purpose of documenting the release of all Liens, Claims, Encumbrances and Interests which the person or entity has or may assert with respect to all or any portion of the Property, the Trustee is hereby authorized and Buyer is hereby authorized, to request that such parties execute and file Lien Termination Documents with respect to the Property.

37.    On the Closing Date and except as otherwise provided herein, this Approval Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Subject Debtors' interests in the Property to Buyer and a full and complete general assignment and transfer of the Assumed Liabilities to Buyer.

38.    A certified copy of this Approval Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens, Claims, Encumbrances and

Interests of record on Property except (i) those Claims assumed as Assumed Liabilities, and (ii) the Lenders' Liens; provided that upon receipt by the Lenders of the Final Installment, a certified copy of this Approval Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens, Claims, Encumbrances and Interests of record on Property with respect to the Lenders' Liens.

**M.    Purchase Price**

39.    The aggregate consideration for the sale and transfer of the Property under the Agreement shall be $4,925,000 (which amount consists of the purchase price as set forth in the Agreement, assuming Trustee's delivery of, among other things, Supertanker and three Fly-Away Kits less the agreed value of $50,000 with respect to three engines removed from Schedule 1.1 of the Agreement (each as defined in the Agreement)), plus the aggregate amount of Assumed Liabilities and Cure Costs, subject to the adjustments in the Agreement (the "***Purchase Price***"), and the Purchase Price shall be payable as follows:  (i) one-half of the Purchase Price as determined at Closing (less $125,000 of the $250,000 Deposit (as defined in the Agreement) being held by the Escrow Holder (as defined in the Agreement) which shall remain subject to the post-closing adjustments as set forth in the Agreement); and (ii) a payment in immediately available funds of the remaining Purchase Price (less any amounts of the Deposit still held in escrow pursuant to the First Escrow Agreement, and less any amounts paid into escrow pursuant to the Second Escrow Agreement as provided in the Agreement being held by the Escrow Holder (as defined in the Agreement) which shall remain subject to the post-closing adjustments as set forth in the Agreement) (the "***Final Installment***"), shall be payable and deliverable on or before

the first business day after the date that is the sixtieth day following the Closing. The entire

Purchase Price will be fully earned upon the Closing, and the Final Installment payable by Buyer

and Jet Midwest to the Trustee shall be absolute, unconditional and not contingent upon any

event or occurrence except for Purchase Price adjustments expressly set forth in the

Agreement. Further, the Final Installment shall not be subject to setoff, recoupment, or any other

defenses or claims, except for the purchase price adjustments expressly set forth in the

Agreement. As expressly provided in this Approval Order, the Lenders' Liens shall secure the

Buyer's and Jet Midwest's payment of the Final Installment to the First Lien Administrative

Agent, which obligation to pay shall be joint and several.

**N.    Claims Against the Buyer**

          40.    Except for the Assumed Liabilities, or as otherwise expressly provided for

in this Approval Order or the Agreement, as applicable, including, specifically, the provisions set

forth in paragraph 33 of this Approval Order providing for the preservation of the Lenders' Liens

until payment of the Final Installment, to the greatest extent permitted by applicable law, Jet

Midwest and Buyer shall not have any liability or other obligation of the Subject Debtors arising

under or related to any of the Property. Without limiting the generality of the foregoing, and

except as otherwise specifically provided herein or in the Agreement, as applicable, including,

specifically, the provisions set forth in paragraph 33 of this Approval Order providing for the

preservation of the Lenders' Liens until payment of the Final Installment, Jet Midwest and Buyer

shall not be liable for any Liens, Claims, Encumbrances or Interests that may be asserted against

the Subject Debtors or any of their predecessors or affiliates, and Jet Midwest and Buyer shall

not be liable for any Liens, Claims, Encumbrances or Interests against the Subject Debtors

including under any theory of antitrust, environmental, successor or transferee liability, labor

law, whether known or unknown as of the Closing Date, now existing or hereafter arising,

whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether

liquidated or unliquidated, including liabilities on account of warranties, intercompany loans and

receivables between the Subject Debtors, and any taxes arising, accruing or payable under, out

of, in connection with, or in any way relating to the operation of any of the Property prior to the

Closing.

