## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>EVERGREEN INTERNATIONAL<br>AVIATION, INC., *et al.*[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 13-13364 (MFW)<br><br>Jointly Administered<br><br>**Objection Deadline: March 1, 2017 at 4:00 p.m. (ET)**<br>**Hearing Date: March 8, 2017 at 2:00 p.m. (ET)** |

## MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, TO APPROVE SETTLEMENT AGREEMENT WITH THE MARTIN PARTIES

Alfred T. Giuliano, chapter 7 trustee (the "Trustee") to the estates of the above-captioned debtors (the "Debtors"), hereby respectfully submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, under sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement agreement (the "Settlement Agreement") between the Trustee and Andrew M. Martin ("Martin") and Greyson Financial Services, Inc. ("Greyson," and together with Martin, the "Martin Parties") (and, collectively with the Trustee, the "Parties"). A copy of the Settlement Agreement is attached to the proposed form of order as Exhibit 1. In support of this Motion, the Trustee respectfully states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Evergreen International Aviation, Inc. (9079); Evergreen Aviation Ground Logistics Enterprise, Inc. (6736); Evergreen Defense & Security Services, Inc. (0118); Evergreen International Airlines, Inc. (7870); Evergreen Systems Logistics, Inc. (0610); Evergreen Trade, Inc. (0952); and Supertanker Services, Inc. (3389). The Debtors' former address was 3850 Three Mile Lane, McMinnville, Oregon 97128.

**Jurisdiction**

1.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference from the United States District Court*

*for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within

the meaning of 28 U.S.C. § 157(b)(2), and the Trustee confirms his consent pursuant to Rule

9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by

the Court in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

2.        Venue of this proceeding and this Motion is proper in this District

pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory and rule bases for the relief sought herein are sections 105(a)

and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

**General Case Background**

4.        On December 31, 2013 (the "Petition Date"), the Debtors each

commenced a case by filing a voluntary petition for relief in this Court under chapter 7 of the

Bankruptcy Code (collectively, the "Cases").  Alfred T. Giuliano was appointed as the Trustee.

The Cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule

1015(b).

5.        Based in McMinnville, Oregon, the Debtors were a privately-held global

aviation services company that was a leading provider of diversified air cargo transportation and

aviation support services under the Evergreen name.

2

**Background Relevant to Motion**

6.     The Trustee has liquidated or monetized substantially all of the Debtors'

assets, save a few remaining potential litigation claims, including an alleged fraudulent

conveyance claim against the Martin Parties.  The theory of the claim against the Martin Parties

arises from a loan transaction that obligated Debtor, Evergreen Aviation, Inc. ("Aviation"), even

though Aviation did not receive the loan proceeds, which were paid to others, including the

Debtors' ultimate controlling shareholder, Del Smith.

7.     The Trustee engaged in mediation with the Martin Parties that lead to

numerous settlement discussions and near agreements that were never finalized for one reason or

another.  Recently, the Trustee and the Martin Parties concluded their discussions, which have

been memorialized in the Settlement Agreement, which is the subject of this Motion.

**The Disputed Loan Proceeds and Alleged Fraudulent Conveyance**

8.     On or about July 17, 2013, Aviation entered into a secured loan agreement

(the "Loan Agreement") with, *inter alia*, the Martin Parties.  Pursuant to the Loan Agreement,

Aviation executed a promissory note in the original principal amount of $4.2 million, in favor of

Martin (the "Promissory Note").  However, Aviation was required to use the proceeds of the loan

(the "Martin Loan") as follows:  (i) $337,000 to be paid to certain third parties as fees; (ii)

$290,500 to be paid to Martin as pre-paid interest; and (iii) $3,536,459.36 to Delford Smith[2], the

ultimate controlling shareholder of Aviation[3].

---

[2] Mr. Smith, who was the controlling shareholder of the Evergreen conglomerate, has since past away leaving
behind a fully encumbered estate.

[3] The difference between the $4.2 million and the sum of these amounts in this paragraph are various customary
closing costs.

3

9.      In order to secure the repayment of the Martin Loan, non-debtor

Evergreen Holdings, Inc. ("Holdings"), the parent of Aviation, granted a mortgage in the

property located at 3800 Three Mile Lane, McMinnville, Oregon (the "3800 Property"), which is

owned by Holdings.  The principal and controlling shareholder of Holdings is Delford Smith

(who is now deceased).

10.     The Martin Loan includes interest at the note rate of 15%, plus other

allowable cost as set forth in the applicable loan documents.  As of December 9, 2016, the

Martin Loan was approximately $4,323,533.00.  To date, Aviation has not receive the money

from the Martin Loan.

## The Settlement[4]

11.     After substantial negotiations and discussions, the Trustee and Martin

have agreed to settle their differences on terms the Trustee views as very favorable to the estates.

The Settlement Agreement provides a path forward by eliminating a substantial amount of

uncertainty, delay and cost and provides a potential recovery to the estates that are expected to

generate meaningful value.

