## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| EVERGREEN INTERNATIONAL | ) | Case No. 13-13364 (MFW) |
| AVIATION, INC., *et al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **RE:  Docket No. 834** |
| | ) | |

**OBJECTION AND RESERVATION OF RIGHTS OF WORLD FUEL SERVICES, INC.
REGARDING THE MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, TO
APPROVE SETTLEMENT AGREEMENT WITH THE MARTIN PARTIES**

World Fuel Services, Inc. ("**WFS**") hereby files this objection and reservation of rights (the "**Objection**") regarding the *Motion of Alfred T. Giuliano, Chapter 7 Trustee, to Approve Settlement Agreement with the Martin Parties* [Docket No. 834] (the "**9019 Motion**").[1]  In support thereof, WFS respectfully states as follows:

### Preliminary Statement

These bankruptcy cases were filed over three years ago and have been administratively insolvent for quite some time now.  At the outset, the Trustee and his professionals expended significant effort at significant cost trying to piece together Delford Smith's haphazard Evergreen jigsaw puzzle and recover assets for the estates.  Unfortunately, there was no giant pot of gold under the rainbow, and the cases have basically dwindled down to a three-party dispute regarding the only meaningful asset left – the Trustee, Andrew Martin, and WFS fighting over their respective interests in the 3800 Property.  Through the 9019 Motion, the Trustee has apparently teamed up with Martin to share costs, front legal fees, and otherwise jointly cooperate in the sale of the 3800 Property through either a foreclosure proceeding or sheriff's sale, with the proceeds of

---

[1] On January 28, 2016, the Trustee previously filed a 9019 Motion to approve a proposed settlement with the Martin Parties [Docket No. 726], but that motion was subsequently withdrawn [Docket No. 734].

such sale to be distributed between them according to their agreed-upon formula.  However, the

9019 Motion and settlement agreement seemingly ignore the rights and interests of WFS, release

valuable estate claims against Martin for minimal value, contain improper fee sharing and

reimbursement provisions, and, most importantly, would not be in the best interests of the estates.

Accordingly, the 9019 Motion should be denied.

### The Martin Loan

1.      On December 31, 2013 (the "**Petition Date**"), Evergreen International Aviation,

Inc. ("**Aviation**") and its affiliated debtors (collectively, the "**Debtors**") filed voluntary petitions

for relief under Chapter 7 of the Bankruptcy Code (the "**Cases**") in the United States Bankruptcy

Court for the District of Delaware (the "**Bankruptcy Court**").

2.      Alfred T. Giuliano was appointed Chapter 7 Trustee (the "**Trustee**") over the

Debtors' estates (the "**Estates**").

3.      As the Trustee notes in the 9019 Motion, the Estates maintain a fraudulent

conveyance claim against Andrew M. Martin ("**Martin**") and Greyson Financial Services, Inc.

("**Greyson**," and together with Martin, the "**Martin Parties**").  The claim arises from a loan

agreement (the "**Loan Agreement**") entered into on or about July 17, 2013 between Aviation and,

*inter alia*, the Martin Parties.  Pursuant to the Loan Agreement, Aviation executed a promissory

note in favor of Martin in the original principal amount of $4.2 million (the "**Promissory Note**").

However, Aviation never received any proceeds from the loan.  Instead, Aviation was required to

use the proceeds of the loan (the "**Martin Loan**") as follows:  (i) $337,000 to be paid as fees to

certain third parties; (ii) $290,500 to be paid as pre-paid interest to Martin; and (iii) $3,536,459.26

to Delford Smith, the controlling shareholder of Aviation.  *See* Motion, ¶ 8.

4.      As security for the repayment of the Martin Loan, non-debtor Evergreen Holdings,

Inc. ("**Holdings**"), the parent of Aviation, granted a mortgage in certain real property located at

3800 Three Mile Lane, McMinnville, Oregon (the "**3800 Property**").  The 3800 Property is the main parcel on the Debtors' former corporate campus, and it contains an office building and a 30,000 square foot aircraft hangar.  Notably, the potential sale of the 3800 Property would provide the only real source of recovery for anyone in this case but, as the Trustee concedes in the 9019 Motion, the 3800 Property is owned by non-debtor Holdings.

<u>**World Fuel Services**</u>

5.     Prior to the Petition Date, WFS provided fuel and related services to Evergreen Airlines, Inc. ("**Airlines**"), one of the above-captioned Debtors, and certain of its affiliated entities.  After Airlines defaulted on its obligations to WFS and amassed a large outstanding balance, WFS received guarantees of repayment from a number of other Evergreen entities, including Holdings.

6.     After the Debtors filed their chapter 7 petitions, WFS submitted a proof of claim (Claim No. 134) in the amount of $9,048,284.65 for amounts due and owing by the Debtors to WFS prepetition.  The Debtors scheduled WFS's claim in a comparable amount.