        41.      Except as otherwise provided in this Approval Order, the Agreement and

the Assumed Liabilities, as applicable, including, specifically, the provisions set forth in

paragraph 33 of this Approval Order providing for the preservation of the Lenders' Liens until

payment of the Final Installment, all persons and entities, including, but not limited to, all debt

security holders, equity security holders, governmental, tax, and regulatory authorities, lenders,

trade creditors, dealers, employees, litigation claimants, and other creditors, holding Liens,

Claims, Encumbrances or Interests of any kind or nature whatsoever, including, without

limitation, rights or claims based on any taxes or successor or transferee liability, against or in

the Subject Debtors or the Property (whether legal or equitable, secured or unsecured, matured or

unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in

connection with, or in any way relating to, the Subject Debtors, the Property, or the operation of

the Property before the Closing Date of the Agreement, or the transactions contemplated by the

Agreement, are forever barred from asserting against Jet Midwest, Buyer, and their respective

property and the Property, such persons' or entities' Liens, Claims, Encumbrances or Interests, including, without limitation, rights or Claims based on any taxes or, to the greatest extent permitted by applicable law successor or transferee liability; *provided, however*, nothing in this Approval Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of (i) any liability or obligation to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of the Property after the date of entry of this Approval Order, or (ii) the Lenders' Liens or the obligations of Buyer under the Agreement and this Approval Order which are secured thereby.

**O.     Resolution of the Marana Objection**

42.     Notwithstanding anything contained in the Agreement, or any other order, as a full and final resolution of Marana Aerospace Solutions, Inc.'s Motion for Allowance and Payment of Administrative Expense Claim [D.I. 312, filed 5.21.14] (the "***Marana Administrative Expense Claim Motion***"), the Limited Objection of Marana Aerospace Solutions, Inc. to Chapter 7 Trustee's Motion for the Approval of: (A) Sale of Substantially all of the Assets of Evergreen International Aviation, Inc., Evergreen International Airlines, Inc., and Evergreen Ground Aviation Ground Logistics, Inc. Free and Clear of All Liens and Claims, (B) Assumption and Assignment of Designated Contracts and Leases to Jet Midwest Group, LLC, and (C) Granting Related Relief as Necessary [D.I. 262, filed 5.2.14] Supplement to Limited Objection of Marana Aerospace Solutions, Inc. to Chapter 7 Trustee's Motion For the Approval of: (A) Sale of Substantially All of the Assets of Evergreen International Aviation, Inc., Evergreen International Airlines, Inc. and Evergreen Ground Aviation Ground Logistics, Inc.

Free and Clear Of All Liens and Claims, (B) Assumption and Assignment of Designated Contracts and Leases to Jet Midwest Group, LLC, and (C) Granting Related Relief As Is Necessary [D.I. 327, filed 5.27.14] (hereafter D.I. Nos. 262 and 327, the "Marana Sale Objection"), (i) the Marana Administrative Expense Claim Motion and the Marana Sale Objection are hereby deemed withdrawn; (ii) at Closing, Marana shall receive a cash payment, by wire transfer, of $675,000.00 from the proceeds of the sale of the Property to Buyer (the "Marana Payment"), which amount the Lenders agree shall be carved out from the collateral sold hereunder, and shall not be subject to the Lenders' Liens; (iii) Marana will receive an allowed administrative expense claim against the Debtors' estates in the amount of $500,000, which together with amounts previously paid by the Trustee and the Marana Payment shall be for providing the Debtors with post-petition storage and related services for the Property sold hereunder by the Subject Debtors; (iv) the Trustee shall assign to Marana the Subject Debtors' rights and interests in all insurance policies, agreements and contracts that contain indemnification rights in favor of the Subject Debtors for the Pinal Park property leased, used or occupied by the Subject Debtors including all governmental programs and shall assign to Marana or allow Marana, to the extent necessary, the right to bring claims or lawsuits in the Subject Debtors' names and Marana shall have the right to retain all such proceeds, in full and final satisfaction of any administrative expenses claims of Marana in respect of environmental liabilities at such property; (v) Marana will allow Buyer reasonable access through July 31, 2014 to all locations at Pinal Park where the Property is located; (vi) Marana's rights with respect to any asserted unsecured claims against the Subject Debtors estates, and the Trustee's and any

party in interest's rights to object thereto and assert all applicable defenses and Claims, are

hereby preserved; (vii) Marana consents to the sale of the Property to Buyer, including,

specifically, the assets identified on Exhibit D of the Marana Objection, excluding the assets

identified on Exhibit D that are asserted therein as not being then owned by the Subject Debtors

just prior to the time Marana issued the notice that is Exhibit D of the Marana Objection, and any

and all Liens, Claims, Encumbrances and Interests of Marana in the Property and the proceeds

thereof are deemed fully and finally released, discharged, terminated and extinguished in all

respects; (viii) Marana shall not directly or indirectly challenge, object to, raise or assert claims,

or dispute, or sponsor, assist or cooperate with any party in connection with any such actions,

any of the Claims, Liens, Encumbrances or Interests of the Lenders or any of them or their

agents under the Pre-Petition Credit Documents or any distributions from the Subject Debtors'

estates in respect thereof, or otherwise assert any Claims against the Lenders or any of them or

their agents under the Pre-Petition Credit Documents; (ix) all property of the Debtors at Pinal