12.     As set forth in the attached Settlement Agreement, the primary terms of

the Settlement Agreement are as follows:

   a.     Relief from Stay.  To the extent relief from stay is necessary,
          Martin shall have relief from stay to initiate and prosecute a
          foreclosure proceeding against the 3800 Property (the "Foreclosure
          Proceeding").  Martin agrees to promptly initiate the Foreclosure
          Proceeding after the Effective Date.[5]

---

[4] The summary set forth in the Motion is only a summary.  To the extent the summary conflicts with the actual terms
of the Settlement Agreement, the actual terms of the Settlement Agreement shall control.

[5] The "Effective Date" is the date the Court enters an order approving the Settlement Agreement.

DOCS_DE:204092.10 31265/001

b.  Sheriff's Sale to Martin.  If Martin takes title to the 3800 Property pursuit to Sheriff's Sale or foreclosure and subsequently the 3800 Property is sold, Martin shall receive the Net Sale Price and shall pay an amount equal to the Net Sale Price less the sum of $2.5 million (and those amounts determined in paragraph 7 of the Settlement Agreement) to the Trustee. The term Net Sale Price as used in the Settlement Agreement shall mean the gross sale price of the 3800 Property less the costs of or related to the sale (e.g., by way of example and not limitation, real estate broker commissions, if any, real estate taxes, professionals' fees and expenses related to the sale or other disposition of the 3800 Property, title fees, transfer taxes, escrow charges, and other normal and customary transaction costs).

c.  Sheriff's Sale to Third Party.  In the event of a sheriff's sale or foreclosure in which a third party purchaser pays off the Martin Lien by paying the amount of the Martin Lien to Martin, then Martin shall pay to the Trustee the difference between the price paid at the Sheriff's Sale or foreclosure to Martin, as the case may be, and the sum of (i) $2.5 million and (ii) those amounts determine in Paragraph 7 of the Settlement Agreement to be due and owing to Martin.

d.  Unless the Trustee informs Martin to the contrary at or before a Sheriff's Sale of the 3800 Property, Martin shall bid the full amount of the Martin Lien at such Sheriff's Sale.

e.  Cost of Preservation and Foreclosure.

  i.  In addition to the amount Martin shall receive under either Paragraph 4 or 5 of the Settlement Agreement, Martin shall be entitled to recover his attorney fees incurred prior to the Effective Date of the Settlement Agreement, and Martin shall further receive the standard foreclosure costs and reasonable attorneys' fees actually incurred by Martin in foreclosure after the Effective Date of the Settlement Agreement, up to a cap of $25,000, if the foreclosure is unopposed (the "Martin Legal Fee Cap"). If the foreclosure is opposed, including any challenge to the priority or validity of the Martin Lien, Martin and Trustee agree to negotiate the amount of the Martin Legal Fee Cap to an amount mutually acceptable to the parties and commensurate with the expected legal fees to be incurred. The amount of costs and attorneys' fees incurred by Martin (subject to the Martin Legal Fee Cap) shall be paid from gross sale proceeds. Similarly, if the Trustee incurs legal

5

expenses and fees in participating in any such Sheriff's Sale or foreclosure, or in prosecuting a motion to approve the Settlement Agreement, such legal fees and expenses shall be deducted from the gross sale price and shall be reimbursed at the time of the Sheriff's Sale or foreclosure, as the case may be, if Martin is not the successful bidder at the Sheriff's Sale, or at the closing of the sale of the 3800 Property, if Martin takes title through the foreclosure process. All of the costs, fees and expenses that may be due to the Parties pursuant to Paragraph 7 of the Settlement Agreement shall be referred to as "Foreclosure Costs".

ii. Martin shall be obligated to pay all cost of preservation of the 3800 Property, including, but not limited to, reimbursing the Trustee for any and all cost he has paid to preserve the 3800 Property, which cost shall include, but not be limited to, insurance, maintenance, utilities, property inspections and the like (all of which costs shall be defined herein as "Preservation Costs", and together with the Foreclosure Costs shall be referred to as "Property Costs"). However, in no event shall Martin be obligated to reimburse Aviation or the Trustee for Property Costs until Martin has received $2.5 million and the portion of the Property Costs Martin has paid.

f. <u>Sale Consultation and Lien Rights</u>. If Martin obtains title to the 3800 Property through a Sheriff's Sale or foreclosure proceeding, Martin and the Trustee shall use good faith and best efforts to coordinate with, and consult with, the other regarding the sale of the 3800 Property. The Trustee shall have consent rights regarding all aspect of the marketing, listing, and sale of the 3800 Property, which consent shall not be unreasonably withheld.

g. <u>How Preservation Costs are to Paid</u>. The Trustee shall advance the Preservation Costs for the 3800 Property until the conclusion of the Sheriff's Sale or foreclosure process, as applicable, which Martin shall be obligated to pay as set forth in Paragraph 7(b) of the Settlement Agreement. Thereafter, if Martin becomes the owner of the 3800 Property, Martin and Trustee shall split the Preservation Costs 50/50. All pre-foreclosure Preservation Costs advanced by Aviation, Trustee and/or Martin, regardless of when they were paid, will be added to the Martin Lien. Once Martin has received $2.5 million and the portion of the Property Costs he has paid, all other Property Costs will be reimbursed to Aviation and/or Trustee.