7.     In February 2015, WFS secured a judgment lien against Holdings and Evergreen Agricultural, Inc. ("**Agricultural**") for their respective defaults under the guaranty agreements. WFS currently has a recognized judgment lien (plus interest and fees) in the aggregate amount of over $11 million against Holdings and Agricultural.

8.     On December 11, 2015, the Trustee commenced an adversary proceeding against WFS (Adv. Pro. No. 15-51918) (the "**Adversary Proceeding**"), which seeks, amongst other things:  (i) the imposition of a constructive trust on behalf of the Estates against the 3800 Property; (ii) avoidance of certain liens; (iii) avoidance and recovery of certain alleged fraudulent and preferential transfers; and (iv) disallowance of WFS's proof of claim.  WFS filed its answer

on January 25, 2016 [Adv. Docket No. 6], and the pretrial conference in the Adversary Proceeding has now been adjourned by the Trustee for over a year.

9.     On December 9, 2016, WFS commenced an action against Martin in the United States District Court for the District of Oregon – Portland Division [Case No. 16-02303 (MO)] (the "**Oregon Litigation**").   The Oregon Litigation seeks to avoid Martin's lien on the 3800 Property as a fraudulent transfer.   WFS has been attempting to serve Martin with the complaint and summons for the past two months, but to date has been unsuccessful.   WFS expects to consummate service within the next two weeks.

### Objections to the 9019 Motion and Settlement Agreement

10.     In considering whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates.  *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998).   There are four criteria that a bankruptcy court should consider in determining whether to approve a settlement:  (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

11.     The Court should deny the Trustee's 9019 Motion for a number of reasons.   The settlement agreement between the Trustee and Martin Parties (the "**Settlement Agreement**") is primarily about forcing the sale of the 3800 Property, inappropriately sharing the expense / risk of litigation, splitting up the proceeds between themselves, and granting each other mutual releases. However, as an initial matter, it is still unclear to WFS why the Trustee would release the Estates' claims against the Martin Parties, as all of the facts point to this transaction being a fraudulent transfer.

12.     In March 2013, after a number of the Evergreen entities began experiencing financial difficulties, Aviation sold its interest in Evergreen Helicopters, Inc. ("**Helicopters**") to Erickson Air-Crane.  Upon information and belief, Aviation received approximately $250 million in proceeds from the sale.  Yet, a few months later, Aviation entered into the $4.2 million Martin Loan, which included over $600,000 in fees and prepaid interest, not to mention an exorbitant interest rate of 15%.   Incredibly, none of the loan proceeds went to Aviation or any of the Debtors.  Less than six months later, they filed their chapter 7 bankruptcy petitions.

13.     There were a number of parties to the Martin Loan transaction:  Martin, Aviation, Agricultural, and Holdings.  Aviation issued Martin a $4.2 million Promissory Note but received nothing in return.   Agricultural issued Martin a Trust Deed but received nothing in return. Holdings, the non-debtor owner of the 3800 Property and not a party to the Promissory Note, granted Martin a mortgage on the property but received nothing in return.  Martin, on the other hand, received $290,500 in pre-paid interest when the Loan Agreement was executed and received an additional $1,816,094 from the sale of other collateral used to secure the loan (total recovery of over $2.1 million to date).  Per the Trustee's 9019 Motion, as a result of the sizable interest rate, the total amount still outstanding under the Martin Loan is believed to be approximately $4,323,533.00 as of December 9, 2016.  See Motion, ¶ 10.  Despite all this, the Trustee now seeks to release the Estates' claims against the Martin Parties in exchange for a nominal return.

14.     The Martin Loan transaction certainly raises the specter of a fraudulent transfer. Aviation, Holdings, and Agricultural incurred obligations without the reasonably equivalent value in exchange thereof.  At the time, Aviation was either insolvent or on the brink of insolvency, which is bolstered by the fact that it filed its chapter 7 bankruptcy petition less than six months later.  Additionally, Holdings was either insolvent at that time as well, or became insolvent as a result of its obligation to Martin.  Accordingly, Martin has significant exposure to a fraudulent

transfer cause of action – either brought by the Trustee on behalf of the Estates or brought by WFS in its capacity as a creditor of Holdings.

15.    Moreover, in the Adversary Proceeding, the primary argument raised by the Trustee for imposition of a constructive trust on the 3800 Property is that Aviation is the true owner of the property.  If this assertion is accurate, then Holdings would not have been able to issue Martin a valid mortgage on the 3800 Property (since it would not have owned the property) and, thus, Martin would not have an enforceable lien on the property.  Consequently, assuming the Trustee still adopts this position, the Trustee's decision to release these valuable claims would be foolish and not in the best interests of the Estates or their creditors.