Park shall be removed no later than July 31, 2014 and any property remaining at the Pinal Park

property on August 1, 2014 (except for the Supertanker and other aircraft, which Marana shall

park at Marana's standard parking rate of $3,000 per month per aircraft and tear down at the time

and material rate of $48.00 per hour for Buyer; except for the pricing set forth herein, the terms

and conditions of the parking and the tear down shall be on the same terms as the most recent

agreement between Marana and Jet Midwest) shall be deemed forfeited by Buyer, the Trustee

and Debtors and abandoned free and clear to Marana and shall be Marana's to dispose of or sell

as it sees fit with no further need for notice to anyone, and not subject to Claims, Liens,

Encumbrances or Interests, including the Lenders' Liens; (x) Marana and 10th Lane Finance Co., LLC release any and all Claims against each other that may exist as of the date hereof; (xi) except for the obligations set forth herein, Marana and the Trustee release any and all Claims against each other that may exist as of the date hereof; and (xii) Buyer will be responsible for any damage or injuries to Marana's property and liability of Marana to third-parties (including, but not limited to, Marana's employees) for personal injury or property damage caused by Buyer during the Property removal process at Pinal Park and will maintain reasonable insurance coverages for such liabilities. Further, Marana shall not assert any claims against the Trustee, Debtors' estates, Buyer, Jet Midwest or the Lenders for any cleanup, removal or disposal costs to return Marana's property and facilities to broom clean condition. Notwithstanding anything contained herein or in the Agreement, except as provided in subsection (ix) hereof, the Trustee, the Debtors and Jet Midwest have no right to enter, use or occupy the Pinal Airpark after July 31, 2014. Any claims of Marana against any Evergreen companies or their shareholders not in bankruptcy are not compromised and are reserved. Any shelving not removed as of May 29, 2014 shall be left by Buyer and shall be Marana's.

**P.     Other Provisions**

43.     The consideration provided by Buyer to the Trustee pursuant to the Agreement for the Property, including the assumption of the Assumed Liabilities, constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

25

44.     The transactions contemplated by the Agreement are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Agreement shall not affect the validity of the Agreement, unless such authorization and such Agreement is duly stayed pending such appeal. Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

45.     Any Property of the Debtors sold to Buyer pursuant to the Agreement that is in the control or possession of third parties shall be promptly turned over to Buyer in cooperation with the Trustee. The Court retains jurisdiction over any Property that is in the control or possession of the third parties for the purposes of enforcing the transfer of the Property from the Trustee to Buyer pursuant to the terms of the Agreement.

46.     Upon the Trustee's receipt of the Purchase Price, the Trustee is permitted to distribute the sale proceeds in accordance with the *Order Authorizing the Use of Cash Collateral and Providing Adequate Protection* [Docket No. 202] and the terms of this Approval Order.

47.     Pursuant to Bankruptcy Rules 7062, 9014, and 6004(h), this Approval Order shall be effective immediately upon entry and the Trustee and Buyer are authorized to close the Agreement immediately upon entry of this Approval Order.

48.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Agreement.

26

49.    The failure specifically to include any particular provision of the Agreement in this Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement is authorized and approved in its entirety; *provided, however*, that this Approval Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Approval Order. Likewise, all of the provisions of this Approval Order are non-severable and mutually dependent.

50.    The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement is not material.

51.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Approval Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is a party or which has been assigned by the Trustee to Buyer in accordance with the Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Agreement, including retaining jurisdiction to (a) compel delivery of the Property in accordance with the Agreement; (b) interpret, implement and enforce the provisions of this Approval Order; and (c) protect Buyer against any Liens, Claims, Encumbrances and Interests in or against the Subject Debtors or the Property of

any kind or nature whatsoever, except for the Lenders' Liens of limited duration as provided in paragraph 33 of the Approval Order.

52.    The Trustee, the First Lien Collateral Agent, the Lenders, Buyer and Marana are authorized to take all actions necessary to effectuate the relief expressly granted pursuant to this Approval Order in accordance with the Motion.

53.    All time periods set forth in this Approval Order shall be calculated in accordance with Bankruptcy Rule 9006(a).


Dated: _____May 30_____, 2014        _____
                                          The Honorable Mary F. Walrath
                                          United States Bankruptcy Judge

28