6

h.    <u>Releases</u>.  The Trustee and the Debtors' estates and the Martin Parties will grant mutual releases to each other.

**Relief Requested**

13.    By this Motion, the Trustee seeks entry of an order approving the Settlement Agreement, which, as stated above, is attached as <u>Exhibit 1</u> to the proposed form of order.

**Basis for Relief Requested**

14.    Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc).  Bankruptcy Rule 9019 governs the procedural prerequisites to approve a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

15.    Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  Bankruptcy Rule 9019 provides that on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  In deciding whether to approve a settlement

7

pursuant to Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates. *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998). The decision whether to accept or reject a compromise lies within the sound discretion of the court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

16.    In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F.3d at 393. Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Id.* at 395.

17.    When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78. A court need not be convinced that a proposed settlement is the

DOCS_DE:204092.10 31265/001

best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

18.    The Trustee believes the Settlement Agreement is fair and reasonable and is in the best interests of the Debtors, their creditors, and the estates, and should be approved pursuant to Bankruptcy Rule 9019. It is the product of very extensive, active, good-faith discussions and arms' length bargaining among the Parties. For the reasons outlined below, the Trustee believes that the Settlement Agreement represents a highly attractive outcome for the Debtors' estates.

19.    First, the Settlement Agreement resolves potential costly and speculative litigation over the Martin Loan, and is the only likely hope of generating a recovery to creditors in these estates (although it should be noted that the Trustee previously negotiated for the payment of approximately $600,000 to pay the Debtors' former employees, many of whom were very low income wage earners, which payment the Trustee promptly made). The Settlement Agreement resolves difficult legal and factual issues by providing for a mechanism to have the 3800 Property subjected to a sheriff's sale or foreclosure with a sharing formula for proceeds received from a sale of the 3800 Property (whether Martin or another third party takes title to the 3800 Property). The success of any litigation concerning the Martin Loan is far from certain and even if litigation was certain it would not necessarily provide a recovery to the Debtors' estates.

20.    The Trustee and the Martin Parties have been involved in mediation over such claims since March of 2015. Litigation over the alleged claims by the Trustee may not be successful and the risk of recovery and possible delays in any such recovery, even if successful, would further drain estate resources. And even if the Trustee were to prevail entirely on all asserted claims, appeals could further delay recoveries.

9

21.    In addition, the Settlement Agreement provides certainty and reduces costs and delay; it resolves significant issues between the Trustee and the Martin Parties, and provides a mechanism to begin monetizing the 3800 Property that is expected to provide proceeds to these administratively insolvent estates.  Whether through a sheriff's sale or foreclosure, the estates have the potential to receive significant sums depending on the actual sale price for the 3800 Property.  Negotiations over the disputes between the Trustee and the Martin Parties have been ongoing for almost two years and they have finally reached an agreement that the Trustee believes in his business judgment is in the best interest of the estates and its creditors.

22.    Aside from the standards under Rule 9019, a settlement of claims and causes of action by a trustee constitutes a use of property of the estate.  *See e.g. Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999).  If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").  Courts normally defer to the trustee's business judgment so long as there is a legitimate business justification.  *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

23.    Here, the Trustee submits that approval under section 363(b) of the Bankruptcy Court is required.  The Settlement Agreement provides for, among other terms: (a) a resolution of the asserted claims by the Trustee against the Martin Parties; (b) a mechanism to

allow for a sheriff's sale or foreclosure of the 3800 Property and subsequent sharing formula for

proceeds; and (c) releases by the Debtors' estates of claims against the Martin Parties. *See*

*Northview Motors*, 186 F.3d at 350 (settling a claim against a third party constitutes a sale of the

claim under section 363 and subject to court approval). For all the reasons set forth above, the

Trustee, in an exercise of his sound business judgment, submits that the Settlement Agreement is

fair, reasonable, and appropriate and should be approved by this Court.

**Notice**

24.     Notice of this Motion has been given to the following parties or, in lieu

thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the District of

Delaware; (b) counsel to the Debtors; (c) the Parties to the Settlement Agreement; and (d) those

persons who have requested notice pursuant to Bankruptcy Rule 2002. The Trustee submits that

no other or further notice is necessary or required.

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion,

approve the Settlement Agreement, enter the proposed order, and grant such other relief as is just

and proper.

Dated:  February 15, 2017          PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:      bsandler@pszjlaw.com
            pkeane@pszjlaw.com

Counsel to Alfred T. Giuliano, Chapter 7 Trustee

11