16.    As noted above, the only asset in these Cases that will provide a meaningful recovery to anyone is the 3800 Property – a property that is currently owned by Holdings and is substantially encumbered by Martin's lien.  At present, Martin has a first priority lien against the property in the alleged approximate amount of $4.3 million.  WFS has a valid judgment lien against the property in the approximate amount of $11 million.  The Trustee currently has no interest in the property.  He has asserted a constructive trust claim against the property in the Adversary Proceeding, but he has failed to prosecute that claim for over a year now and has not otherwise taken any steps to validate such interest.

17.    The 9019 Motion emphasizes that the Settlement Agreement is the "only likely hope of generating a recovery to creditors in these estates."  See Motion, ¶ 19.  It is ambiguous regarding what creditors the Trustee is referring to considering that these Estates are administratively insolvent, and probably by a significant margin.  Any money coming into the Estates as a result of this Settlement Agreement will most likely be swallowed up by professional fee claims and other administrative expenses.  However, if Martin's lien on the property is avoided as a fraudulent transfer, and if the Trustee actually has a cognizable interest in the

property, then the Estates could potentially recover significantly more value than they're expected to receive under the Settlement Agreement – serving "the paramount interest of creditors." Additionally, the Trustee's probability of success on the merits of this litigation would be high, and there would be no difficulties in collection as it would simply void a lien.  While the litigation may result in additional expense and delay, that litigation has already been commenced by WFS – at WFS's expense.  WFS has been patiently waiting for the Trustee to file a cause of action against the Martin Parties, but it never happened.  As a result, on December 9, 2016, WFS filed the Oregon Litigation against Martin seeking to avoid his lien on the 3800 Property.

18.    Finally, the specific terms of the Settlement Agreement are not in the best interests of the Estates.  The Settlement Agreement contemplates relief from stay so that Martin can promptly prosecute a foreclosure proceeding against the 3800 Property, and it contains a profit sharing formula whereby Martin receives $2.5 million from the Net Sale Price plus reimbursement for foreclosure costs and preservation costs, with the balance going to the Trustee. It also provides that "if the foreclosure is opposed, including any challenge to the priority or validity of the Martin Lien, then Martin and the Trustee agree to negotiate the amount of the Martin Legal Fee Cap[2] to an amount mutually acceptable to the parties and commensurate with the expected legal fees to be incurred."  See Motion, ¶ 12.  Such fees and expenses shall be paid from the gross sale proceeds.  Additionally, if the Trustee incurs legal fees related to participating in a Sheriff's sale or foreclosure proceeding, or in prosecuting this 9019 Motion to approve the Settlement Agreement, then such legal fees and expenses shall be paid from the gross sale proceeds.  See Motion, ¶ 12.

19.    WFS believes that the proposed sharing / advancement / reimbursement of legal fees and expenses between the Trustee and Martin Parties is inappropriate and objectionable,

---

[2] All terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

especially when the proposed funding source for those amounts is the gross sale proceeds – proceeds from the sale of real property in which the Trustee has no interest and Martin has a contested lien. Clearly, if WFS has pending litigation against Martin regarding "the priority or validity" of his lien, then any foreclosure proceeding would undoubtedly be contested by WFS. And, in turn, the Trustee will certainly incur legal fees in participating in the foreclosure proceeding and prosecuting this 9019 Motion. Considering that this is a three-party dispute, none of this comes as a surprise to anyone involved, and the Trustee has provided no basis as to why each party should not bear its own costs of litigation.

20.    In conclusion, this Court should deny the Trustee's 9019 Motion. The proposed Settlement Agreement is not fair or reasonable, and it is not in the best interests of the Estates or their creditors. If WFS's Oregon Litigation is successful in reducing or eliminating Martin's lien on the 3800 Property, and if the Trustee's argument that Aviation is the true owner of the property is validated, then the Estates could recover significantly more value than they would under the proposed Settlement Agreement. There is simply no justifiable reason for the Trustee to release these claims for nominal consideration, especially given the facts cited above.

21.    However, if this Court decides to approve the 9019 Motion, WFS reserves all of its rights and defenses with respect to the Oregon Litigation and the Adversary Proceeding. WFS objects to any provisions in the Settlement Agreement that could be construed as impairing in any way the rights of WFS, all such rights being expressly reserved. *See In re Devon Capital Management, Inc.*, 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001) ("Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced…. Ignoring the effect of a settlement on rights of third parties' contravenes a basic notion of fairness.").

22.     WHEREFORE, WFS respectfully requests that the Court deny the relief requested in the 9019 Motion and grant such other and further relief to WFS as the Court deems just and proper.

Dated:  Wilmington, Delaware
       March 1, 2017

Respectfully submitted,

POLSINELLI PC

   /s/  *Justin K. Edelson*
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware  19801
Telephone: (302) 252-0920
Fax: (302) 252-0921
jedelson@polsinelli.com

COUNSEL FOR WORLD FUEL SERVICES, INC.